IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  08 CV 2517 |
| | ) | |
| v. | ) | |
| | ) | Judge Castillo |
| FRANCONIA MINERALS CORPORATION | ) | Magistrate Judge Brown |
| a foreign corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO
DISMISS ON THE BASIS OF _FORUM NON CONVENIENS_**

### I.      Introduction

This case should be dismissed for refiling in Canada pursuant to the doctrine of _forum non conveniens_ because:

(1)      The Court will have to apply the "laws of the Province of Alberta and the federal laws of Canada" in construing the stock option plans at issue in this case;

(2)      At issue are stock options in a Canadian corporation whose stock is traded publicly on the Toronto Stock Exchange;

(3)      The Plaintiff and Defendant are both Canadian citizens;

(4)      Plaintiff's damages theory is based upon calculating losses in Canadian dollars; and

(5)      The events giving rise to the lawsuit occurred in Toronto, Canada at a meeting among Canadian geologists.

Accordingly, Defendant respectfully requests that this case be dismissed pursuant to the doctrine of _forum non conveniens_.

## II.     Facts

### The Parties Are Canadian Citizens.

Plaintiff Rowell is a Canadian citizen and (according to the Amended Complaint) he resides in Lake Forest, Illinois. (Exhibit A)[1]  Franconia is a Canadian corporation existing under the laws of Canada; its principal place of business is in Washington. (Amended Complaint ¶ 1; Declaration of Gavin, attached as Exhibit C at ¶ 3)

It appears that this Court has subject matter jurisdiction despite the fact that both Plaintiff and Defendant are Canadian Citizens.[2]

### The Stock At Issue Is Traded On A Canadian Stock Exchange.

Plaintiff alleges that he had the right to participate in the stock option plans, attached as Exhibits 2 through 6 to the Amended Complaint. Franconia's stock is traded on the Toronto Stock Exchange (TSX) which has offices located in Vancouver, Calgary, Toronto, and Montreal. (Amended Complaint ¶ 25; Exhibit C at ¶ 3; Exhibit E).

### The Stock Option Plans Are Governed
### By The Laws of the Province of Alberta and Canadian Law.

The Stock Option Plans attached to the Amended Complaint require that they "be construed in accordance with the laws of the Province of Alberta and the federal laws of

---

[1] Also, Rowell is not a United States citizen, despite the fact that Canada allows for dual citizenship. (See Exhibit A; see also Exhibit B, United States Office of Personnel Management, Citizenship Laws of the World at p. 46; the entire publication is available at: http://www.opm.gov/EXTRA/INVESTIGATE/is-01.PDF, visited June 4, 2008, explaining that Canada allows for dual citizenship).

[2] While Plaintiff did not disclose his Canadian citizenship in the Amended Complaint, based upon Defendant's preliminary analysis, it appears that (at least in this Circuit) subject matter jurisdiction is not destroyed when a Canadian plaintiff sues a Canadian defendant.  See generally, Tango Music, LLC v. DeadQuick Music, Inc., 348 F.3d 244 (7th Cir. 2003); Zenith v. Kimball, 114 F. Supp. 2d 764, 767 (N.D. Ill. 2000)(finding in a matter of first impression that aliens from the same country on both sides of a controversy does not destroy diversity in a suit between diverse domestic citizens).  But see, Saadeh v. Farouki, 107 F.3d 52, 61 (D.C. Cir. 1997)("the 1988 amendment to § 1332 did not confer diversity jurisdiction over a lawsuit between an alien on one side, and an alien and a citizen on the other side, regardless of the residence status of the aliens."); and De Wit v. KLM Royal Dutch Airlines, N.V., 570 F.Supp. 613 (D.C.N.Y. 1983)(no subject matter jurisdiction where citizen of the Netherland was on each side of the controversy).

Canada applicable therein." (See Amended Complaint, Exhibit 2 at ¶ 24, Exhibit 3 at ¶ 9.6, Exhibit 5 at ¶ 9.6; Exhibit 6 at ¶ 23)[3]

### The Disputed March 4, 2007 Meeting
### Took Place In Toronto At A Meeting Among Canadian Geologists.

One of the main issues in this case relates to whether or not Plaintiff resigned (thus, making him ineligible for stock options) on March 4, 2007, at a meeting in Toronto, Canada among Canadian geologists. (Amended Complaint, at ¶ 21) The meeting was held at the Prospectors and Developers Association of Canada, which was attended by Plaintiff. (Exhibit C at ¶ 4; Exhibit D)

### Plaintiff And Potentially His Wife Are The Only Witnesses From
### Illinois And Only Documents In Plaintiff's Possession Are Located In Illinois.

It appears that other than Plaintiff (and potentially his wife) there are no other Illinois witnesses. On the other hand, Plaintiff has disclosed potentially utilizing a trial witness (Geoffrey Goad) from Toronto or the possibility of calling "an official of the Toronto Stock Exchange". (Exhibit D) Franconia has a number of witnesses from outside of Illinois who were present at the Toronto meeting described immediately above. (They were not present at the Gavin/Rowell meeting, but attended a dinner with Rowell after the meeting. During that dinner, Defendant alleges that Rowell made admissions which support Franconia's claim that he resigned). Three of Franconia's potential witnesses (George Tikkanen, Bonnie Kuhn--who also executed the Amended Stock

---

[3] Exhibit 4 (as attached to the Amended Complaint) is missing the relevant choice of law page, but Plaintiff alleges it is "identical" to Exhibit 3. See Amended Complaint, ¶ 13.

Option Plan on behalf of Franconia--and Lewis Lewrich) are Canadian citizens who reside in Canada. (Exhibit C at ¶ 5)[4]

The Record will also need to be established as to the content of the laws of Alberta and the Federal laws of Canada, as this Court will need to apply those laws in accordance with the stock option plans. This will likely occur through the parties calling expert witnesses (presumably from Canada and/or Alberta) on these foreign jurisdictions' substantive law in accordance with Federal Rule of Civil Procedure 44.1.

This is unlikely to be a case document intensive case--but the only documents that likely exist in Illinois (outside of those in counsels' possession) are those in Plaintiff's possession. (Exhibit D)

### Damages Are Determined Under The Canadian Dollar.

Plaintiff has determined damages, in the Amended Complaint, in part under the Canadian dollar (and then converting that amount to United States dollars). (Amended Complaint at ¶¶ 21, 25)

### III.    ARGUMENT

### A.    Applicable Legal Standards

Dismissal for *forum non conveniens* is appropriate when (1) an adequate alternative forum is available and adequate and (2) the public and private factors weigh in favor of dismissal. Kamel v. Hill-Rom Co., Inc., 108 F.3d 799, 802-803 (7th Cir. 1997); Leon v. Miller Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001). Courts consider (1) the degree of deference to be accorded to the plaintiff's choice of forum; (2) whether an

---

[4] In addition, there are other witnesses who will be expected to testify at trial who are not from either Illinois or Canada. For example, Bill Spear is a non-Franconia employee who is expected testify at trial. Spear resides in Colorado. Ernest Lehmann is a Franconia witness who may testify at trial. He resides in Minnesota. (Exhibit C at ¶ 6)

"adequate alternative forum" is available; and (3) whether the balance of certain "private" and "public" interest factors favors the alternative forum. See generally, Piper Aircraft v. Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252 (1981); Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Howe v. Goldcorp Investments Ltd., 946 F.2d 944, 950-51 (1st Cir. 1990). These considerations strongly support dismissal of this action in favor of a Canadian forum.

**B.**    **Canada Is An Adequate Alternative Forum**

Canada is an adequate alternative forum; indeed Plaintiff considered bringing this lawsuit in Canada but elected to sue here instead. (Exhibit F)[5]    "[T]he burden of establishing whether an alternative forum exists is not a heavy one."   Banco Latino v. Gomez Lopez, 17 F.Supp.2d 1327, 1331 (S.D. Fla. 1998). "Ordinarily, this requirement 'will be satisfied when the defendant is amenable to process in the other jurisdiction.'" Id. at 1331-1332.  A "defendant's submission to the jurisdiction of an alternate forum renders that forum available for purposes of *forum non conveniens* analysis." Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1245 (5th Cir. 1983).[6]

There is a wealth of precedent finding Canada is an adequate alternative forum. See generally, Penwest Development Corp. Ltd. v. Dow Chemical Co., 667 F.Supp. 436, 439 (E.D.Mich. 1987) ("Several courts have found Canada to be an adequate alternative forum, and rightly so."); Ministry of Health v. Shiley, Inc., 858 F.Supp. 1426, 1441-42 (C.D.Cal.1994) (finding Canada an adequate forum for resolving disputes); Ledingham v. Parke-Davis Div. of Warner-Lambert Co., 628 F.Supp. 1447 (E.D.N.Y. 1986)(finding

---

[5] Plaintiff initiated this lawsuit in the Circuit Court of Cook County despite his alleged residence in Lake County.
[6] As Defendant is a Canadian citizen, it is subject to Canadian jurisdiction and process.

Canada is an adequate alternative forum); <u>Roynat, Inc. v. Richmond Transp. Corp.</u>, 772 F.Supp. 417 (S.D.Ind.1991)(finding Canada an adequate alternative forum); <u>VictoriaTea.com, Inc. v. Cott Beverages</u>, 239 F.Supp.2d 377, 383 (S.D.N.Y. 2003)(in lawsuit involving breach of contract claim, court finds Canada an adequate alternative forum); <u>Chelios v. National Hockey League Players' Ass'n</u>**,** 2007 WL 178326 (N. D. Ill. Jan. 18, 2007).

Any potential differences in the available causes of action in Canada are insignificant to the *forum non conveniens* analysis.  <u>Piper Aircraft</u>, 454 U.S. at 254, 252 n. 19 ("the possibility of an unfavorable change in law" is not even "relevant" unless "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all"). The test is "simply" whether a party will have "**some** remedy" and will not be treated unfairly.  <u>Polanco v. H.B. Fuller Co.</u>, 941 F. Supp. 1512, 1525 (D. Minn. 1996).

Thus, Canada is an adequate alternative forum.

**C.** **Plaintiff's Choice of Forum Is Entitled To Minimal Deference**

Plaintiff's choice of forum deserves little deference for two reasons:

***First,*** Plaintiff elected to consult with and invest in a Canadian corporation and (as explained above in Section II) this case is linked closely with Canada and not Illinois. In <u>Warter v. Boston Securities, S.A.</u>, 380 F.Supp.2d 1299, 1314 (S. D. Fla. 2004), United States citizens (who resided in the United States) sued an Argentine securities brokerage and others arising out of an investment.  The Defendants moved to dismiss on the basis of *forum non conveniens*.  The Court noted that:

> Although courts usually afford deference to a Plaintiff's choice of forum, when an American plaintiff chooses to invest in a foreign country and then complains of

6

fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished.  (Citations Omitted)

See also, Von Holdt v. Husky Injection Molding Sys., Ltd., 887 F.Supp. 185, 188 (N.D.Ill.1995) (Castillo, J.) (citations omitted) (despite plaintiffs' Illinois residence, case was transferred in part because "[w]e disagree with the plaintiffs' argument that the controlling case law gives plaintiffs' choice of forum substantial weight. Although the plaintiffs' choice has been given substantial weight in some cases…it is not the only factor a court must consider. Moreover, the weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim."); Sussman v. Bank of Israel, 801 F.Supp. 1068, 1073 (S.D.N.Y. 1992) (recognizing that when Americans invest abroad, they are not immune to a *forum non conveniens* motion); Russellville Steel Co. v. Sears, Roebuck & Co., No. 99 C 485, 2000 WL 91680, at *3 (N.D.Ill. Jan. 19, 2000)("virtually no weight" given to choice of forum when the forum lacks "a significant relationship with the underlying dispute" that gave rise to the lawsuit ); Boyd v. Snyder, 44 F.Supp.2d 966, 970 (N.D.Ill.1999) (when the events giving rise to the cause of action did not take place in the plaintiff's selected forum the plaintiff's preference has minimal value even if it is his home forum).

Plaintiff elected: (a) to consult on behalf of a Canadian company, (b) to compensated in stock options of a Canadian corporation, (c) to be compensated with stock options traded on the Toronto Stock Exchange, and (d) to participate in a stock option plan that called for the application of Canadian law.   In light of Plaintiff's willingness to subject himself to a relationship so intimately connected to his country of citizenship (Canada), this Court should provide his choice of forum with little deference.

7

*Second,* while Plaintiff purports to be an Illinois resident for purposes of subject matter jurisdiction, the fact is that he remains a Canadian citizen and has not become a United States citizen. While Plaintiff may be entitled to some deference in light of the fact that he alleges Illinois residence, this Court respectfully should weigh this against the fact that he remains a Canadian citizen and that Illinois has very little relationship to this lawsuit for the reasons set forth in Section II.

**D.     The Public Interest Factors Favor Dismissal.**

The public interest factors include having local controversies decided at home, the administrative burden on the court of litigating disputes unrelated to the forum, the unfairness of burdening citizens in an unrelated forum with jury duty, and the interest in avoiding difficulties associated with claims brought under foreign laws. Gulf Oil, 330 U.S. at 508-09; Howe v. Goldcorp Investments, Ltd., 946 F.2d 944 (1st Cir. 1991). The public interest factors favor Canada for the following reasons:

*First*, Canada has a greater interest in resolving this dispute because of its interest in regulating the affairs of a Canadian corporation whose stock is publicly traded on one of its exchanges. In Gilstrap v. Radianz Ltd., 443 F.Supp.2d 474 (S.D.N.Y. 2006), affirmed 233 Fed.Appx. 83, 2007 WL 1541362 (2d Cir. 2007), the plaintiffs alleged that they were wrongfully denied rights under a stock option plan in an English company. The defendant moved to dismiss the case to England on the basis of *forum non conveniens*. The plaintiff argued that dismissal was not appropriate because*, inter alia*: (a) The defendant "sought out U.S. citizens for employment and enticed them to work for the company by offering participation in the [stock option plan]." (Id. at 480) (b) The plaintiff and 40% of the other plaintiffs were located in the United States (Id. at 475); and

(c) the Defendant maintained its operational headquarters in New York. (Id. at 476) In rejecting these arguments, the court noted that the dispute related to the stock option plan and the internal corporate governance of an English company. The court concluded that an English court had a far greater interest in hearing such a case. As the court explained:

> While some U.S. citizens accepted employment with, and options to acquire shares of, [Defendant], they were aware that they were working for an English corporation, and were being compensated, in part, in options on shares of an English company. Id. at 489-490.

See also, Howe, 946 F.2d 944(*forum non conveniens* motion granted where Untied States shareholder and others sued company whose stock was traded on a Canadian exchange).

As in Gilstrap, Plaintiff Rowell was aware he was consulting on behalf of a Canadian corporation and being compensated based on options in stock traded on a Canadian exchange. A Canadian court therefore has a stronger interest than one in Chicago in adjudicating these claims. Likewise, a Northern District of Illinois jury should not be burdened with resolving disputes between Canadian citizens.

Canada also has a great interest in seeing that stock options are not improperly granted to those persons who are not eligible. The economic impact of wrongfully issuing options/stock would unfairly dilute stock ownership of other owners of this Canadian public stock. Alternatively, if Defendant acted unlawfully, Canada has a great interest in seeing justice carried out to regulate one of its own companies (*i.e.* Franconia). See, Pyrenee, Ltd. v. Wocom Commodities, Ltd., 984 F.Supp. 1148, 1167 (N.D. Ill. 1997)(Castillo, J.)(in grating a *forum non conveniens* motion, the court stated that "Hong Kong has a much greater interest in policing the fraudulent activities of its own corporations, especially when they allegedly harm one of its own citizen's business ventures"); Howe, 946 F.2d at 953 (Canada had greater interest in hearing securities

action involving Canadian corporation whose stock sold on a Canadian exchange); Warlop v. Lernout, 473 F.Supp.2d 260, 264 (D. Mass. 2007) (in granting a *forum non conveniens* motion, the court found "most significantly, the shares of stock purchased in this case were all obtained on [the European Association of Securities Dealers Automatic Quotation System]"); DiRienzo v. Philip Servs. Corp., 294 F.3d 21, 31 (2d Cir. 2002); Toronto Stock Exchange v. Quotron Systems, Inc., 1992 WL 116636 *3 (S.D.N.Y. May 13, 1992)("Canada in general and Ontario in particular have a special interest in the outcome of these cases. The exchanges are a product of legislative mandate and their members are Canadian securities firms.").

   **Second**, the public interest factors favor dismissal because this Court should not be burdened with deciding a Canadian dispute under Canadian law or spending taxpayer funds on disputes among Canadian citizens. See generally, Ministry of Health v. Shiley, Inc., 858 F.Supp. 1426, 1442 (C.D.Cal.1994) (where parties were Canadian, "it is reasonable for Canada to incur the expense of a trial involving its own citizens"); Tannenbaum v. Brink, 119 F.Supp.2d 505, 513 (E.D.Pa.2000) (local citizenry should not be burdened with resolving matter involving French laws and occurring in French territory).

   **Third,** it is very significant that this Court would have to apply foreign law to resolve this case and this factor weighs heavily in favor of dismissal. See generally, Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925, 929 (N. D. Ill. 1999)(Castillo, J.)(dismissing a case under *forum non conveniens*, in part, because even if the parties agree on the application of foreign law, "they would still need to prove that law to this Court for appropriate application" and recognizing that a foreign jurisdiction

has an interesting in seeing its own law applied correctly);   Roynat, Inc. v. Richmond

Transp. Corp., 772 F.Supp. 417, 421 (S. D. Ind. 1991)(despite the court not being

convinced about a number of the factors warranting a transfer, the need to apply

Canadian law tipped the court's decision to transfer the case to Canada because "need to

apply foreign law in a case, although not conclusive, 'points toward dismissal' of a case

on *forum non conveniens* grounds."); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519

(11th Cir.1985) ("The need to resolve and apply foreign law should 'point [the trial court]

towards dismissal") (quoting Piper Aircraft Co., 454 U.S. at 251, 102 S.Ct. at 263);

Warter v. Boston Securities, S.A., 380 F.Supp.2d 1299, 1315 (S. D. Fla. Dec. 15,

2004)(the Court noted that "[e]ven the possibility that foreign law applies to a dispute is

sufficient to warrant dismissal on forum non conveniens grounds").

Accordingly, the public interest factors favor dismissal.

**E.    The Private Interest Factors Support Dismissal**

The private interest factors include: (1) the relative ease of access to source of

proof; (2) the availability of compulsory process for attendance of unwilling witnesses;

(3) the costs of obtaining attendance of the willing witnesses; and (4) all other practical

problems that make trial of a case easy, expeditious, and inexpensive.  Gulf Oil, 330 U.S.

at 508. The Supreme Court has recognized that "[t]o fix the place of trial at a point where

litigants cannot compel personal attendance [of witnesses] and may be forced to try their

cases on deposition, is to create a condition not satisfactory to court, jury or most

litigants." Gilbert, 330 U.S. at 511, 67 S.Ct. 839; as cited in VictoriaTea.com, Inc. v. Cott

Beverages, Canada, 239 F.Supp.2d 377 (S. D. N. Y. 2003); Schertenleib v. Traum, 589

F.2d 1156, 1165 (2d Cir.1978) ("inability to bring [witnesses] here for live cross

examination before a fact-finder" is "[p]erhaps the most significant problem" making adjudication in a United States court inappropriate); Howe, 946 F.2d at 951 ("And, only Canadian courts, not courts within the United States, have the legal power to compel the testimony of…Canadian potential witnesses who are not under the control of any party.").

In Roynat, Inc. v. Richmond Transp. Corp., 772 F.Supp. 417 (S. D. Ind. 1991) a Canadian corporation sued a Delaware corporation with its principal place of business in Indiana to enforce an agreement and to appoint a receiver. As for the location of evidence, the court *was not convinced* that such factors favored transfer for the following reasons: (a) documents were located in Indiana and California, and (b) Canada was not more convenient or expeditious for fact witnesses. However, the court concluded that transfer was appropriate due to the need not to apply Canadian law. As the Court explained:

> The fourth factor-general practical issues-tilts the balance of private interest concerns in favor of dismissal, due primarily to the practical difficulties caused by the applicability of Canadian law. If this Court were to hear [Plaintiff's] claims, it would face the substantial task of interpreting and applying Canadian law, a task with which it is not familiar and would require help. The Court (or a jury) would be forced to depend, at least to some degree, on experts in Canadian law. These experts (assuming none are located in Indiana) would have to travel a great distance to testify, which would cost the parties more time and money. A Canadian court, by contrast, would not require such experts, enabling it to render a decision more quickly and at less expense. Id at 422.

The private interests support dismissal in this case. No witnesses (other than Plaintiff and possibly his wife) are from Illinois. On the other hand, both sides have disclosed potential witnesses from Canada. As for documents, this is not a large factor because there are not many documents involved in this case. However, what clearly tips this case in favor of dismissal (as recognized in Roynat) is the need to apply Canadian

laws. This is especially so under the facts of this particular case especially since the amount sought in the Amended Complaint ($204,443.50, plus interest, and costs) is low when factoring in the likely expenses of both sides utilizing experts on Canadian law. See generally, Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925 (N. D. Ill. 1999)(Castillo, J.)(noting that dismissing a case for refiling in Germany would save the parties money on expert costs).

Accordingly, private interest factors also favor dismissal

## IV.    CONCLUSION

Wherefore, Defendant respectfully requests that this case be dismissed in its entirety pursuant to the doctrine of *forum non conveniens* for refiling in Canada.

Dated June 16, 2008                                      FRANCONIA MINERALS CORPORATION


By:       /s/ David J. Fish_____
            One of its Attorneys

David J. Fish
THE FISH LAW FIRM, P.C.
1770 N. Park Street, Suite 202
Naperville, IL 60563
(630) 355-7590

**From:**       Keith Davidson [keithdavidson@kldlawoffices.com]
**Sent:**       Tuesday, May 20, 2008 9:03 AM
**To:**         David Fish
**Subject:**    RE:

Mr Fish:

No, he is not.

Keith L. Davidson

-----Original Message-----
From: David Fish [mailto:dfish@fishlawfirm.com]
Sent: Mon 5/19/2008 6:29 PM
To: Keith Davidson
Subject: RE:

Keith:

I appreciate you letting me know that Plaintiff is a Canadian Citizen.  Is
he also a US Citizen?

Thanks, David Fish

EXHIBIT
4
tabbies

United States
Office of Personnel Management
**Investigations Service**

# Citizenship Laws of the World

*IS-1*
*March 2001*



# CANADA

**CITIZENSHIP**:  Citizenship is based upon the Canadian Citizenship Act, dated 1947, the Citizenship Act, and the Citizenship Regulations dated 1977.  All persons who were citizens of Canada before February 14, 1977 remained citizens of Canada.

Questions concerning persons born before January 1, 1947 (the date of independence), should be directed to the Embassy. (UKC-Commonwealth Nation)

- **BY BIRTH**:  Person born on or after February 14, 1977, regardless of the nationalities of the parents.  Exceptions to this law include children born to diplomatic personnel and children of parents who were not legal residents in Canada at the time of the birth.

- **BY DESCENT**:  Person born abroad, on or after February 14, 1977, at least one of whose parents was a citizen of Canada.  Upon reaching the age of 28, if the person has not returned to reside in Canada and applied to retain citizenship, Canadian citizenship will be revoked.

- **BY NATURALIZATION**: Canadian citizenship may be acquired upon fulfillment of the following conditions:
  - Person is 18 years or older.
  - Person has been a legal resident in Canada for three years out of the previous four years.
  - Person can communicate in English or French.
  - Person has knowledge of Canada, including the rights and responsibilities of citizenship.
  - Person is not under criminal sentence, order of deportation, or charged with or convicted of an indictable offence.

**DUAL CITIZENSHIP**:  RECOGNIZED.
Before the Citizenship Act of February 15, 1977, Canadian law limited dual citizenship.  Canadians who became citizens of another country before this date should check with the Embassy to see if they may still hold Canadian citizenship.

**LOSS OF CITIZENSHIP**:

- **VOLUNTARY**:  Voluntary renunciation of Canadian citizenship is permitted by law.  Contact the Embassy for details and required paperwork.

- **INVOLUNTARY**:  The following are grounds for involuntary loss of naturalized Canadian citizenship:
  - Naturalized citizenship was obtained through fraud or false statement.
  - Naturalized citizen has spent more than 10 years living abroad.

**ANY QUESTIONS** concerning citizenship, or requests for renunciation of citizenship, should be directed to the address below:

Embassy of Canada, Consular Section
501 Pennsylvania Ave., NW
Washington, DC  20001

Embassy/Consular Telephone: 202-682-1740
Fax: 202-682-7726

**www.canada.gc.ca/main_e.html**
**www.cic.gc.ca**
**www.statcan.ca**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  08 CV 2517 |
| | ) | |
| v. | ) | |
| | ) | Judge Castillo |
| FRANCONIA MINERALS CORPORATION, | ) | Magistrate Judge Brown |
| a foreign corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DECLARATION OF BRIAN GAVIN

Pursuant to 28 USC §1746, I swear under penalty of perjury that the following information is true:

1.    My name is Brian Gavin.  I am over the age of twenty-one and I am competent to make this Declaration and I have personal knowledge of the matters set forth herein.

2.    I am the President and Chief Executive Officer of Franconia Minerals Corporation (hereafter, "Franconia").

3.    Franconia is organized under the laws of Canada and has its principal place of business in Washington.  Franconia's stock is publically traded on the Toronto Stock Exchange (TSX).

4.    Paragraph 21 of the Amended Complaint in this case references Exhibit 7 which is a letter that I wrote to William Rowell.  In that letter, I state that Rowell advised Franconia on March 4, 2007 that he was terminating his services.  The March 4, 2007 meeting was held in Toronto, Canada.  It was at a conference of the Prospectors and

1



Developers Association of Canada.  The Prospectors and Developers Association of Canada is a group of Canadian geologists representing the interests of the mineral exploration and development industry.

5.      William Rowell and I both attended this meeting in Toronto, Canada on March 4, 2007. After my meeting with Rowell on March 4, 2007, Mr. Rowell attended a dinner with me during that same evening.  The dinner was also held in Toronto, Canada and other potential witnesses were present during the dinner.   Those witnesses include the following Franconia Directors: George Tikkanen, Bonnie Kuhn, and Lewis Lawrick. Tikkanen, Kuhn and Lawrick are each Canadian citizens who reside in Canada.  Kuhn is also our Vice President and Secretary who executed the Amended Stock Option Plan on behalf of Franconia.

6.      My understanding is that Bill Spear and Ernest Lehmann may also have knowledge of the facts alleged in the Amended Complaint.  Bill Spear resides in Colorado. Ernest Lehmann resides in Minnesota.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2008        _____

Brian Gavin

**From:**     Keith Davidson [keithdavidson@kldlawoffices.com]
**Sent:**     Thursday, May 15, 2008 3:14 PM
**To:**       dfish@fishlawfirm.com
**Subject:**  Rowell v. Franconia

Mr. Fish:

I regret that you are unable or unwilling to let me know over the telephone what you deem to be the issues and the scope of relevant discovery. The sooner you do, the sooner I will be able to marshal the evidence that the plaintiff is presenting and required to identify and produce to you under Rule 26(a)(1)(A). However, this e-mail is intended to constitute a preliminary compliance with that rule.

As I have previously advised you and the court, I believe that liability turns solely on the fact issue whether plaintiff terminated his services to defendant. It is my understanding that the defendant claims that he did so only orally and only in one meeting between plaintiff and Brian Gavin at which no one else was present. Therefore, it would appear that the plaintiff is the only witness presently required to be disclosed by the plaintiff on that issue under Rule 26(a)(1)(A). The plaintiff will testify that he never in any manner terminated his services with defendant.

The only records that I believe presently need to be disclosed by plaintiff on that issue under Rule 26(a)(1)(A) are the Consulting Agreement and Stock Option Agreements that are exhibits to the Amended Complaint.

As to the issue of the plaintiff's consequential damages, arising from plaintiff's claim to be compensated for deprivation of his stock options and withholding of his severance pay, plaintiff and Mr. Gavin and said Consulting Agreement and Stock Option Agreements, together with plaintiff's February 28 e-mail seeking to exercise his stock options and Mr. Gavin's March 6 e-mail refusing to honor them, appear to me to be the only disclosures presently required by plaintiff on that issue under Rule 26(a)(1)(A). The price of Franconia's stock, as listed on the Toronto Stock Exchange, will also be established by plaintiff on this issue. If the price cannot be established by the court taking judicial notice of it, or by a stipulation, testimony to establish it will be introduced from plaintiff's broker, Geoffrey Goad or, if necessary, from an official of the Toronto Stock Exchange. Mr. Goad's work address is: Raymond James LTD, Scotia Plaza–Suite 5300, 40 King Street West, PO Box 415, Toronto, ON M5H 3Y2.

I have requested the plaintiff to put together a list of the names and addresses of witnesses and records relevant to his claim for reliance damages, and I expect to be able to produce it to you before the June 24 pretrial.

If there is any additional discovery you seek from me, please advise. I cannot think of any, beyond what I have indicated or promised above, that would be relevant to the issues as I have conceived of and described them. Therefore, if you choose to request any additional discovery before filing your responsive pleadings, I would ask that you also please indicate the issues as to which you believe it would be relevant.

Keith L. Davidson



EXHIBIT

D

TSX Group Corporate Information | TSX Group

**tsx** group **TSX**

Home > About TSX Group > Corporate Information

Print this page
? Help

# About TSX Group

## Corporate Information

### TSX Group... Connecting global capital markets to Canada

From its pre-eminent domestic base, TSX Group's reach extends internationally, providing the global financial community with access to Canada's equity capital and energy markets. Each TSX Group operation is connected to and supports the activities of the others, all are focused on providing exceptional customer service from our offices in Vancouver, Calgary, Toronto and Montreal.

Toronto Stock Exchange (TSX) - As Canada's senior equities market, TSX provides an efficient, liquid market for a broad cross-section of Canadian issuers. TSX assists about 1,500 issuers through services designed to increase retail and institutional investors.

TSX Venture Exchange - Serving the public venture equity market. TSX Venture Exchange provides access to capital for companies at the early stages of their growth while offering investors a well-regulated market for making venture investments.

TSX Markets - TSX Markets facilitates trading on TSX and TSX Venture and provides innovative trading products to increase investor participation, particularly across North America.

Natural Gas Exchange (NGX) - As a leading North American energy exchange, Natural Gas Exchange connects the buyers and sellers of natural gas and electricity contracts, enabling them to manage the risks inherent in energy trading, and provides the associated clearing and settlement services.

TSX Datalinx - To meet growing global demand for financial and capital markets information, data is packaged and sold with more than 118,000 subscriptions worldwide via TSX Datalinx, connecting the Canadian capital markets to investors at home and abroad.

TSX Technologies - Fundamental to these operations is TSX Technologies, which powers the operations of TSX Group through state-of-the-art trading technology.

Listing, trading and market data - supported by trading technology. These are the key elements of TSX Group.

Page Last Updated: March 13, 2008

**Related Links:**

Board of Directors
Senior Management
TSX Group History
Download the TSX Group Corporate Profile in PDF format
Play TSX Group Video

tables°

EXHIBIT
E

http://www.tsx.com/en/about_tsx/corporate_information/index.html6/4/2008 7:34:16 AM

## David Fish

| | |
|---|---|
| **From:** | Keith Davidson [keithdavidson@kldlawoffices.com] |
| **Sent:** | Tuesday, May 20, 2008 11:01 AM |
| **To:** | David Fish |
| **Subject:** | RE: |
| **Attachments:** | 080512 Joint Status Report.wpd |

Mr. Fish:

I respectfully decline to follow your suggestion to voluntarily dismiss this case and re-file it in Canada.  Prior to filing in Illinois, my client fairly considered the option to file in Canada and decided against it.

Your assertion that Cook County is an improper venue is unfounded.  For the answer to your question, see 735 ILCS 5/2-101.

Kindly advise as to when you plan to be in downtown Chicago and available to meet with me to conduct a Rule 26(f) discovery conference and prepare the court-ordered joint status report.  Please also be reminded that I am beginning a 7 to 10 day trial on Monday, June 9 and will be unable to meet with you after June 5.

Attached is a preliminary draft of a joint status report that is structured to enable you to fill in your position on settlement, the issues, and discovery.

Please advise.

Keith L. Davidson


-----Original Message-----
From: David Fish [mailto:dfish@fishlawfirm.com]
Sent: Tue 5/20/2008 9:26 AM
To: Keith Davidson
Subject: RE:

Keith:

I would like to suggest that your client agree to voluntarily dismiss this case and re-file in Canada.  We are dealing with:

1.    A lawsuit between two Canadian citizens
2.    A lawsuit involving a stock traded on the Toronto stock exchange
3.    A lawsuit with damages to be determined in Canadian dollars
4.    A lawsuit which requires the court to apply Canadian laws since this is called for in the stock option agreement.
5.    Canadian law would certain give you client access to justice.

While I certainly appreciate your claim that your client is an Illinois resident for purposes of diversity of citizenship under Federal law, this does not change the fact that this case is really one that belongs in Canada.

I also would like to point out that your client elected an improper venue to originally file his lawsuit.  Assuming the truth of your allegations, he is a Lake County resident; yet the lawsuit was filed in Cook County.  How is it that Cook County was an appropriate venue.

Please give some thought to this.  It seems to be in everyone's interest to get a prompt resolution to this case in an appropriate resolution.

1


EXHIBIT
F