IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.  08 C 2517 |
| FRANCONIA MINERALS CORPORATION, | ) | Judge Castillo |
| a foreign corporation | ) | Judge Magistrate Brown |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR LEAVE TO FILE PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ON THE BASIS OF *FORUM NON CONVENIENS*

Now comes the Plaintiff, WILLIAM ROWELL, by his attorney, Keith L. Davidson, and moves for leave to file instanter **Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss on the Basis of *Forum Non Conveniens***, attached hereto.

By: /s Keith L. Davidson_____
Attorney for Plaintiff

Keith L. Davidson
**Law Offices of Keith L. Davidson**
2 N. LaSalle Street, Suite 1600
Chicago, IL 60602
(312) 419-0544

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No.  08 CV 2517 |
| FRANCONIA MINERALS CORPORATION, | ) | Judge Castillo |
| a foreign corporation | ) | Magistrate Judge Brown |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS ON THE BASIS OF *FORUM NON CONVENIENS***

Now comes the Plaintiff, by his attorney, Keith L. Davidson, and urges that Defendant's

motion should be denied for the following reasons:

## I.     Facts

### A.  Both Parties Are Citizens of the United States Under 28 USC § 1332

Plaintiff, a Canadian citizen, is an alien admitted to the U.S. for permanent residence;

whereby, under 28 USC § 1332 (a), he is a citizen of the U.S. and Illinois.  Plaintiff has resided,

worked, and paid taxes in the U.S. for 20 years and Lake Forest, Illinois for 10 years.  During all

that time, he has never lived or worked in Canada (Ptf's Decl.; Exh. "A;" and "Green Card;"

Exh. "B").

Defendant, a Canadian corporation, has its principal place of business in Washington, as

Defendant acknowledges (Memo, p.2); whereby, under 28 USC § 1332 (a) and (c), it is a citizen

of the U.S. and Washington[1].

---

[1] The motion states, p.2, fn. 1, and p.8 that Plaintiff did not choose to become an American citizen, though Canada allows dual citizenship, and it states on p.2, fn. 2, that Plaintiff failed to disclose in his Amended Complaint that he is a Canadian citizen.  It is difficult to comprehend the purpose of these assertions since a), defense counsel was specifically informed that Plaintiff has been a resident alien in the U.S. for almost 20 years; b), this court would have original jurisdiction of this case even if Plaintiff were not a permanent

B.  Washington Law Governs All Issues Raised by Plaintiff's Claim; His Consequential Damages Are Fixed, Partly in Canadian Dollars and Partly in U.S. Dollars; His Reliance Damages Are in U.S. Dollars; And There Are No Issues Under Canadian Law

Plaintiff alleges a simple breach of a contract, *i.e.* The Consulting Agreement (Amended Complaint, Exh. 1).  It provided, in ¶ 9, that it "shall be governed by the Laws of the State of Washington."  Defendant has not shown that a determination of whether Defendant breached it or Plaintiff is entitled to the relief claimed involves any issues of Canadian law.  The only genuine issue is the factual dispute over whether Plaintiff forfeited his stock options, under ¶ 8 of the Consulting Agreement, by terminating his consultancy.

Plaintiff's consequential damages, which are fixed under ¶ 8, consist solely of a), the difference, in Canadian dollars (easily convertible to U.S. dollars using the appropriate exchange rate), between the fixed price of Plaintiff's stock options and their average price on the Toronto Stock Exchange during the 30 days prior to when Franconia repudiated the Consulting Agreement by Gavin's March 6, 2008 letter; and b), $50,000 in **U.S. dollars** as severance pay. Plaintiff's reliance damages consist solely of his loss of other business opportunities to earn U.S. Dollars in the U.S. and Argentina (Ptf's Decl.; Exh. "A").

The motion asserts that "The Court will have to apply the laws of the Province of Alberta and the federal laws of Canada in construing the stock option plans at issue in this case," but Defendant nowhere identifies any dispute requiring the court to "construe" the stock option plans.  Plaintiff submits that the stock option plans are unambiguous and not at issue.

C.  The Dispute As To Whether Plaintiff Terminated His Consulting Agreement

---

resident alien in the U.S. or resided in Canada; and c),  as a creature of law, Defendant's citizenship in Canada, as in the U.S., exists solely for juridical purposes and is entitled to no deference.

In his March 6, 2008 letter, Gavin told Plaintiff he no longer held stock options because, on March 4, 2007, he terminated his services to Defendant and the 30 day period to exercise them thereafter, under ¶ 8, had expired. (Amended Complaint, ¶ 21, and Exh. 7 thereto).

The meeting referenced in the letter (and in Deft's memo, p.5) actually occurred on March 6, 2007.  Only Plaintiff and Gavin were present.  Gavin is a British citizen by birth who resides in Spokane, Washington and, as shown on his letterhead, works there at Defendant's headquarters (Ptf's Decl.; Exh. "A").

The motion, p. 3, states, "Franconia has a number of witnesses from outside of Illinois who were present at the Toronto meeting described immediately above.  (They were not present at the Gavin/Rowell meeting, but attended a diner with Rowell after the meeting.  During that dinner, Defendant alleges that Rowell made admissions which support Franconia's claim that he resigned.)"  This assertion is entitled to no consideration because: a), it is not supported by a Declaration of any of these "Franconia witnesses;" b), it is implicitly contradicted by Gavin's Declaration in which, as Defendant's CEO, he professes no knowledge of what these Franconia witnesses claim to know and describes them only as "potential witnesses" or "witnesses who may have knowledge of the facts alleged in the Amended Complaint;" c), it is expressly contradicted by Plaintiff's Declaration, Exh. "A;" and d), it is belied both by Defendant's draft and final interrogatory answers, Exh. "C" and "D."

Gavin's August 21, 2007 e-mail to Ernest Lehmann, Exh. "E," identified in Defendant's answer to interrogatory #5, states in pertinent parts:

> "I will e-mail Harry and Bill.  There is no problem with Bill working anywhere as long as he respects the confidentiality clause in his contract (which is the same as the one in our contract).  I believe the term is 2yrs [sic] from the date of termination.  **There is an issue in that Bill's contract has not been terminated formally.  He has not terminated it**

**and I won't terminate it as it would mean paying the 'golden parachute.' This means the 2 year clock has not started yet.**" [emphasis added]

Defendant's draft interrogatory answers demonstrate that, of the Franconia witnesses identified in the motion, only Bill Spear may be able to give relevant testimony. Draft answer #4 says Rowell told Spear he had resigned, but Defendant's final answer to interrogatory #4 does not so state; Gavin's Declaration doesn't say Spear has such knowledge; and the motion includes no Declaration from Spear. Defendant has had access to all of these individuals since, according to Gavin's Declaration, Tikkanen, Kuhn, and Lawrick are directors and Kuhn is an officer, of Defendant and since Defendant's interrogatory answers state that all of the witnesses identified therein, including also Lehmann and Spear, "may be reached through Defendant's counsel." Gavin's Declaration states that Spear and Lehmann reside in the United States. Both are American citizens (Ptf's Decl.; Exh. "A").

D.  Most by Far or All Witnesses Are Located in Illinois or Other of the United States

Referring to Plaintiff's counsel's e-mail of May 15, 2008, Deft's memo, Exh. "D," Defendant acknowledges that Plaintiff and his spouse will be witnesses. Defendant fails to disclose that Plaintiff has identified Ted De Matties, who resides in Cambridge, Minnesota, to give testimony bearing on Plaintiff's reliance damages, as Plaintiff's counsel informed Defense counsel in an e-mail dated June 13, Exh. "F". Defendant also fails to note that, according to that e-mail, Plaintiff's Canadian stock broker, Geoffrey Goad, or a Toronto Stock Exchange official, would testify as to the published market price only in the [unlikely] event it could not otherwise be established, such as by a stipulation, a request to admit, or judicial notice. Undoubtedly, it could also be established by a Chicago broker.

-4-

Thus, Plaintiff has identified three (Plaintiff, his spouse, and De Matties) and defendant has identified three (Gavin, Spear, and Lehmann) witnesses who reside in the U. S.; whereas, apart from the unlikely need to call a Canadian resident to establish the published price of Defendant's stock on the Toronto Stock Exchange, Plaintiff has identified no, and Defendant has identified only three, Canadian residents (Kuhn, Tikkanen, and Lawrick). That puts the ratio at 6 U.S. residents to 3 Canadian residents (or 3 U.S. residents to no Canadian residents if, as Plaintiff contends, a), Defendant's submission fails to establish, for purposes of the motion, that none of Defendant's Canadian residents has relevant testimony to offer; and b), the Toronto Stock exchange price can be established without a Canadian witness).

E.  Plaintiff's Work Under the Consulting Agreement Was Solely in the U.S.

Throughout its "Argument," Defendant misleadingly asserts that Plaintiff elected to consult on behalf of a Canadian company and to invest in a Canadian company.  It was Defendant who consulted Plaintiff, an Illinois resident, to do work, which Plaintiff did, entirely in the United States, including extensive work at his Lake Forest, Illinois home office and at mineral exploration sites in Minnesota and in Nevada.  Plaintiff performed no work for Defendant in Canada and his communications were virtually all, if not all, carried out with Defendant in Minnesota, to a lesser extent in Washington, and to little or no extent in Canada (Ptf's Decl.; Exh. "A").   In the Consulting Agreement, Plaintiff elected not to invest in Defendant but to perform consulting work for which he submitted invoices and was paid in cash (Ptf's Decl.; Exh. "A").  When he sought to exercise the stock options under the Consulting Agreement, Defendant refused to honor them on the pretext he had already terminated the Consulting Agreement.  There are no investment or investment practice issues in the case.  The

only genuine issues are whether, under Washington law, Defendant breached its promise to

honor Plaintiff's stock options and whether Plaintiff is thereby entitled to his claimed relief.

## II.    Argument

A.  Applicable Legal Standards (corresponding to Defendant's memo, pp. 4 and 5)

The Seventh Circuit's decision in Kamel v. Hil-Rom Co., Inc., 108 F. 3d 799 at 802-803

(7th Cir. 1997), cited in Deft's memo, p.4, sets forth, as follows, the principles governing a

decision of a motion to dismiss based on *forum non conveniens*:

"The principle of *forum non conveniens* comes down to this: a trial court may dismiss a suit over
which it would normally have jurisdiction if it best serves the convenience of the parties and the
ends of justice. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 507, 91 L. Ed. 1055, 67 S. Ct. 839
(1947); *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 91 L. Ed. 1067, 67 S. Ct. 828
(1947). When an alternative forum has jurisdiction to hear a case, and when a trial in the chosen
forum would result in vexation and oppression to the defendant which would far outweigh the
plaintiff's convenience or when the chosen forum would generate administrative and legal
entanglements for the trial court, the court may dismiss the case. *Piper Aircraft Co. v. Reyno*,
454 U.S. 235, 241, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981); *see also Macedo v. Boeing Co.*, 693
F.2d 683, 689 (7th Cir. 1982).

A *forum non conveniens* determination is consigned to the trial court's sound discretion. *Piper*,
454 U.S. at 254. Where a district court has contemplated all relevant public and private interest
factors and where its balancing of these factors is reasonable, its *forum non conveniens*
determination warrants substantial deference. *Id.; Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d
1239, 1245 (7th Cir. 1990), *cert. denied*, 499 U.S. 947, 113 L. Ed. 2d 468, 111 S. Ct. 1415
(1991). We review this determination only for abuse of discretion. *Id.; see also Wilson*, 916 F.2d
at 1245.
                                    * * *
Provided an adequate alternative forum exists, the district court must then balance the private
and public interest factors that emerge in a given case. *Gilbert*, 330 U.S. at 508; *Koster*, 330 U.S.
at 524. Ordinarily, the trial court should not supplant the plaintiff's choice of forum. *Piper*, 454
U.S. at 241; *Wilson*, 916 F.2d at 1245. When the plaintiff chooses his *home* forum, it is
reasonable to assume that this choice is convenient. *Piper*, 454 U.S. at 256.

The factors pertaining to the private interests of the litigants include the relative ease of access to
sources of proof; availability of compulsory process for the attendance of unwilling witnesses;
the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises,
if necessary; and all other practical problems that make trial of a case easy, efficient and
economical. *Gilbert*, 330 U.S. at 508. The public factors include the administrative difficulties
stemming from court congestion; the local interest in having localized disputes decided at home;

the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper*, 454 U.S. at 241 n.6[2]."

B.  Plaintiff's Choice of a Forum is Entitled to Deference (corresponding to Defendant's memo, pp. 6-8)

There is ordinarily a strong presumption in favor of Plaintiff's choice of a forum, which may be overcome only when private and public interest factors point towards trial in the alternative forum.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 265-266(1981); Kamel v. Hill Rom Co., Inc., 108 F.3d 799, at 803(7th Cr. 1997).

Since Plaintiff is a resident of this forum, his choice of this forum is entitled to the same deference as if he were an American citizen residing here[3].  Macedo v. The Boeing Co., 693 F.2d 683, at 688 (7th Cir. 1982).  Defendant cites no authority for its argument that Plaintiff's choice is entitled to less deference because he has not become an American citizen, and Plaintiff has discovered none.

Contrary to its memo, p.6, Defendant consulted Plaintiff (not the reverse) and this case has no apparent link with Canada but is entirely linked to the United States.  Plaintiff did all of his work for Defendant in his Lake Forest, Illinois home office and at mineral exploration sites in Minnesota and Nevada, and he communicated with Defendant primarily in Minnesota, to a lesser extent at Defendant's Washington headquarters, and to little or no extent in Canada.

While the meeting at which Defendant claims Plaintiff terminated his services took place during an international conference in Toronto, the only other person present was Gavin, a British

---

[2] Omitted from the above quotation is the court's discussion of the adequacy of an alternative forum since Plaintiff does not deny that Canadian courts could provide an adequate alternative forum.

[3] On p. 5, fn. 5 of its memo, Defendant states that "Plaintiff initiated this lawsuit in the Circuit Court of Cook County despite his alleged residence in Lake County."  The Cook County venue, located only 3 blocks from this court, was proper under 735 ILCS 5/2-102(a) and only a short train ride from Lake Forest.

citizen who works and resides in Washington. The only other witness who, according to

Defendant, Plaintiff told what was said at the meeting is William Spear, an American citizen

who works and resides in Colorado.[4]

## C.  The Private Interests Weigh Against The Motion

Gavin, as Defendant's CEO, is under its control.  Neither Gavin nor Spear is under

Plaintiff's control.  If this case were pending in Canada, Plaintiff would need to seek issuance of

letters rogatory from a Canadian court to obtain depositions through American courts, in aid of

the Canadian litigation, from Gavin, Spear, and De Matties.  If the case remains here, Defendant

will face no such difficulty in deposing Gavin, Spear, or De Matties.

Defendant has failed to demonstrate that any of its three Canadian witnesses: Tikkanen,

Kuhn, and Lawrick, can offer any relevant testimony or to include a Declaration from any.  If

their testimony is needed, Defendant controls them all since each is a director and one is an

officer of Defendant.  Nor would it serve the parties' convenience for this case to be brought in

Canada since Tikkanen resides in Vancouver, Kuhn in Calgary, and Lawrick in Toronto (Ptf's

Decl.; Exh. "A").  Responsive answers to Plaintiff's interrogatories, as to what testimony

Defendant proposes to elicit from these witnesses, will obviate the need for Plaintiff to depose

them.

Plaintiff and his spouse reside here.  There is no alternative forum in which more than

one witness identified by either side resides.  Defendant has made no showing that it would be

less costly to litigate this case in a Canadian forum than here.  It is reasonable to assume that the

cost of bringing the 6 U.S. witnesses to Canada and two of the three Canadian witnesses to a

---

[4] Defendant so states in its draft answer (but not in its final answer) to Plaintiff's interrogatory #4 and provides no Declaration from Spear or confirmation of Spear's knowledge in Gavin's Declaration.

different location in Canada would not be less than litigating the case here, to say nothing of the added cost of obtaining letters rogatory if the case were litigated in Canada.

Defendant's contention that Plaintiff did no work for a year before seeking to exercise his stock options is irrelevant. Defendant cites no Washington law under which, if true, it would be a defense. It is factually without merit since, as a consultant, Plaintiff could only do work Defendant asked him to do. Moreover, Plaintiff did do work, at Defendant's request, during that year and all of it was in the U.S. As Defendant concedes, the availability of documents is not a significant factor (Deft's memo, p. 12).

D.  The Public Interest Factors Weigh Against The Motion

This case turns on a simple factual issue. Both parties have agreed to a trial before a magistrate and estimated its length at three days. It will not contribute significantly to court congestion.

There is a local interest in having the case decided here since Plaintiff, a permanent alien resident here with his spouse, an American citizen, was solicited by Defendant and performed much of his work for Defendant here. Illinois' interest in protecting its residents is equal to any interest Canada has in the case.

The controversy is governed by Washington law. There is no issue of Canadian law. Defendant has not shown that there is any disputed issue of Washington law. If there were, an American court is as well, if not better, situated than a Canadian court to apply it, especially since it likely is similar to Illinois law, with which this court is familiar.

There is no unfair burden on Illinois citizens to serve as jurors since the case is related to this forum and Plaintiff has paid federal taxes for 20 years and Illinois taxes for 10 years that go to support the administration of justice here.

Since the Amended Complaint raises no issues under Canadian law, Defendant attempts to manufacture one, in the passage quoted below from p. 9 of its memo, by implying it may have violated Canadian law in issuing Plaintiff stock options in the Consulting Agreement:

> "Canada also has a great interest in seeing that stock options are not improperly granted to those persons who are not eligible. The economic impact of wrongfully issuing options/stock would unfairly dilute stock ownership of other owners of this Canadian public stock. Alternatively, if Defendant acted unlawfully, Canada has a great interest in seeing justice carried out to regulate one of its own companies (*i.e.* Franconia)."

Defendant has not dared to plainly represent to this court that it violated Canadian law in making, or would do so in keeping, its contractual promise to Plaintiff of stock options. Nor is Plaintiff contending that Defendant violated Canadian law in contractually promising Plaintiff stock options or would violate Canadian law by keeping that promise. Neither side is making such a contention[5].

But, even if Defendant were to make such a contention, there would be no issue of Canadian law. Plaintiff would demur to it on the basis that, under Washington law: a), any illegality of the promise under Canadian law does not exempt Defendant from liability because it does not offend Washington public policy, Plaintiff was excusably ignorant of the illegality, and Plaintiff conferred the benefit of his services on Defendant pursuant to the Consulting Agreement; and b), an award of money damages will make Plaintiff whole without need of requiring Defendant to keep the promise. Therefore, the authorities Defendant cites to argue that

---

[5] If Defendant's promise of stock options to Plaintiff violated Canadian law, it could justify claims of estoppel or fraud under Washington law. But neither is unnecessary.

the motion should be granted in order to spare this court having to apply Canadian law are, to that extent, irrelevant.

In stating, "However, what clearly tips the balance in favor of dismissal (as recognized in <u>Roynat</u>) is the need to apply Canadian law," Deft.'s memo, pp.12-13, Defendant correctly implies that, if its suggestion of a Canadian law issue were without merit[6], the balance would tip against the motion, even if all of Defendant's other arguments are well founded, which, Plaintiff submits, they are not. This implication is compelled by the greater importance the forum courts placed, in the cases Defendant cites, on the need to interpret and apply foreign national law relative to other public and private interest factors that, it should be noted, weighed far more in favor of dismissal in those cases than they do here.

For example, <u>Warter v. Boston Securities, S.A.</u>, 380 F.Supp.2d 1299, (S. D. Fla. Dec. 15, 2004), Deft. memo pp. 6, 11, was an extraordinarily complex case brought by a U.S. citizen, his wife and their wholly owned Uruguayan company against an Argentine securities brokerage firm, its owner, one of its brokers, and others alleging fraud and related torts in connection with alleged embezzlement of funds invested with the brokerage. The relevant evidence came from the 18 banks and 42 individuals via a previously filed and ongoing criminal prosecution involving the same subject matter and many of the same parties, as well as from other defrauded customers and representatives of the Argentine Securities Commission and Buenos Aires Stock exchange. Argentina's only means of compelling unwilling witnesses to testify in aid of the U.S. case would be a foreign letter rogatory, which could take up to three years and would allow no discovery, as contrasted with the availability of Argentina's rules of procedures to obtain

---

[6] The need to apply foreign law, when it favors dismissal, is not alone sufficient to warrant dismissal when a balancing of all relevant factors shows that Plaintiff's choice of a forum is appropriate. <u>Piper Aircraft Co., supra</u> 454 U.S. at 438, fn. 29.

discovery and compel testimony if the case were pending in Argentina.  The cost of obtaining

testimony in Argentina would have been immense and there would have been greater

enforceability there of an Argentina judgment[7].

Gilstrap v. Radianz Ltd., 443 F.Supp.2d 474 (S.D.N.Y. 2006), *affd.* 233 Fed.Appx. 83,

(2nd Cir. 2007), Deft. memo, pp. 8-9, was a class action brought against an English corporation,

its seller, and buyer, both of whom were English, by two of it officers in behalf of themselves

and all of the corporation's current and former employees claiming wrongful denial of stock

option benefits resulting from defendant's tortious manipulation of the price of its stock, so as to

make those stock options worthless.  Only slight deference was given to the plaintiffs' choice of

a forum because the officers were not residents of the district and were bringing a class action;

the litigation was centered on events that occurred in England, particularly an amendment of the

stock option plan in connection with a sale from one English company to another English

company in England; the plaintiff's class was worldwide, and 60% of it resided in England; one

plaintiff resided in England and had no bona fide connection with the forum court, and the other

plaintiff resided in Texas; the majority of party and non-party witnesses and key witnesses were

based in England; cumbersome use of letters rogatory would need to be employed to obtain

testimony from many witnesses residing in England; the majority of documents and evidence

was located in England; and the matters at issue were largely those of internal corporate

governance of English companies.

Similarly, Sussman v. Bank of Israel, 801 F.Supp. 1068 (S.D.N.Y. 1992), Deft. memo p.

7, was a suit brought in New York by plaintiffs who did not reside in New York against an

Israeli bank for alleged fraudulent investment practices that took place exclusively in Israel.

---

[7] A money judgment of this court against Defendant could be executed against its corporate and financial
assets in Washington and its mineral asserts located in Minnesota and elsewhere in the U.S.

In <u>Roynat, Inc. v. Richmond Transp. Corp.</u>, 772 F.Supp 417 (S.D. Ind. 1991), Deft.'s memo p.12, a Canadian Corporation sued a Delaware Corporation whose principal place of business was in Indiana to enforce defendant's guarantee of a debt to plaintiff of a Canadian subsidiary of plaintiff. The key witnesses and relevant documents, which were numerous, were divided roughly equally between Canada, California, and the Indiana forum, and there was real property in Canada whose inspection was not essential but could be probative.

In the instant case, Plaintiff and his spouse are key witnesses who have resided in this forum for ten years, he as a permanent resident alien and she as an American citizen; Plaintiff was solicited by and performed much of his consulting work for Defendant in this forum; Canada is not a more convenient or less expensive forum since, of the 9 witnesses identified by the parties, 6 reside and are amenable to a federal court subpoena in the U.S. but could be compelled to testify in a Canadian case only through the issuance of Canadian letters rogatory, Defendant's 3 Canadian witnesses are spread across Canada and have not even been shown to possess any relevant knowledge; and documents and real property are not factors.

The remaining cases Defendant cites, which involved no foreign national law issues, are distinguishable for the same reasons. <u>Von Holdt v. Husky Injection Molding Systems, Ltd.</u>, 887 F. Supp 185 (N.D. Ill. 1995), Deft. memo p. 7, was a complex patent infringement suit. This court granted a motion to transfer venue to a Massachusetts federal court, pursuant to 28 USC § 1404(a), because: a), all of the central facts and circumstances took place in Massachusetts; and b), the convenience of the parties weighed heavily in favor of transfer in that all of defendant's documents and financial records were located in Massachusetts; all of defendant's products were designed, manufactured, and shipped in Massachusetts; the employees most likely to have

knowledge of the facts were located in Massachusetts; defendant's Illinois subsidiary did not sell the allegedly infringing product; and the only connection of the case to Illinois was plaintiff's residence in Illinois.

Boyd v. Snyder, 44 F.Supp.2d 966 (N.D.Ill.1999), Deft. memo, p. 7, was a class action brought by inmates in an Illinois state prison against the Illinois Department of Corrections and many of its officials and employees for alleged violations of their constitutional rights.  Venue was transferred to the Southern District of Illinois, where the prison was located, because, in a class action, plaintiffs' choice of a forum was entitled to less weight and all of the alleged acts took place there and most of the many defendants resided there.

### III.    Conclusion

Defendant has failed to demonstrate that private and public interest factors clearly point to a Canadian forum as being more convenient than this forum and, therefore, has not overcome the strong presumption that the Plaintiff's choice of this forum is convenient for litigation of this controversy.

/s Keith L. Davison
Attorney for Plaintiff

Keith L. Davidson
**Law Offices of Keith L. Davidson**
2 N. LaSalle, Suite 1600
Chicago, IL 60602
(312) 419-0544

-14-

# EXHIBIT LIST

**Declaration of William Rowell** . . . . . . . . . . . . . . . . . . . . . . . . . . .    **A**

**Copy of Plaintiff's Green Card** . . . . . . . . . . . . . . . . . . . . . . . . .    **B**

**Defendant's Draft June 17 Interrogatory Answers** . . . . . . . . . .    **C**

**Defendant's June 20 Interrogatory Answers** . . . . . . . . . . . . . . . .    **D**

**Brian Gavin's August 21, 2007 e-mail to Ernest Lehmann** . . . .    **E**

**Plaintiff's Counsel's June 13 e-mail to Defense Counsel** . . . . . .    **F**

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM ROWELL                              )
           Plaintiff,                 )
                              )
           v.                            )
                              )    Case No.  08 CV 2517
FRANCONIA MINERALS CORPORATION,             )    Judge Castillo
a foreign corporation                       )    Magistrate Judge Brown
           Defendant.                 )

## DECLARATION OF WILLIAM ROWELL

Pursuant to 28 USC §1746, I swear under penalty of perjury that the following information is true:

1.     My name is William Rowell.  I am over the age of twenty-one and I am competent to make this Declaration and I have personal knowledge of the matters set forth herein.

2.     I am a trained geologist and the Plaintiff in the above-captioned case.

3.     I am a Canadian citizen and, as shown on my Green Card attached hereto, I am also an alien admitted to the United States for permanent residence.  I have resided and paid taxes in the United States for almost 20 years and in Lake Forest, Illinois for almost 10 years. During all that time, I have never lived, worked, or paid taxes in Canada.

4.     I did not solicit consulting work from Defendant.  Defendant solicited me in Illinois to render my services as a consultant.

5.     By entering into the Consulting Agreement, I did not elect to invest in Defendant. I elected to perform consulting work for Defendant and I submitted invoices for that work and was paid for it in cash.

-1-

6.    My consulting work for Defendant, under the Consulting Agreement, was performed entirely in the United States, including at my Lake Forest, Illinois home office and at mineral exploration sites primarily in Minnesota and secondarily in Nevada. I performed no work for Defendant in Canada, and my communications with Defendant were carried out primarily in Minnesota, to a lesser extent in Spokane, Washington, and to little or no extent in Canada.

7.    The March, 2007 meeting referred to in Brian Gavin's March 6, 2008 letter to me and in Defendant's motion took place on March 6, 2007, not on March 4, 2007, and the only person present besides me was Gavin, a British citizen by birth who works and resides in Washington. I did not terminate my services under the Consulting Agreement at that meeting, or at any other time.

8.    William Spear and Ernest Lehmann both reside in the United States and both are American citizens. I never told Spear or anyone else that I terminated my services under the Consulting Agreement.

9.    George Tikkanen resides in Vancouver, B.C., Bonnie Kuhn resides in Calgary, Alberta, and Lewis Lawrick resides in Toronto, Ontario.

10.    The reliance damages I claim as a result of Defendant's breach of contract consist solely of my loss, owing to my commitment to Defendant, of business opportunities to earn U.S. Dollars working for others in the United States and in Argentina.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2008

William Rowell

-2-

# Exhibit B



# Exhibit C

## Response To Interrogatories

**1.    State the full name and address of the person answering and, if different, the full name and address of the individual signing the answers.**

**Answer:**

Brian Gavin
111 E. Magnesium Road, Suite A
Spokane, WA 99208

**2. Attached hereto is a copy of a March 6, 2008 facsimile to plaintiff from defendant's**

**President and CEO, Brian Gavin, wherein it is asserted that "On March 4, 2007, you advised the Corporation that you were terminating your services under your consulting agreement with the Corporation." With respect to the advice referred to in said facsimile, please:  a) State whether plaintiff communicated said advice to the Corporation in writing**

**and, if so, state a), whether he did so by letter and/or by any other method; b), the date of each such written communication; c), the date on which each such written communication was received by the Corporation; and d), attach a copy of each such written communication to your answer to these interrogatories.**

 **Answer:**

(a)      No
(b)      Not applicable
(c)      Not applicable
(d)      Not applicable

 Investigation Continues

 **3.      Apart from the facts asserted in Mr. Gavin's March 6, 2008 facsimile, state any**

**additional facts that you contend demonstrate, or contribute to demonstrate, that plaintiff is not entitled to the relief claimed in his complaint.**

 **Answer:**

Plaintiff resigned, Plaintiff stopped work and was unwilling to work; Plaintiff did not perform work for Defendant as required, Plaintiff is not contractually entitled to the relief sought, Plaintiff accepted new work.  Investigation continues

**4. State the full name and address, and the last known residence address, of each person who claims to have knowledge of any facts stated in answer to the preceding interrogatory, and state which of said facts each said person claims to have knowledge of, and state the source of each said person's knowledge thereof.**

**Answer:**

Defendant objects on the basis that this request is premature, overly broad and unduly burdensome.  Defendant is still investigating witnesses and reserves the right to supplement its responses. Notwithstanding said objections:

William Rowell
Lake Forest, Illinois

Brian Gavin
111 E. Magnesium Road, Suite A
Spokane, WA 99208
Gavin has facts relevant to the Amended Complaint and Franconia's expected defenses.

Ernest Lehmann
(May be reached through Defendant's counsel)
Lehmann has facts relevant to the Amended Complaint and Franconia's expected defenses and Rowell's work.

George Tikkanen
(May be reached through Defendant's counsel)
Tikkanen attended a dinner Rowell attended after he resigned.

Bonnie Kuhn
(May be reached through Defendant's counsel)
Kuhn attended a dinner Rowell attended after he resigned.  Kuhn has information relevant to the stock option agreements/plans, and has knowledge of Canadian and Alberta law.

Lewis Lawrick
(May be reached through Defendant's counsel)
Lewrich attended a dinner Rowell attended after he resigned.

Bill Spear
(May be reached through Defendant's counsel)
Was told by Rowell about Plaintiff's resignation.

**5.      Was any internal letter, memorandum, or electronic record created or sent or filed that memorialized plaintiff's March 4, 2007 advice to the Corporation that he was terminating his services to the Corporation? If so, state the name of the author(s), the name of the recipient(s), and the date of each said item; and attach a copy of each item to your answer to these interrogatories.**

 **Answer:**

See Gavin June 20, 2007 email stating "Rowell is history";  See August 21, 2007 email between Gavin and Lehmann referencing Franconia's permission to work elsewhere so long as Rowell respects his confidentiality clause.  Investigation continues.

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM ROWELL )
)
         Plaintiff, )    Case No.     08 CV 2517
)
    v. )
)    Judge Castillo
FRANCONIA MINERALS CORPORATION, )
a foreign corporation )
)
         Defendant. )
)

**DEFENDANT'S ANSWERS TO
PLAINTIFFS' INTERROGATORIES**

NOW COMES the Defendant, FRANCONIA MINERALS CORPORATION and as its

response to Plaintiff's Interrogatories states as follows:

1.    State the full name and address of the person answering and, if different, the full name
and address of the individual signing the answers.

    **Answer:**

    Brian Gavin
    111 E. Magnesium Road, Suite A
    Spokane, WA 99208

2.    Attached hereto is a copy of a March 6, 2008 facsimile to plaintiff from defendant's
President and CEO, Brian Gavin, wherein it is asserted that "On March 4, 2007, you advised the
Corporation that you were terminating your services under your consulting agreement with the
Corporation." With respect to the advice referred to in said facsimile, please: a) State whether
plaintiff communicated said advice to the Corporation in writing and, if so, state a), whether he
did so by letter and/or by any other method; b), the date of each such written communication; c),
the date on which each such written communication was received by the Corporation; and d),
attach a copy of each such written communication to your answer to these interrogatories.

    **Answer:**

    (a)    No
    (b)    Not applicable
    (c)    Not applicable

(d)     Not applicable

Investigation Continues.

3.     Apart from the facts asserted in Mr. Gavin's March 6, 2008 facsimile, state any additional facts that you contend demonstrate, or contribute to demonstrate, that plaintiff is not entitled to the relief claimed in his complaint.

**Answer:**

There was a March 4, 2007 meeting that was held in Toronto, Canada.     It was at a conference of the Prospectors and Developers Association of Canada.   The Prospectors and Developers Association of Canada is a group of Canadian geologists representing the interests of the mineral exploration and development industry.  William Rowell attended this meeting in Toronto, Canada. During a meeting with Brian Gavin, Rowell resigned.   Thereafter, Rowell attended a dinner and informed other Franconia persons of his resignation.

Plaintiff stopped work and was unwilling to work.   Plaintiff did not perform work for Defendant as required.  Plaintiff is not contractually entitled to the relief sought because he failed to meet the requirements for exercising options in the parties' contracts by, *inter alia,* serving as a Franconia consultant.

Upon information and belief, Plaintiff accepted new work after his consultancy terminated.

Investigation continues and Defendant reserves the right to supplement this response.

4.     State the full name and address, and the last known residence address, of each person who claims to have knowledge of any facts stated in answer to the preceding interrogatory, and state which of said facts each said person claims to have knowledge of, and state the source of each said person's knowledge thereof.

**Answer:**

Defendant objects on the basis that this request is premature and overly broad.  Defendant is still investigating witnesses and reserves the right to supplement its responses. Notwithstanding said objections:

William Rowell
Lake Forest, Illinois
Rowell attended the meeting in Canada as described above.

Bill Spear
3619 Roundtree Ct.
Boulder, CO 80304 (Residential)

8301 East Prentice Avenue Suite 312
Greenwood Village, CO  80111  (Business)

Has knowledge of Rowell`s resignation.

Brian Gavin
(May be reached through counsel, See address above)

Gavin has facts relevant to the Amended Complaint and Franconia's expected defenses. Gavin attended the meeting in Canada and spoke directly with Rowell about his resignation.

Ernest Lehmann
(May be reached through Defendant`s counsel)
12 South Sixth St, Suite 622,
Minneapolis, MN  55402  (Business)

1982 Kenwood Parkway (Residential)
Minneapolis MN 55405


Lehmann has facts relevant to the Amended Complaint and Franconia`s expected defenses and Rowell`s work including both before and after termination.

George Tikkanen
(May be reached through Defendant`s counsel)
5044 Pinetree  Cr.
West Vancouver BC
V7W 3A3        (Residence)

5044 Pinetree Cresent
West Vancouver  B.C.  V7W 3A3
Canada          (Business)

Tikkanen attended a dinner Rowell attended immediately after he resigned.

Bonnie Kuhn
(May be reached through Defendant`s counsel)
7415 35th Avenue NW
Calgary, Alberta T3B 1T4     (Residential)
Canada


Kuhn attended the dinner Rowell attended after he resigned.  Kuhn has information relevant to the stock option agreements/plans, and has knowledge of Canadian and Alberta law. Kuhn has informed of Rowell's consultancy status.

Lewis Lawrick
(May be reached through Defendant's counsel)
120 Adelaide Street West, Suite 2400
Toronto, Ontario  M5H 1T1  (Business)

938 Meadow Wood Road
Mississauga, Ontario - Canada, L5J 2S6  (Residential)

Lawrick attended a dinner Rowell attended immediately after he resigned.


5.      Was any internal letter, memorandum, or electronic record created or sent or filed that memorialized plaintiff's March 4, 2007 advice to the Corporation that he was terminating his services to the Corporation? If so, state the name of the author(s), the name of the recipient(s), and the date of each said item; and attach a copy of each item to your answer to these interrogatories.

        **Answer:**

        See Gavin June 20, 2007 email stating "Rowell is history"; See August 21, 2007 email between Gavin and Lehmann referencing Franconia's permission to work elsewhere so long as Rowell respects his confidentiality clause.  Investigation continues; Defendant reserves the right to update this response.


                        FRANCONIA MINERALS CORPORATION


                        By: __/s/ David Fish_____
                              David J. Fish

David J. Fish
The Fish Law Firm, P.C.
1770 N. Park Street, Suite 202
Naperville, IL 60604
(630) 355-7590

# Exhibit E

From: Brian Gavin <bgavin@franconiaminerals.com>
Subject: **Re: Encampment**
Date: August 21, 2007 09:16:52 PDT
To: Ernest Lehmann <geomine@worldnet.att.net>



Ernie,

I will email Harry and Bill. There is no problem with Bill working anywhere as long as he respects the confidentiality clause in his contract (which is the same as the one in our contract). I believe the term is 2yrs from the date of termination. There is an issue in that Bill's contract has not been terminated formally. He has not terminated it and I won't terminate it as it would mean paying the " golden parachute". This means the 2 year clock has not started yet.

I will communicate with Harry but he and Bill are the really the ones who can tell us whether Bill's work for them will or will not contravene the confidentiality cause.

Regards

Brian

Franconia Minerals Corporation
111 E. Magnesium Road, Suite A
Spokane, WA 99208
U.S.A.

Tel: 509 340 1328
Fax: 509 696 9680
Cell: 509 263 7213

---

**From:** "Ernest K. Lehmann" <geomine@worldnet.att.net>
**Date:** Tue, 21 Aug 2007 11:36:53 -0500
**To:** <bgavin@franconiaminerals.com>
**Cc:** <geomine@worldnet.att.net>
**Subject:** Encampment

Brian -

Hope the biking is good.

Harry Noyes of Encampment called me today to ask if we would have any objections if they used Bill Rowell to help them with logging some drilling that they plan for the near future on some state leases they have. I believe that the area is near Filson Creek south of Spruce Road, but I am not sure.

I told him that that was a matter for you to respond to. I also told him that you were out till the 5th.

Ernie

Exhibit F

Reply  Reply to all  Forward  |  ✉ ✉ ✕  |  ⬆ ⬇  |  Close  |  ❓ Help

| From: | Keith Davidson | Sent: Fri 6/13/2008 12:37 PM |
|---|---|---|
| To: | dfish@fishlawfirm.com | |
| Cc: | | |
| Subject: | Witness | |
| Attachments: | | |

View As Web Page

Mr. Fish:

Kindly be advised that Ted De Matties, 34898 University Ave. NE, Cambridge MN 55008-8140, will be a witness for plaintiff to establish plaintiff's reliance damages arising from work plaintiff declined because of his consulting commitment to Franconia.

Keith L. Davidson