IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  08 CV 2517 |
| | ) | |
| v. | ) | |
| | ) | Judge Castillo |
| FRANCONIA MINERALS CORPORATION | ) | Magistrate Judge Brown |
| a foreign corporation | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

### I.    Introduction

*Forum non conveniens* dismissal (for re-filing in Canada) is appropriate because:

(1)    The events giving rise to the lawsuit occurred in Toronto, Canada at a meeting among Canadian geologists.

(2)    Canadian and Alberta law, by agreement of the parties, govern the heart of this dispute.  Four of the five contracts attached to the Second Amended Complaint require application of the laws of Alberta and Canadian law.  While Plaintiff argues Washington law applies to certain claims (one of the five contracts calls for Washington law), those claims warrant dismissal, as a matter of law, under Washington law;

(3)    Plaintiff's lawsuit is predicated upon being wrongfully denied the right to exercise stock options in a Canadian corporation whose stock is traded publicly on the Toronto Stock Exchange;

(4)    The Plaintiff and Defendant are both Canadian citizens; and

(5)    Plaintiff's damages theory is based upon calculating losses largely in Canadian dollars.

Accordingly, Defendant respectfully requests that this case be dismissed pursuant to the doctrine of *forum non conveniens* for refilling in Canada and (or in the alternative) that any claims which Plaintiff asserts under Washington law be dismissed because they are invalid as a matter of law.

## II.    Facts

### The Disputed March 4, 2007 Meeting
### Took Place In Toronto At A Meeting Among Canadian Geologists.

One of the main issues in this case relates to whether or not Plaintiff resigned (thus, making him ineligible for stock options) on March 4, 2007, at a meeting in Toronto, Canada among Canadian geologists. (Second Amended Complaint (hereafter, "Complaint") at ¶¶ 21-22, 34; Exhibit A at ¶ 4; Exhibit B)  Plaintiff concedes that if he terminated his services at this meeting, he "was not and is not entitled to any amount of severance pay."  (Complaint ¶ 34)

### This Case Is Governed
### By The Laws of the Province of Alberta and Canadian Law.

The four stock option plans require that they "be construed in accordance with the laws of the Province of Alberta and the federal laws of Canada applicable therein." (Complaint, Exhibit 2 at ¶ 24, Exhibits 3, 4, and 5 at ¶ 9.6, Exhibit 6 at ¶ 23)    The Consulting Agreement (Complaint, Exhibit 1 at ¶ 9(a)) contains a Washington choice of law provision and Franconia seeks dismissal of all claims which Plaintiff asserts under Washington law. (*See infra*, pp. 13-15) The stock option agreements, however, govern the following potentially dispositive issues in this case:

**Whether Plaintiff was a "Bona Fide" consultant since he stopped working for Franconia after the March 2007 meeting is governed by Alberta/Canadian law.**

2

Starting the month after the March 2007 meeting, Plaintiff never again billed Franconia for one minute of consulting work and, on this basis, Franconia asserts Plaintiff was not a "bona fide" consultant eligible for stock options.  (By contrast, Plaintiff billed Franconia for 2,780 hours of work during the 5 year period, on a monthly basis, before the March 2007 meeting.  (Exhibit C)

The Plan's Requirements:    The Plan (expressly governed by Canadian/Alberta law) required the following representation in each stock option agreement:

> "In the case of…consultants…the option agreements to which they are a party **must** contain a representation of the Corporation that the…consultant…is a **bona fide**…consultant…."   (Emphasis added)  See Complaint, Exhibit 6 at ¶ 7.

Plaintiff's stock option agreements do not state Plaintiff is a "bona fide" consultant--which is mandatory language under the Plan.  Canadian and Alberta law must be considered by a court to determine whether the agreements are invalid since they are missing a mandatory representation--especially in light of Franconia's assertion that Plaintiff was not a consultant, let alone a "bona fide" one.

Statutory Requirements:      As just one example of potentially applicable complex foreign laws and regulations that might govern this case, the Alberta Securities Commission's National Instrument 45-106 (which appears to identify exempt transactions from registration for stock given to consultants, family members, employees, and others) is attached as Exhibit D.[1]   45-106 appears to mandate requirements for consultants who receive stock options and it defines "Consultant" as one who: "spends or will spend a significant amount of time and attention on the affairs and business of the

---

[1]National Instrument 45-106 was obtained from the Alberta Securities Commission's Internet site (www.albertasecurities.com), visited on July 2, 2008.

issuer….." (See National Instrument, ¶ 2.22)[2]  Even if Plaintiff did not resign (which he clearly did), by not showing up to work for over one year, he certainly did not spent a "significant amount of time and attention" on Franconia's affairs.

**Whether Plaintiff resigned or properly exercised his options is governed by Alberta/Canadian law.**  Franconia (and, respectfully, not a court or jury) has final discretion (pursuant to the stock option agreements) to make all stock option agreement determinations, including whether:  (1) Plaintiff resigned, (2) Plaintiff properly exercised his options, and (3) Plaintiff was a "bona fide" consultant.  The stock option agreements provide that: determinations, construction, and interpretations made by Franconia shall "be binding and conclusive".  (Complaint, Exhibit 2 at ¶ 2, Exhibits, 3, 4, and 5 at ¶ 9.2; Exhibit 6 at ¶ 2; Note: Exhibits 3-6 contain slightly modified language).

Thus, Franconia's determinations and interpretations under the stock option agreements (which are governed by Alberta/Canadian law) are "binding and conclusive" as to the central issues in this case such as whether Plaintiff resigned (Complaint, Exhibit 2 at ¶ 11, Exhibits, 3, 4, and 5 at ¶ 3.2), whether Plaintiff properly tendered payment for his options (Complaint, Exhibits, 3, 4, and 5 at ¶ 7.1))[3], and whether Plaintiff was a bona fide consultant as discussed above.

---

[2] *See also, Canada Safeway Limited et al*, 2005 ABASC 178 at Section 4.10 (wherein a decision was made to exempt from regulation a company's stock option plan where consultants were required to "provide bona fide services"); *In the Matter of Canadian Securities Legislation of Manitoba et al* (considering representation of applicants to allow investment in stock of their respective issuer employer and "consultant" is defined as one who is "is engaged to provide on a bona fide basis consulting…services…and…in the reasonable opinion of the Employer, spends or will spend a significant amount of time and attention on the affairs and business of the Employer…").  These cases are attached as Exhibit E.

[3] The stock option agreements required Plaintiff to tender a "certified cheque" or "cash" at Franconia's headquarters to exercise his options.  Plaintiff did not do this since (according to Plaintiff) Franconia "repudiated" the stock option agreement by sending a letter saying Plaintiff was ineligible.

### The Parties Are Canadian Citizens.

Plaintiff is a Canadian citizen residing in Lake Forest, Illinois; he is not a United States citizen but is a permanent resident alien. Franconia is a Canadian corporation; its principal place of business is in Washington. (Complaint ¶ 1)

### The Stock At Issue Is Traded On A Canadian Stock Exchange.

Franconia's stock (in which Plaintiff alleges he was wrongfully denied options) is traded on the Toronto Stock Exchange (TSX) which has offices located in Vancouver, Calgary, Toronto, and Montreal. (Complaint ¶ 25; Exhibit A at ¶ 3; Exhibit F).

### Plaintiff And Potentially His Wife Are The Only Witnesses From Illinois And Only Documents In Plaintiff's Possession Are Located In Illinois.

Other than Plaintiff (and potentially his wife) there are no other Illinois witnesses.

Plaintiff has disclosed potentially utilizing a trial witness (Geoffrey Goad) from Toronto, Canada or the possibility of calling "an official of the Toronto Stock Exchange". (Exhibit B)  Goad will almost certainly be deposed by Franconia, and may also be called as a trial witness, because he appears to have advised Plaintiff's wife to sell Franconia stock shortly before the 90 day termination date (i.e., when the options expired as set forth in Complaint Exhibit 3, ¶ 3.2) from when Franconia says Plaintiff resigned. (Exhibit G)  Goad also purported to exercise Plaintiff's stock sales and had communication with Defendant regarding the same.  (Exhibit G)

Bonnie Kuhn, a Franconia Board member, resides in Canada. Kuhn corresponded with Gavin in the email attached to the Complaint as Exhibit 8 (which Plaintiff claims is evidence of Franconia's fraud) and she executed the Amended Stock Option Plan on behalf of Franconia.  Two of Franconia's other potential witnesses (George Tikkanen and Lewis Lewrich) are Canadian citizens who reside in Canada and who may testify about,

*inter alia*, the Board's (they are on Franconia's Board) consideration of Rowell's eligibility to receive stock options and why Franconia believes it properly deemed the options invalid.   (Exhibit A, ¶ 5)[4]

Pursuant to Fed. R. Civ. Pro. 44.1, the substantive content of Alberta/ Canada law will be established through the parties calling expert witnesses presumably from Canada.[5]

## Damages Are Determined Under The Canadian Dollar.

Plaintiff has determined damages in substantial part under the Canadian dollar (and then converting that amount to United States dollars).  (Complaint ¶¶ 25-33)

## III.    ARGUMENT

## A.    Applicable Legal Standards

Dismissal for *forum non conveniens* is appropriate when (1) an adequate alternative forum is available and adequate and (2) the public and private factors weigh in favor of dismissal. Kamel v. Hill-Rom Co., Inc., 108 F.3d 799, 802-803 (7th Cir. 1997); Leon v. Miller Air, Inc., 251 F.3d 1305, 1311 (11th Cir. 2001). Courts consider (1) the degree of deference to be accorded to the plaintiff's choice of forum; (2) whether an "adequate alternative forum" is available; and (3) whether the balance of certain "private" and "public" interest factors favors the alternative forum. See generally, Piper Aircraft v. Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252 (1981); Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 70 (2d Cir. 2003); Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947); Howe v. Goldcorp Investments Ltd., 946 F.2d 944, 950-51 (1st Cir. 1990).

---

[4]There are other potential witnesses who are not from Illinois or Canada, but who do reside in the United States.  At this time, Franconia is aware of only two such potential witnesses (both from outside of Illinois) who it may call as witnesses.

[5] This is unlikely to be a case document intensive case--but the only documents that likely exist in Illinois (outside of those in counsels' possession) are those in Plaintiff's possession.

These considerations strongly support dismissal of this action in favor of a Canadian forum.

**B.    Canada Is An Adequate Alternative Forum**

Canada is an adequate alternative forum; indeed Plaintiff considered bringing this lawsuit in Canada but elected to sue here instead. (Exhibit H)   "[T]he burden of establishing whether an alternative forum exists is not a heavy one."   Banco Latino v. Gomez Lopez, 17 F.Supp.2d 1327, 1331 (S.D. Fla. 1998). "Ordinarily, this requirement 'will be satisfied when the defendant is amenable to process in the other jurisdiction.'" Id. at 1331-1332.   A "defendant's submission to the jurisdiction of an alternate forum renders that forum available for purposes of *forum non conveniens* analysis." Veba-Chemie A.G. v. M/V Getafix, 711 F.2d 1243, 1245 (5th Cir. 1983).   As Defendant is a Canadian citizen, it is subject to Canadian jurisdiction and process.

There is a wealth of precedent finding Canada is an adequate alternative forum. See generally, Penwest Development Corp. Ltd. v. Dow Chemical Co., 667 F.Supp. 436, 439 (E.D.Mich. 1987) ("Several courts have found Canada to be an adequate alternative forum, and rightly so.").[6] Thus, Canada is an adequate alternative forum.

**C.    Plaintiff's Choice of Forum Is Entitled To Minimal Deference**

Plaintiff's choice of forum deserves little deference because he elected to consult with and invest in a Canadian corporation and (as explained above) this case is linked closely with Canada and not Illinois.  In Warter v. Boston Securities, S.A., 380 F.Supp.2d

---

[6] See also, Ministry of Health v. Shiley, Inc., 858 F.Supp. 1426, 1441-42 (C.D.Cal.1994) (finding Canada an adequate forum for resolving disputes); Ledingham v. Parke-Davis Div. of Warner-Lambert Co., 628 F.Supp. 1447 (E.D.N.Y. 1986)(finding Canada is an adequate alternative forum); Roynat, Inc. v. Richmond Transp. Corp., 772 F.Supp. 417 (S.D.Ind.1991)(finding Canada an adequate alternative forum); VictoriaTea.com, Inc. v. Cott Beverages, 239 F.Supp.2d 377, 383 (S.D.N.Y. 2003)(in lawsuit involving breach of contract claim, court finds Canada an adequate alternative forum); Chelios v. National Hockey League Players' Ass'n, 2007 WL 178326 (N. D. Ill. Jan. 18, 2007).

1299, 1314 (S. D. Fla. 2004), United States citizens (who resided in the United States) sued an Argentine securities brokerage and others arising out of an investment. The Defendants moved to dismiss on the basis of *forum non conveniens*. The Court noted that:

> Although courts usually afford deference to a Plaintiff's choice of forum, when an American plaintiff chooses to invest in a foreign country and then complains of fraudulent acts occurring primarily in that country, the plaintiff's ability to rely upon citizenship as a talisman against forum non conveniens dismissal is diminished. (Citations Omitted)

See also, Von Holdt v. Husky Injection Molding Sys., Ltd., 887 F.Supp. 185, 188 (N.D.Ill.1995) (Castillo, J.) (citations omitted) (despite plaintiffs' Illinois residence, case was transferred in part because "[w]e disagree with the plaintiffs' argument that the controlling case law gives plaintiffs' choice of forum substantial weight. Although the plaintiffs' choice has been given substantial weight in some cases…it is not the only factor a court must consider. Moreover, the weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connections with the operative facts giving rise to the claim."); Sussman v. Bank of Israel, 801 F.Supp. 1068, 1073 (S.D.N.Y. 1992) (recognizing that when Americans invest abroad, they are not immune to a *forum non conveniens* motion); Russellville Steel Co. v. Sears, Roebuck & Co., No. 99 C 485, 2000 WL 91680, at *3 (N.D.Ill. Jan. 19, 2000)("virtually no weight" given to choice of forum when the forum lacks "a significant relationship with the underlying dispute" that gave rise to the lawsuit ); Boyd v. Snyder, 44 F.Supp.2d 966, 970 (N.D.Ill.1999) (when the events giving rise to the cause of action did not take place in the plaintiff's selected forum the plaintiff's preference has minimal value even if it is his home forum).

Plaintiff elected: (a) to consult on behalf of a Canadian company, (b) to be compensated in stock options of a Canadian corporation, (c) to be compensated with stock options traded on the Toronto Stock Exchange, and (d) to participate in a stock option plan that called for the application of Canadian law.  In light of Plaintiff's willingness to subject himself to a relationship so intimately connected to his country of citizenship (Canada), his choice of forum warrants little deference.

**D.      The Public Interest Factors Favor Dismissal.**

The public interest factors include having local controversies decided at home, the administrative burden on the court of litigating disputes unrelated to the forum, the unfairness of burdening citizens in an unrelated forum with jury duty, and the interest in avoiding difficulties associated with claims brought under foreign laws. Gulf Oil, 330 U.S. at 508-09; Howe v. Goldcorp Investments, Ltd., 946 F.2d 944 (1st Cir. 1991). The public interest factors favor Canada for the following reasons:

*First*, Canada has a greater interest in resolving this dispute because of its interest in regulating the affairs of a Canadian corporation whose stock is publicly traded on one of its exchanges. In Gilstrap v. Radianz Ltd., 443 F.Supp.2d 474 (S.D.N.Y. 2006), affirmed 233 Fed.Appx. 83, 2007 WL 1541362 (2d Cir. 2007), the plaintiffs alleged that they were wrongfully denied rights under a stock option plan in an English company. The defendant moved to dismiss the case to England on the basis of *forum non conveniens*.  The plaintiff argued that dismissal was not appropriate because*, inter alia*: (a)  The defendant "sought out U.S. citizens for employment and enticed them to work for the company by offering participation in the [stock option plan]."  (Id. at 480) (b) The plaintiff and 40% of the other plaintiffs were located in the United States (Id. at 475); and

(c) the Defendant maintained its operational headquarters in New York. (Id. at 476) In rejecting these arguments, the court noted that the dispute related to the stock option plan and the internal corporate governance of an English company.  The court concluded that an English court had a far greater interest in hearing such a case.  As the court explained:

> While some U.S. citizens accepted employment with, and options to acquire shares of, [Defendant], they were aware that they were working for an English corporation, and were being compensated, in part, in options on shares of an English company. Id. at 489-490.

See also, Howe, 946 F.2d 944(*forum non conveniens* motion granted where Untied States shareholder and others sued company whose stock was traded on a Canadian exchange).

As in Gilstrap, Plaintiff Rowell was aware he was consulting on behalf of a Canadian corporation and being compensated based on options in stock traded on a Canadian exchange. A Canadian court therefore has a stronger interest than one in Chicago in adjudicating these claims. Likewise, a Northern District of Illinois jury should not be burdened with resolving disputes between Canadian citizens.

Canada also has a great interest in seeing that stock options are not improperly granted to those persons who are not eligible. The economic impact of wrongfully issuing options/stock would unfairly dilute stock ownership of other owners of this Canadian public stock.  Alternatively, if Defendant acted unlawfully, Canada has a great interest in seeing justice carried out to regulate one of its own companies (*i.e.* Franconia). See, Pyrenee, Ltd. v. Wocom Commodities, Ltd., 984 F.Supp. 1148, 1167 (N.D. Ill. 1997)(Castillo, J.)(in grating a *forum non conveniens* motion, the court stated that "Hong Kong has a much greater interest in policing the fraudulent activities of its own corporations, especially when they allegedly harm one of its own citizen's business ventures"); Howe, 946 F.2d at 953 (Canada had greater interest in hearing securities

action involving Canadian corporation whose stock sold on a Canadian exchange); Warlop v. Lernout,  473 F.Supp.2d 260, 264 (D. Mass. 2007) (in granting a *forum non conveniens* motion, the court found "most significantly, the shares of stock purchased in this case were all obtained on [the European Association of Securities Dealers Automatic Quotation System]"); Toronto Stock Exchange v. Quotron Systems, Inc., 1992 WL 116636 *3 (S.D.N.Y. May 13, 1992)("Canada in general and Ontario in particular have a special interest in the outcome of these cases. The exchanges are a product of legislative mandate and their members are Canadian securities firms.").

**Second**, the public interest factors favor dismissal because this Court should not be burdened with deciding a Canadian dispute under Canadian law or spending taxpayer funds on disputes among Canadian citizens. See generally, Ministry of Health v. Shiley, Inc., 858 F.Supp. 1426, 1442 (C.D.Cal.1994) (where parties were Canadian, "it is reasonable for Canada to incur the expense of a trial involving its own citizens"); Tannenbaum v. Brink, 119 F.Supp.2d 505, 513 (E.D.Pa.2000).

**Third,** it is very significant that this Court would have to apply foreign law to resolve this case and this factor weighs heavily in favor of dismissal. See generally, Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925, 929 (N. D. Ill. 1999)(Castillo, J.)(dismissing a case under *forum non conveniens*, in part, because even if the parties agree on the application of foreign law, "they would still need to prove that law to this Court for appropriate application" and recognizing that a foreign jurisdiction has an interesting in seeing its own law applied correctly);   Roynat, Inc. v. Richmond Transp. Corp., 772 F.Supp. 417, 421 (S. D. Ind. 1991)(despite the court not being convinced about a number of the factors warranting a transfer, the need to apply

Canadian law tipped the court's decision to transfer the case to Canada because "need to apply foreign law in a case, although not conclusive, 'points toward dismissal' of a case on *forum non conveniens* grounds."); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 (11th Cir.1985) ("The need to resolve and apply foreign law should 'point [the trial court] towards dismissal") (quoting Piper Aircraft Co., 454 U.S. at 251, 102 S.Ct. at 263); Warter v. Boston Securities, S.A., 380 F.Supp.2d 1299, 1315 (S. D. Fla. Dec. 15, 2004)(the Court noted that "[e]ven the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds").

Accordingly, the public interest factors favor dismissal.

**E.     The Private Interest Factors Support Dismissal**

The private interest factors include: (1) the relative ease of access to source of proof; (2) the availability of compulsory process for attendance of unwilling witnesses; (3) the costs of obtaining attendance of the willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive.  Gulf Oil, 330 U.S. at 508; Schertenleib v. Traum, 589 F.2d 1156, 1165 (2d Cir.1978) ("inability to bring [witnesses] here for live cross examination before a fact-finder" is "[p]erhaps the most significant problem" making adjudication in a United States court inappropriate); Howe, 946 F.2d at 951 ("And, only Canadian courts, not courts within the United States, have the legal power to compel the testimony of…Canadian potential witnesses who are not under the control of any party.").

In Roynat, Inc. v. Richmond Transp. Corp., 772 F.Supp. 417 (S. D. Ind. 1991) a Canadian corporation sued a Delaware corporation with its principal place of business in Indiana to enforce an agreement and to appoint a receiver.  As for the location of

evidence, the court *was not convinced* that such factors favored transfer. However, the court concluded that transfer was appropriate due to the need not to apply Canadian law. As the Court explained:

> The fourth factor-general practical issues-tilts the balance of private interest concerns in favor of dismissal, due primarily to the practical difficulties caused by the applicability of Canadian law. If this Court were to hear [Plaintiff's] claims, it would face the substantial task of interpreting and applying Canadian law, a task with which it is not familiar and would require help. The Court (or a jury) would be forced to depend, at least to some degree, on experts in Canadian law. These experts (assuming none are located in Indiana) would have to travel a great distance to testify, which would cost the parties more time and money. A Canadian court, by contrast, would not require such experts, enabling it to render a decision more quickly and at less expense. Id at 422.

The private interests support dismissal in this case. No witnesses (other than Plaintiff and possibly his wife) are from Illinois. On the other hand, both sides have disclosed potential witnesses from Canada. As for documents, this is not a large factor because there are not many documents involved in this case. However, what clearly tips this case in favor of dismissal (as recognized in Roynat) is the need to apply Canadian laws. This is especially so under the facts of this particular case especially since the amount sought in the Second Amended Complaint is low when factoring in the likely expenses of both sides utilizing experts on Canadian law. See generally, Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925 (N.D.Ill. 1999)(Castillo, J.) (dismissing a case for refilling in Germany would save the parties money on expert costs).

**F.    Assuming Washington Law Applies To Certain Of Plaintiff's Claims, Washington Law Mandates Their Dismissal.**

      **1.    Fraudulent Concealment/Punitive Damages Claim.** Plaintiff purports to allege a fraudulent concealment claim (Complaint, ¶ 38) and seeks punitive damages on the basis that Defendant had no intention of continuing to perform--yet failed to

disclose this to Plaintiff.  Assuming the truth of this baseless allegation, Plaintiff cannot establish fraud/fraudulent misrepresentation because of, *inter alia,* the following:

*First***,** Franconia had no legal duty (and none is alleged) to disclose any facts to Plaintiff.  "Absent an affirmative duty to disclose material facts, a defendant's silence does not constitute fraudulent concealment or misrepresentation."  *Crisman v. Crisman*, 85 Wash.App. 15, 931 P.2d 163 (Wash. App. Div. 2 1997); *Wessa v. Watermark Paddlesports, Inc*., 2006 WL 1418906 * 3 (W.D.Wash. May 22, 2006)("concealment only constitutes fraud or inequitable conduct when the party possessing the knowledge has a duty to disclose that knowledge to the other party.").  *Second,* Plaintiff has not alleged his fraud claim with particularly as required under Fed. R. Civ. Pro. 9(b) (*See generally, Wessa v. Watermark Paddlesports, Inc*., 2006 WL 1418906 * 3 (W.D.Wash. May 22, 2006)) nor pled the required nine elements of fraud under Washington law--and he never responsibly could.  *Stiley v. Block*, 130 Wash.2d 486, 925 P.2d 194, 204 (Wash. 1996).

**B.**    **Breach of Consulting Agreement.**  Plaintiff's claim for termination payments under the "Without Good Cause" section of the Consulting Agreement must be dismissed because Plaintiff has specifically alleged *he was not* terminated in accordance with the Consulting Agreement.  (Complaint, ¶ 25, 28, 29)  Section 8 of the Consulting Agreement provided both parties with the right to terminate "Without Good Cause"--and gives Plaintiff certain remedies (i.e., $50,000 and having shares cancelled) under Section 8 (2)(a) and (b).  Not only has Plaintiff nowhere alleged that he *was* terminated under the Without Good Cause provision, but he has specifically alleged that he *was not* terminated in accordance with the Consulting Agreement:

<u>At no time to and including the present did FRANCONIA ever terminate ROWELL in accordance with the terms of the CONSULTING AGREEMENT</u> or afford him the opportunity to exercise any of his stock options following any such termination.  (Complaint, ¶ 23; Emphasis Added)

Plaintiff cannot claim contractual remedies which exist only if he was terminated in accordance with the Consulting Agreement.

**3.    All alternative claims predicated upon "[i]n the event it is determine that [*Plaintiff*] terminated his consulting services on or about March 4, 2007" (Complaint, pp. 14-15) should be dismissed because**:

**First**, the Consulting Agreement is explicit that Plaintiff gets nothing if he terminated:  "If consultant resigns or otherwise terminates this contract, rather than the Corporation terminating this contract pursuant to this paragraph 8, Consultant shall receive no severance compensation."  (¶ 8, last sentence; Complaint, ¶ 34)

**Second,** Plaintiff's theory in ¶ 32 that his stock options were ***wrongfully honored*** (and thus there should be recession by forcing Franconia to buy the stock back, despite the fact that the stock price changes as it is publicly traded) is based upon a false premise and has no basis in the law.   Plaintiff says his options should not have been honored since 66 days passed from alleged resignation.  Plaintiff argues that since ***30 days*** passed since the alleged termination, the options should have been rejected as being past the exercise deadline.  But Exhibit 3 allows the exercise of options within ***90 days*** (not 30) of termination.  (Complaint, Exhibit 3 at ¶ 3.2)

## IV.    <u>CONCLUSION</u>

Wherefore, Defendant respectfully requests that this case be dismissed pursuant to the doctrine of *forum non conveniens* and that Plaintiff's fraud, recession, Consulting Agreement, and punitive damages claims be dismissed.

Dated:        July 9, 2008              FRANCONIA MINERALS CORPORATION

                                        By:        /s/ David J. Fish_____
                                                   One of its Attorneys

David J. Fish
THE FISH LAW FIRM, P.C.
1770 N. Park Street, Suite 202
Naperville, IL 60563

# Table of Contents to Exhibits

| | |
|---|---|
| Declaration of Brian Gavin | Exhibit A |
| Davidson Email | Exhibit B |
| Rowell Work History | Exhibit C |
| National Instrument 45-106 | Exhibit D |
| Canadian Decisions | Exhibit E |
| TSX Corporate Information | Exhibit F |
| Geoff Goad Documents | Exhibit G |
| Davidson Email | Exhibit H |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WILLIAM ROWELL | ) |
| | ) |
| Plaintiff, | ) Case No. 08 CV 2517 |
| | ) |
| v. | ) |
| | ) Judge Castillo |
| FRANCONIA MINERALS CORPORATION, | ) Magistrate Judge Brown |
| a foreign corporation | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DECLARATION OF BRIAN GAVIN

Pursuant to 28 USC §1746, I swear under penalty of perjury that the following information is true:

1.     My name is Brian Gavin. I am over the age of twenty-one and I am competent to make this Declaration and I have personal knowledge of the matters set forth herein.

2.     I am the President and Chief Executive Officer of Franconia Minerals Corporation (hereafter, "Franconia").

3.     Franconia is organized under the laws of Canada and has its principal place of business in Washington. Franconia's stock is publically traded on the Toronto Stock Exchange (TSX).

4.     Paragraph 21 of the Amended Complaint in this case references Exhibit 7 which is a letter that I wrote to William Rowell. In that letter, I state that Rowell advised Franconia on March 4, 2007 that he was terminating his services. The March 4, 2007 meeting was held in Toronto, Canada.   It was at a conference of the Prospectors and

1



Developers Association of Canada. The Prospectors and Developers Association of Canada is a group of Canadian geologists representing the interests of the mineral exploration and development industry.

5.      William Rowell and I both attended this meeting in Toronto, Canada on March 4, 2007. After my meeting with Rowell on March 4, 2007, Mr. Rowell attended a dinner with me during that same evening. The dinner was also held in Toronto, Canada and other potential witnesses were present during the dinner. Those witnesses include the following Franconia Directors: George Tikkanen, Bonnie Kuhn, and Lewis Lawrick. Tikkanen, Kuhn and Lawrick are each Canadian citizens who reside in Canada. Kuhn is also our Vice President and Secretary who executed the Amended Stock Option Plan on behalf of Franconia.

6.      My understanding is that Bill Spear and Ernest Lehmann may also have knowledge of the facts alleged in the Amended Complaint. Bill Spear resides in Colorado. Ernest Lehmann resides in Minnesota.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 11, 2008

Brian Gavin

| From: | Keith Davidson [keithdavidson@kldlawoffices.com] |
|---|---|
| Sent: | Thursday, May 15, 2008 3:14 PM |
| To: | dfish@fishlawfirm.com |
| Subject: | Rowell v. Franconia |

Mr. Fish:

I regret that you are unable or unwilling to let me know over the telephone what you deem to be the issues and the scope of relevant discovery. The sooner you do, the sooner I will be able to marshal the evidence that the plaintiff is presenting and required to identify and produce to you under Rule 26(a)(1)(A). However, this e-mail is intended to constitute a preliminary compliance with that rule.

As I have previously advised you and the court, I believe that liability turns solely on the fact issue whether plaintiff terminated his services to defendant. It is my understanding that the defendant claims that he did so only orally and only in one meeting between plaintiff and Brian Gavin at which no one else was present. Therefore, it would appear that the plaintiff is the only witness presently required to be disclosed by the plaintiff on that issue under Rule 26(a)(1)(A). The plaintiff will testify that he never in any manner terminated his services with defendant.

The only records that I believe presently need to be disclosed by plaintiff on that issue under Rule 26(a)(1)(A) are the Consulting Agreement and Stock Option Agreements that are exhibits to the Amended Complaint.

As to the issue of the plaintiff's consequential damages, arising from plaintiff's claim to be compensated for deprivation of his stock options and withholding of his severance pay, plaintiff and Mr. Gavin and said Consulting Agreement and Stock Option Agreements, together with plaintiff's February 28 e-mail seeking to exercise his stock options and Mr. Gavin's March 6 e-mail refusing to honor them, appear to me to be the only disclosures presently required by plaintiff on that issue under Rule 26(a)(1)(A). The price of Franconia's stock, as listed on the Toronto Stock Exchange, will also be established by plaintiff on this issue. If the price cannot be established by the court taking judicial notice of it, or by a stipulation, testimony to establish it will be introduced from plaintiff's broker, Geoffrey Goad or, if necessary, from an official of the Toronto Stock Exchange. Mr. Goad's work address is: Raymond James LTD, Scotia Plaza–Suite 5300, 40 King Street West, PO Box 415, Toronto, ON M5H 3Y2.

I have requested the plaintiff to put together a list of the names and addresses of witnesses and records relevant to his claim for reliance damages, and I expect to be able to produce it to you before the June 24 pretrial.

If there is any additional discovery you seek from me, please advise. I cannot think of any, beyond what I have indicated or promised above, that would be relevant to the issues as I have conceived of and described them. Therefore, if you choose to request any additional discovery before filing your responsive pleadings, I would ask that you also please indicate the issues as to which you believe it would be relevant.

Keith L. Davidson



EXHIBIT
**B**
tabbies®

**FRANCONIA MINERALS CORP**
**William Rowell History**

| Month | Hours | Fees Billed | Total Payment |
|---|---|---|---|
| Jan-02 | 27 | $1,518.75 | $1,995.23 |
| Mar-02 | 1 | 56.25 | 56.25 |
| Apr-02 | 20.5 | 1,153.13 | 1,153.13 |
| May-02 | 124 | 6,975.00 | 8,463.67 |
| Jun-02 | 181 | 10,181.25 | 12,115.61 |
| Jul-02 | 134 | 8,555.13 | 8,555.13 |
| Aug-02 | 165 | 9,281.25 | 10,739.88 |
| Sep-02 | 7 | 168.75 | 393.75 |
| Oct-02 | 20 | 1,125.00 | 1,568.56 |
| Nov-02 | 24 | 1,350.00 | 1,811.75 |
| Nov-02 | 37 | 2,082.25 | 2,116.70 |
| Dec-02 | 75 | 4,218.75 | 5,839.30 |
| Dec-02 | 58 | 3,262.50 | 3,262.50 |
| Jan-03 | 24 | 1,350.00 | 1,810.25 |
| Jan-03 | 87 | 4,893.75 | 5,405.77 |
| Feb-03 | 115 | 6,468.75 | 7,096.62 |
| Mar-03 | 51 | 2,868.75 | 3,405.84 |
| Apr-03 | 24 | 1,350.00 | 1,418.00 |
| May-03 | 145 | 8,156.25 | 8,592.95 |
| Jun-03 | 63 | 3,543.75 | 4,379.24 |
| Jul-03 | 33 | 1,856.25 | 1,856.25 |
| Aug-03 | 53 | 2,981.25 | 3,617.05 |
| Sep-03 | 13 | 731.25 | 739.40 |
| Nov-03 | 33 | 1,856.25 | 5,149.13 |
| Dec-03 | 37 | 1,743.75 | 2,081.25 |
| Jan-04 | 41 | 2,193.75 | 2,306.25 |
| Feb-04 | 90 | 5,062.50 | 6,659.07 |
| Mar-04 | 77 | 4,331.25 | 13,329.77 |
| Apr-04 | 73 | 4,106.25 | 4,645.87 |
| Jun-04 | 5 | 281.25 | 281.25 |
| Jul-04 | 3 | 168.75 | 168.75 |
| Aug-04 | 6 | 337.50 | 337.50 |
| Sep-04 | 53 | 2,981.50 | 2,981.50 |
| Dec-04 | 20 | 1,125.00 | 1,125.00 |
| Jan-05 | 16 | 900.00 | 1,246.06 |
| Mar-05 | 11 | 618.75 | 618.75 |
| Apr-05 | 24 | 1,350.00 | 1,767.05 |
| May-05 | 80 | 4,500.00 | 5,196.73 |
| Jun-05 | 80 | 4,500.00 | 5,222.72 |
| Jul-05 | 152 | 8,550.00 | 9,483.78 |
| Aug-05 | 40 | 2,200.00 | 2,363.41 |
| Sep-05 | 25 | 1,406.00 | 1,410.55 |
| Feb-06 | 20 | 1,125.00 | 1,751.57 |
| Mar-06 | 25 | 2,250.00 | 2,900.06 |
| May-06 | 15 | 843.75 | 930.49 |
| Jul-06 | 92 | 5,175.00 | 6,116.59 |
| Aug-06 | 36 | 2,025.00 | 2,662.18 |
| Sep-06 | 88 | 4,950.00 | 5,515.78 |
| Nov-06 | 83 | 4,668.75 | 5,476.51 |
| Jan-07 | 64 | 4,160.00 | 5,040.01 |
| Feb-07 | 6 | 390.00 | 390.00 |
| Mar-07 | 3 | 195.00 | 1,294.00 |
| | 2,780 | $158,123 | $194,844 |

EXHIBIT

tabbies®

C

**NATIONAL INSTRUMENT 45-106**
*PROSPECTUS AND REGISTRATION EXEMPTIONS*

---

*Text boxes in this Instrument refer to National Instrument 45-102 Resale of Securities. These text boxes are located above sections 2.1 to 2.5, 2.7 to 2.21, 2.24 to 2.27, and 2.30 to 2.42. These text boxes do not form part of this Instrument.*

---

### Table of Contents

## PART 1: DEFINITIONS AND INTERPRETATION

1.1    Definitions
1.2    Affiliate
1.3    Control
1.4    Registration requirement
1.5    Definition of distribution - Manitoba and Yukon
1.6    Definition of trade - Québec

## PART 2: PROSPECTUS AND REGISTRATION EXEMPTIONS

**Division 1: Capital Raising Exemptions**
2.1    Rights offering
2.2    Reinvestment plan
2.3    Accredited investor
2.4    Private issuer
2.5    Family, friends and business associates
2.6    Family, friends and business associates - Saskatchewan
2.7    Founder, control person and family- Ontario
2.8    Affiliates
2.9    Offering memorandum
2.10    Minimum amount investment

**Division 2: Transaction Exemptions**
2.11    Business combination and reorganization
2.12    Asset acquisition
2.13    Petroleum, natural gas and mining properties
2.14    Securities for debt
2.15    Issuer acquisition or redemption
2.16    Take-over bid and issuer bid
2.17    Offer to acquire to security holder outside local jurisdiction

**Division 3: Investment Fund Exemptions**

2.18    Investment fund reinvestment

2.19    Additional investment in investment funds

2.20    Private investment club

2.21    Private investment fund - loan and trust pools

**Division 4: Employee, Executive Officer, Director and Consultant Exemptions**

2.22    Definitions

2.23    Interpretation

2.24    Employee, executive officer, director and consultant

2.25    Unlisted reporting issuer exception

2.26    Trades among current or former employees, executive officers, directors, or consultants of non-reporting issuer

2.27    Permitted transferees

2.28    Resale - non-reporting issuer

2.29    Issuer bid

**Division 5: Miscellaneous Exemptions**

2.30    Isolated trade by issuer

2.31    Dividends and distributions

2.32    Trade to lender by control person for collateral

2.33    Acting as underwriter

2.34    Guaranteed debt

2.35    Short-term debt

2.36    Mortgages

2.37    Personal Property Security Act

2.38    Not for profit issuer

2.39    Variable insurance contract

2.40    RRSP/RRIF

2.41    Schedule III banks and cooperative associations - evidence of deposit

2.42    Conversion, exchange, or exercise

2.43    Removal of exemptions - market intermediaries

**PART 3: REGISTRATION ONLY EXEMPTIONS**

3.1    Registered dealer

3.2    Exchange contract

3.3    Isolated trade

3.4    Estates, bankruptcies, and liquidations

3.5    Employees of registered dealer

3.6    Small security holder selling and purchase arrangements

3.7     Adviser

3.8     Investment dealer acting as portfolio manager

3.9     Removal of exemptions – market intermediaries

**PART 4: CONTROL BLOCK DISTRIBUTIONS**

4.1     Control block distributions

4.2     Trades by a control person after a take-over bid

**PART 5: OFFERINGS BY TSX VENTURE EXCHANGE OFFERING DOCUMENT**

5.1     Application and interpretation

5.2     TSX Venture Exchange offering

5.3     Underwriter obligations

**PART 6: REPORTING REQUIREMENTS**

6.1     Report of exempt distribution

6.2     When report not required

6.3     Required form of report of exempt distribution

6.4     Required form of offering memorandum

6.5     Required form of risk acknowledgement

6.6     Required forms in British Columbia

**PART 7: EXEMPTION**

7.1     Exemption

**PART 8: TRANSITIONAL, COMING INTO FORCE**

8.1     Additional investment - investment funds

8.2     Definition of "accredited investor" - investment fund

8.3     Transition - MI 45-103/MI 45-105/ OSC Rule 45-501

8.4     Transition - Closely-held issuer

8.5     Coming into force

APPENDIX A - VARIABLE INSURANCE CONTRACT EXEMPTION

APPENDIX B – CONTROL BLOCK DISTRIBUTION

**NATIONAL INSTRUMENT 45-106**
*PROSPECTUS AND REGISTRATION EXEMPTIONS*

**PART 1: DEFINITIONS AND INTERPRETATION**

**Definitions**

**1.1** In this Instrument

**"accredited investor"** means

(a)    a Canadian financial institution, or a Schedule III bank,

(b)    the Business Development Bank of Canada incorporated under the *Business Development Bank of Canada Act* (Canada),

(c)    a subsidiary of any person referred to in paragraphs (a) or (b), if the person owns all of the voting securities of the subsidiary, except the voting securities required by law to be owned by directors of that subsidiary,

(d)    a person registered under the securities legislation of a jurisdiction of Canada as an adviser or dealer, other than a person registered solely as a limited market dealer under one or both of the *Securities Act* (Ontario) or the *Securities Act* (Newfoundland and Labrador),

(e)    an individual registered or formerly registered under the securities legislation of a jurisdiction of Canada as a representative of a person referred to in paragraph (d),

(f)    the Government of Canada or a jurisdiction of Canada, or any crown corporation, agency or wholly owned entity of the Government of Canada or a jurisdiction of Canada,

(g)    a municipality, public board or commission in Canada and a metropolitan community, school board, the Comité de gestion de la taxe scolaire de l'île de Montréal or an intermunicipal management board in Québec;

- 2 -

(h)     any national, federal, state, provincial, territorial or municipal government of or in any foreign jurisdiction, or any agency of that government,

(i)     a pension fund that is regulated by either the Office of the Superintendent of Financial Institutions (Canada) or a pension commission or similar regulatory authority of a jurisdiction of Canada,

(j)     an individual who, either alone or with a spouse, beneficially owns, directly or indirectly, financial assets having an aggregate realizable value that before taxes, but net of any related liabilities, exceeds $1 000 000,

(k)     an individual whose net income before taxes exceeded $200 000 in each of the 2 most recent calendar years or whose net income before taxes combined with that of a spouse exceeded $300 000 in each of the 2 most recent calendar years and who, in either case, reasonably expects to exceed that net income level in the current calendar year,

(l)     an individual who, either alone or with a spouse, has net assets of at least $5 000 000,

(m)     a person, other than an individual or investment fund, that has net assets of at least $5 000 000 as shown on its most recently prepared financial statements,

(n)     an investment fund that distributes or has distributed its securities only to

(i)     a person that is or was an accredited investor at the time of the distribution,

(ii)     a person that acquires or acquired securities in the circumstances referred to in sections 2.10 [*Minimum amount investment*], and 2.19 [*Additional investment in investment funds*], or

(iii)     a person described in paragraph (i) or (ii) that acquires or acquired securities under section 2.18 [*Investment fund reinvestment*],

- 3 -

(o)    an investment fund that distributes or has distributed securities under a prospectus in a jurisdiction of Canada for which the regulator or, in Québec, the securities regulatory authority, has issued a receipt,

(p)    a trust company or trust corporation registered or authorized to carry on business under the *Trust and Loan Companies Act* (Canada) or under comparable legislation in a jurisdiction of Canada or a foreign jurisdiction, acting on behalf of a fully managed account managed by the trust company or trust corporation, as the case may be,

(q)    a person acting on behalf of a fully managed account managed by that person, if that person

    (i)    is registered or authorized to carry on business as an adviser or the equivalent under the securities legislation of a jurisdiction of Canada or a foreign jurisdiction, and

    (ii)    in Ontario, is purchasing a security that is not a security of an investment fund;

(r)    a registered charity under the *Income Tax Act* (Canada) that, in regard to the trade, has obtained advice from an eligibility adviser or an adviser registered under the securities legislation of the jurisdiction of the registered charity to give advice on the securities being traded,

(s)    an entity organized in a foreign jurisdiction that is analogous to any of the entities referred to in paragraphs (a) to (d) or paragraph (i) in form and function,

(t)    a person in respect of which all of the owners of interests, direct, indirect or beneficial, except the voting securities required by law to be owned by directors, are persons that are accredited investors,

(u)    an investment fund that is advised by a person registered as an adviser or a person that is exempt from registration as an adviser, or

(v)    a person that is recognized or designated by the securities regulatory authority or, except in Ontario and Québec, the regulator as

- 4 -

  (i)  an accredited investor, or

  (ii)  an exempt purchaser in Alberta or British Columbia after this Instrument comes into force;

**"AIF"** means

  (a)  for financial years starting before January 1, 2004, a current AIF as defined in Multilateral Instrument 45-102 *Resale of Securities* that came into force on November 30, 2001, and

  (b)  for financial years starting on or after January 1, 2004,

    (i)  an AIF as defined in NI 51-102,

    (ii)  a prospectus filed in a jurisdiction, other than a prospectus filed under a CPC instrument, if the issuer has not filed or been required to file an AIF or annual financial statements under NI 51-102, or

    (iii)  a QT circular if the issuer has not filed or been required to file annual financial statements under NI 51-102 subsequent to filing its QT circular;

"**approved credit rating**" has the same meaning as in National Instrument 81-102 *Mutual Funds*;

"**approved credit rating organization**" has the same meaning as in National Instrument 81-102 *Mutual Funds*;

**"bank"** means a bank named in Schedule I or II of the *Bank Act* (Canada);

"**Canadian financial institution**" means

  (a)  an association governed by the *Cooperative Credit Associations Act* (Canada) or a central cooperative credit society for which an order has been made under section 473(1) of that Act, or

  (b)  a bank, loan corporation, trust company, trust corporation, insurance company, treasury branch, credit union, caisse populaire, financial services cooperative, or league that, in each case, is

authorized by an enactment of Canada or a jurisdiction of Canada to carry on business in Canada or a jurisdiction of Canada;

**"control person"** has the same meaning as in securities legislation except in Manitoba, Newfoundland and Labrador, Northwest Territories, Nova Scotia, Nunavut, Ontario, Prince Edward Island and Quebéc where control person means any person that holds or is one of a combination of persons that holds

(a)    a sufficient number of any of the securities of an issuer so as to affect materially the control of the issuer, or

(b)    more than 20% of the outstanding voting securities of an issuer except where there is evidence showing that the holding of those securities does not affect materially the control of the issuer;

**"CPC instrument"** means a rule or regulation of a jurisdiction of Canada or a rule, regulation or policy of an exchange in Canada that applies only to capital pool companies;

**"debt security"** means any bond, debenture, note or similar instrument representing indebtedness, whether secured or unsecured;

"**director"** means

(a)    a member of the board of directors of a company or an individual who performs similar functions for a company, and

(b)     with respect to a person that is not a company, an individual who performs functions similar to those of a director of a company;

**"eligibility adviser"** means

(a)    a person that is registered as an investment dealer or in an equivalent category of registration under the securities legislation of the jurisdiction of a purchaser and authorized to give advice with respect to the type of security being distributed, and

(b)    in Saskatchewan or Manitoba, also means a lawyer who is a practicing member in good standing with a law society of a jurisdiction of Canada or a public accountant who is a member in good standing of an institute or association of chartered

accountants, certified general accountants or certified management accountants in a jurisdiction of Canada provided that the lawyer or public accountant must not

(i)     have a professional, business or personal relationship with the issuer, or any of its directors, executive officers, founders, or control persons, and

(ii)    have acted for or been retained personally or otherwise as an employee, executive officer, director, associate or partner of a person that has acted for or been retained by the issuer or any of its directors, executive officers, founders or control persons within the previous 12 months;

**"eligible investor"** means

(a)    a person whose

(i)     net assets, alone or with a spouse, in the case of an individual, exceed $400 000,

(ii)    net income before taxes exceeded $75 000 in each of the 2 most recent calendar years and who reasonably expects to exceed that income level in the current calendar year, or

(iii)   net income before taxes, alone or with a spouse, in the case of an individual, exceeded $125 000 in each of the 2 most recent calendar years and who reasonably expects to exceed that income level in the current calendar year,

(b)    a person of which a majority of the voting securities are beneficially owned by eligible investors or a majority of the directors are eligible investors,

(c)    a general partnership of which all of the partners are eligible investors,

(d)    a limited partnership of which the majority of the general partners are eligible investors,

(e)    a trust or estate in which all of the beneficiaries or a majority of the trustees or executors are eligible investors,

(f)    an accredited investor,

(g)     a person described in section 2.5 [*Family, friends and business associates*], or

(h)     a person that has obtained advice regarding the suitability of the investment and, if the person is resident in a jurisdiction of Canada, that advice has been obtained from an eligibility adviser;

**"executive officer"** means, for an issuer, an individual who is

(a)     a chair, vice-chair or president,

(b)     a vice-president in charge of a principal business unit, division or function including sales, finance or production,

(c)     an officer of the issuer or any of its subsidiaries and who performs a policy-making function in respect of the issuer, or

(d)     performing a policy-making function in respect of the issuer;

**"financial assets"** means

(a)     cash,

(b)     securities, or

(c)     a contract of insurance, a deposit or an evidence of a deposit that is not a security for the purposes of securities legislation;

**"founder"** means, in respect of an issuer, a person who,

(a)     acting alone, in conjunction, or in concert with one or more persons, directly or indirectly, takes the initiative in founding, organizing or substantially reorganizing the business of the issuer, and

(b)     at the time of the trade is actively involved in the business of the issuer;

**"fully managed account"** means an account of a client for which a person makes the investment decisions if that person has full discretion to trade in securities for the account without requiring the client's express consent to a transaction;

**"investment fund"** has the same meaning as in National Instrument 81-106 *Investment Fund Continuous Disclosure;*

**"marketplace"** has the same meaning as in National Instrument 21-101 *Marketplace Operation*;

**"MD&A"** has the same meaning as in NI 51-102;

**"NI 45-102"** means National Instrument 45-102 *Resale of Securities*;

**"NI 51-102"** means National Instrument 51-102 *Continuous Disclosure Obligations*;

**"non-redeemable investment fund"** has the same meaning as in National Instrument 81-106 *Investment Fund Continuous Disclosure;*

"**person"** includes

        (a)     an individual,

        (b)     a corporation,

        (c)     a partnership, trust, fund and an association, syndicate, organization or other organized group of persons, whether incorporated or not, and

        (d)     an individual or other person in that person's capacity as a trustee, executor, administrator or personal or other legal representative;

 **"QT circular"** means an information circular or filing statement in respect of a qualifying transaction for a capital pool company under a CPC instrument;

**"qualifying issuer"** means a  reporting issuer in a jurisdiction of Canada that

        (a)     is a SEDAR filer,

        (b)     has filed all documents required to be filed under the securities legislation of that jurisdiction, and

        (c)     if not required to file an AIF, has filed in the jurisdiction,

                (i)     an AIF for its most recently completed financial year for which annual statements are required to be filed, and

                (ii)    copies of all material incorporated by reference in the AIF not previously filed;

**"related liabilities"** means

    (a)    liabilities incurred or assumed for the purpose of financing the acquisition or ownership of financial assets, or

    (b)    liabilities that are secured by financial assets;

**"reporting issuer"** means, in Northwest Territories, Nunavut and Prince Edward Island, an issuer that is a reporting issuer in a jurisdiction of Canada;

**"RRIF"** means a registered retirement income fund as defined in the *Income Tax Act* (Canada);

**"RRSP"** means a registered retirement savings plan as defined in the *Income Tax Act* (Canada);

**"Schedule III bank"** means an authorized foreign bank named in Schedule III of the *Bank Act* (Canada);

**"SEDAR filer"** means an issuer that is an electronic filer under National Instrument 13-101 *System for Electronic Document Analysis and Retrieval (SEDAR);*

**"spouse"** means, an individual who,

    (a)    is married to another individual and is not living separate and apart within the meaning of the *Divorce Act* (Canada), from the other individual,

    (b)    is living with another individual in a marriage-like relationship, including a marriage-like relationship between individuals of the same gender, or

    (c)    in Alberta, is an individual referred to in paragraph (a) or (b), or is an adult interdependent partner within the meaning of the *Adult Interdependent Relationships Act* (Alberta);

**"subsidiary"** means an issuer that is controlled directly or indirectly by another issuer and includes a subsidiary of that subsidiary.

**Affiliate**

**1.2**  For the purpose of this Instrument, an issuer is an affiliate of another issuer if

(a)     one of them is the subsidiary of the other, or

(b)     each of them is controlled by the same person.

**Control**

**1.3** Except in Part 2, Division 4, for the purpose of this Instrument, a person (first person) is considered to control another person (second person) if

(a)     the first person, directly or indirectly, beneficially owns or exercises control or direction over securities of the second person carrying votes which, if exercised, would entitle the first person to elect a majority of the directors of the second person, unless that first person holds the voting securities only to secure an obligation,

(b)     the second person is a partnership, other than a limited partnership, and the first person  holds more than 50% of the interests of the partnership, or

(c)     the second person is a limited partnership and the general partner of the limited partnership is the first person.

**Registration requirement**

**1.4 (1)**  An exemption from the dealer registration requirement or from the prospectus requirement that refers to a registered dealer is only available for a trade in a security if the dealer is registered in a category that permits the trade described in the exemption.

**(2)**   An exemption from the dealer registration requirement is deemed to be an exemption from the underwriter registration requirement.

**Definition of distribution - Manitoba and Yukon**

**1.5** For the purpose of this Instrument, in Manitoba and Yukon, "distribution" means a primary distribution to the public.

**Definition of trade - Québec**

**1.6** For the purpose of this Instrument, in Québec, "trade" includes any of the following activities:

  (a)    any of the activities referred to in the definition of "dealer" in section 5 of the *Securities Act* (Québec);

  (b)    the sale or disposition of a security for valuable consideration, whether the terms of payment are on margin, installment or otherwise,  but does not include,

         (i)    except as provided in paragraph (e), a transfer, pledge or encumbrance of securities for the purpose of giving collateral for a debt made in good faith, or

         (ii)   the purchase of a security;

  (c)    participation as a trader in any transaction in a security through the facilities of an exchange or a quotation and trade reporting system;

  (d)    receipt by a registrant of an order to buy or sell a security;

  (e)    a transfer, pledge or encumbrancing of securities of an issuer from the holdings of a control person for the purpose of giving collateral for a debt made in good faith;

  (f)    entering into a derivative;

  (g)    any activity, advertisement, solicitation, conduct or negotiation directly or indirectly in furtherance of any of the activities referred to in paragraphs (a) to (f).


**PART 2: PROSPECTUS AND REGISTRATION EXEMPTIONS**


**Division 1: Capital Raising Exemptions**

**Rights offering**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.1 (1)**  The dealer registration requirement does not apply in respect of a trade by an issuer in a right granted by the issuer to purchase a security of its own issue to a security holder of the issuer if

> (a)      the issuer has given the regulator or, in Québec, the securities regulatory authority, prior written notice stating the date, amount, nature and conditions of the trade, including the approximate net proceeds to be derived by the issuer on the basis of the additional securities being fully taken up,
>
> (b)      except in British Columbia, the regulator or, in Québec, the securities regulatory authority, has not objected in writing to the trade within 10 days of receipt of the notice referred to in paragraph (a) or, if the regulator or securities regulatory authority objects to the trade, the issuer has delivered to the regulator or securities regulatory authority information relating to the securities that is satisfactory to and accepted by the regulator or securities regulatory authority, and
>
> (c)      the issuer has complied with the applicable requirements of National Instrument 45-101 *Rights Offerings*.

**(2)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Reinvestment plan**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.2 (1)**   Subject to subsections (3) and (5), the dealer registration requirement does not apply in respect of the following trades by an issuer, or by a trustee, custodian or administrator acting for or on behalf of the issuer, to a security holder of the issuer if the trades are permitted by a plan of the issuer:

- 13 -

(a)    a trade in a security of the issuer's own issue if dividends or distributions out of earnings, surplus, capital or other sources payable in respect of the issuer's securities are applied to the purchase of the security that is of the same class or series as the securities to which the dividends or distributions out of earnings, surplus, capital or other sources is attributable, and

(b)    subject to subsection (2), a trade in a security of the issuer's own issue if the security holder makes optional cash payments to purchase the security of the issuer that is of the same class or series of securities described in paragraph (a) that trade on a marketplace.

**(2)**   The aggregate number of securities issued under the optional cash payment referred to in subsection (1)(b) must not exceed, in any financial year of the issuer during which the trade takes place, 2% of the issued and outstanding securities of the class to which the plan relates as at the beginning of the financial year.

**(3)**   A plan that permits the trades described in subsection (1) must be available to every security holder in Canada to which the dividend or distribution is available.

**(4)**   Subject to subsections (3) and (5), the prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**(5)**   This section does not apply to a trade in a security of an investment fund.

**Accredited investor**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period on resale.**

**2.3 (1)**   The dealer registration requirement does not apply in respect of a trade in a security if the purchaser purchases the security as principal and is an accredited investor.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**(3)**   Subject to subsection (4), for the purpose of this section, a trust company or trust corporation described in paragraph (p) of the definition of "accredited investor" in section 1.1 [*Definitions*] is deemed to be purchasing as principal.

- 14 -

**(4)**  Subsection (3) does not apply to a trust company or trust corporation registered under the laws of Prince Edward Island that is not registered or authorized under the *Trust and Loan Companies Act* (Canada) or under comparable legislation in another jurisdiction of Canada.

**(5)**  For the purpose of this section, a person described in paragraph (q) of the definition of "accredited investor" in section 1.1 [*Definitions*] is deemed to be purchasing as principal.

**(6)**  This section does not apply to a trade in a security to a person if that person is created or used solely to purchase or hold securities as an accredited investor as described in paragraph (m) of the definition of "accredited investor" in section 1.1 [*Definitions*].

**Private issuer**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.4 (1)**  In this section, "private issuer" means an issuer

> (a)  that is not a reporting issuer or an investment fund,
>
> (b)  whose securities, other than non-convertible debt securities,
>
>> (i)  are subject to restrictions on transfer that are contained in the issuer's constating documents or security holders' agreements, and
>>
>> (ii)  are beneficially owned, directly or indirectly, by not more than 50 persons, not including employees and former employees of the issuer or its affiliates, provided that each person is counted as one beneficial owner unless the person is created or used solely to purchase or hold securities of the issuer in which case each beneficial owner or each beneficiary of the person, as the case may be, must be counted as a separate beneficial owner, and
>
> (c)  that has distributed securities only to persons described in this section.

**(2)**  The dealer registration requirement does not apply in respect of a trade in a security of a private issuer to a person who purchases the security as principal and is

- 15 -

(a)    a director, officer, employee, founder or control person of the issuer,

(b)    a spouse, parent, grandparent, brother, sister or child of a director, executive officer, founder or control person of the  issuer,

(c)    a parent, grandparent, brother, sister or child of the spouse of a director, executive officer, founder or control person of the  issuer,

(d)    a close personal friend of a director, executive officer, founder or control person of the issuer,

(e)    a close business associate of a director, executive officer, founder or control person of the issuer,

(f)    a spouse, parent, grandparent, brother, sister or child of the selling security holder or of the selling security holder's spouse,

(g)    a security holder of the  issuer,

(h)    an accredited investor,

(i)    a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, persons described in paragraphs (a) to (h),

(j)    a trust or estate of which all of the beneficiaries or a majority of the trustees or executors are persons described in paragraphs (a) to (h), or

(k)    a person that is not the public.

**(3)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (2).

**(4)**  Except for a trade to an accredited investor, no commission or finder's fee may be paid to any director, officer, founder or control person of an issuer in connection with a trade under subsection (2) or (3).

## Family, friends and business associates

| Refer to Appendix D of NI 45-102 *Resale of Securities*. **First trades are subject to a restricted period on resale.** |
| --- |

- 16 -

**2.5 (1)** Except in Ontario and subject to section 2.6 [*Family, friends and business associates - Saskatchewan*], the dealer registration requirement does not apply in respect of a trade in a security to a person who purchases the security as principal and is

   (a)   a director, executive officer or control person of the issuer, or of an affiliate of the issuer,

   (b)   a spouse, parent, grandparent, brother, sister or child of a director, executive officer or control person of the issuer, or of an affiliate of the issuer,

   (c)   a parent, grandparent, brother, sister or child of the spouse of a director, executive officer or control person of the issuer or of an affiliate of the issuer,

   (d)   a close personal friend of a director, executive officer or control person of the issuer, or of an affiliate of the issuer,

   (e)   a close business associate of a director, executive officer or control person of the issuer, or of an affiliate of the issuer,

   (f)   a founder of the issuer or a spouse, parent, grandparent, brother, sister, child, close personal friend or close business associate of a founder of the issuer,

   (g)   a parent, grandparent, brother, sister or child of a spouse of a founder of the issuer,

   (h)   a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, persons described in paragraphs (a) to (g), or

   (i)   a trust or estate of which all of the beneficiaries or a majority of the trustees or executors are persons described in paragraphs (a) to (g).

**(2)** Except in Ontario and subject to section 2.6 [*Family, friends and business associates - Saskatchewan*], the prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**(3)**   No commission or finder's fee may be paid to any director, officer, founder, or control person of an issuer or an affiliate of the issuer in connection with a trade under subsection (1) or (2).

### Family, friends and business associates - Saskatchewan

**2.6 (1)**   In Saskatchewan, section 2.5 [*Family, friends and business associates*] does not apply unless the person making the trade obtains a signed risk acknowledgement from the purchaser in the required form for a trade to

>    (a)   a person described in section 2.5(1) (d) or (e) [*Family, friends and business associates*],
>
>    (b)   a close personal friend or close business associate of a founder of the issuer, or
>
>    (c)   a person described in section 2.5(1)(h) or (i) [*Family, friends and business associates*] if the trade is based in whole or in part on a close personal friendship or close business association.

**(2)**   The person making the trade must retain the required form referred to in subsection (1) for 8 years after the trade.

### Founder, control person and family- Ontario

> **Refer to Appendix D of NI 45-102** *Resale of Securities.* **First trades are subject to a restricted period on resale.**

**2.7 (1)**   In Ontario, the dealer registration requirement does not apply in respect of a trade in a security to a person who purchases the security as principal and is

>    (a)   a founder of the issuer,
>
>    (b)   an affiliate of a founder of the issuer,
>
>    (c)   a spouse, parent, brother, sister, grandparent or child of an executive officer, director or founder of the issuer, or
>
>    (d)   a person that is a control person of the issuer.

- 18 -

**(2)**   In Ontario, the prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


**Affiliates**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period on resale.**

**2.8 (1)**   The dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue to an affiliate of the issuer that is purchasing as principal.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


**Offering memorandum**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period on resale**.

**2.9 (1)**   In British Columbia, New Brunswick, Nova Scotia and Newfoundland and Labrador, the dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue to a purchaser if

   (a)    the purchaser purchases the security as principal, and

   (b)    at the same time or before the purchaser signs the agreement to purchase the security, the issuer

      (i)    delivers an offering memorandum to the purchaser in compliance with subsections (7) to (13), and

      (ii)    obtains a signed risk acknowledgement from the purchaser in compliance with subsection (14).

**(2)**   In Alberta, Manitoba, Northwest Territories, Nunavut, Prince Edward Island, Québec and Saskatchewan, the dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue to a purchaser if

   (a)    the purchaser purchases the security as principal,

- 19 -

     (b)     the purchaser is an eligible investor or the acquisition cost to the purchaser does not exceed $10 000,

     (c)     at the same time or before the purchaser signs the agreement to purchase the security, the issuer

             (i)     delivers an offering memorandum to the purchaser in compliance with subsections (7) to (13), and

             (ii)     obtains a signed risk acknowledgement from the purchaser in compliance with subsection (14),

and

     (d)     if the issuer is an investment fund, the investment fund is

             (i)     a non-redeemable investment fund, or

             (ii)     a mutual fund that is

                    (A)     a reporting issuer, and

                    (B)     in Manitoba, Québec and Saskatchewan, is an issuer listed for trading on an exchange or quoted on an over-the-counter market.

**(3)**  In British Columbia, New Brunswick, Nova Scotia and Newfoundland and Labrador, the prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**(4)**  In Alberta, Manitoba, Northwest Territories, Nunavut, Prince Edward Island, Québec and Saskatchewan, the prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (2).

**(5)**  In Alberta, Manitoba, Northwest Territories, Nunavut, Prince Edward Island, Québec and Saskatchewan, this section does not apply to a trade in a security to a person described in paragraph (a) of the definition of "eligible investor" in section 1.1 [*Definitions*] if that person is created or used solely to purchase or hold securities in reliance on an exemption from the dealer registration requirement or the prospectus requirement set out in subsections (2) and (4).

- 20 -

**(6)**  No commission or finder's fee may be paid to any person, other than a registered dealer, in connection with a trade to a purchaser in

(a)    Northwest Territories, Nunavut and Saskatchewan under subsections (2) and (4), or

(b)    New Brunswick under subsections (1) and (3).

**(7)**  An offering memorandum delivered under this section must be in the required form.

**(8)**  If the securities legislation where the purchaser is resident does not provide a comparable right, an offering memorandum delivered under this section must provide the purchaser with a contractual right to cancel the agreement to purchase the security by delivering a notice to the issuer not later than midnight on the 2nd business day after the purchaser signs the agreement to purchase the security.

**(9)**  If the securities legislation where the purchaser is resident does not provide statutory rights of action in the event of a misrepresentation in an offering memorandum delivered under this section, the offering memorandum must contain a contractual right of action against the issuer for rescission or damages that

(a)    is available to the purchaser if the offering memorandum, or any information or documents incorporated or deemed to be incorporated by reference into the offering memorandum, contains a misrepresentation, without regard to whether the purchaser relied on the misrepresentation,

(b)    is enforceable by the purchaser delivering a notice to the issuer

(i)    in the case of an action for rescission, within 180 days after the purchaser signs the agreement to purchase the security, or

(ii)    in the case of an action for damages, before the earlier of

A)    180 days after the purchaser first has knowledge of the facts giving rise to the cause of action, or

B)    3 years after the date the purchaser signs the agreement to purchase the security,

(c)     is subject to the defence that the purchaser had knowledge of the misrepresentation,

(d)     in the case of an action for damages, provides that the amount recoverable

    (i)     must not exceed the price at which the security was offered, and

    (ii)    does not include all or any part of the damages that the issuer proves does not represent the depreciation in value of the security resulting from the misrepresentation, and

(e)     is in addition to, and does not detract from, any other right of the purchaser.

**(10)**   An offering memorandum delivered under this section must contain a certificate that states the following:

    "This offering memorandum does not contain a misrepresentation."

**(11)**   A certificate under subsection (10) must be signed

(a)     by the issuer's chief executive officer and chief financial officer or, if the issuer does not have a chief executive officer or chief financial officer, a person acting in that capacity,

(b)     on behalf of the directors of the issuer,

    (i)     by any 2 directors who are authorized to sign, other than the persons referred to in paragraph (a), or

    (ii)    by all the directors of the issuer, and

(c)     by each promoter of the issuer.

**(12)**   A certificate under subsection (10) must be true

(a)     at the date the certificate is signed, and

(b)     at the date the offering memorandum is delivered to the purchaser.

**(13)**  If a certificate under subsection (10) ceases to be true after it is delivered to the purchaser, the issuer cannot accept an agreement to purchase the security from the purchaser unless

      (a)      the purchaser receives an update of the offering memorandum,

      (b)      the update of the offering memorandum contains a newly dated certificate signed in compliance with subsection (11), and

      (c)      the purchaser re-signs the agreement to purchase the security.

**(14)**  A risk acknowledgement under subsection (1), (2), (3) or (4) must be in the required form and an issuer relying on subsection (1), (2) (3) or (4) must retain the signed risk acknowledgment for 8 years after the distribution.

**(15)**  The issuer must

      (a)      hold in trust all consideration received from the purchaser in connection with a trade in a security under subsection (1), (2), (3) or (4) until midnight on the 2nd business day after the purchaser signs the agreement to purchase the security, and

      (b)      return all consideration to the purchaser promptly if the purchaser exercises the right to cancel the agreement to purchase the security described under subsection (8).

**(16)**  The issuer must file a copy of an offering memorandum delivered under this section and any update of a previously filed offering memorandum with the securities regulatory authority on or before the 10th day after the distribution under the offering memorandum or update of the offering memorandum.

**(17)**  If a qualifying issuer uses a form of offering memorandum that allows the qualifying issuer to incorporate previously filed information into the offering memorandum by reference, the qualifying issuer is exempt from the requirement under National Instrument 43-101 *Standards of Disclosure for Mineral Projects* to file a technical report to support scientific or technical information about the qualifying issuer's mineral project in the offering memorandum or incorporated by reference into the offering memorandum if the information about the mineral project is contained in a previously filed technical report under National Instrument 43-101 *Standards of Disclosure for Mineral Projects.*

- 23 -

**Minimum amount investment**

> **Refer to Appendix D of NI 45-102** *Resale of Securities*. **First trades are subject to a restricted period on resale**.

**2.10     (1)**   The dealer registration requirement does not apply in respect of a trade in a security to a person if

> (a)      that person purchases as principal,

> (b)      the security has an acquisition cost to the purchaser of not less than $150 000 paid in cash at the time of the trade, and

> (c)      the trade is in a security of a single issuer.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**(3)**   This section does not apply to a trade in a security to a person if that person is created or used solely to purchase or hold securities in reliance on this exemption from the dealer registration requirement or the prospectus requirement.

### Division 2: Transaction Exemptions

**Business combination and reorganization**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale**.

**2.11     (1)**   The dealer registration requirement does not apply in respect of a trade in a security in connection with

> (a)      an amalgamation, merger, reorganization or arrangement that is under a statutory procedure,

> (b)      an amalgamation, merger, reorganization or arrangement that

> > (i)      is described in an information circular made pursuant to NI 51-102 or in a similar disclosure record and the information circular or similar disclosure record is delivered to each

- 24 -

> security holder whose approval of the amalgamation, merger, reorganization or arrangement is required before it can proceed, and

(ii)     is approved by the security holders referred to in subparagraph (i),

or

(c)     a dissolution or winding-up of the issuer.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


**Asset acquisition**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period on resale**.

**2.12     (1)**   The dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue to a person as consideration for the assets of the person, if those assets have a fair value of not less than $150 000.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


**Petroleum, natural gas and mining properties**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period on resale.**

**2.13     (1)**   The dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue as consideration for the acquisition of petroleum, natural gas or mining properties or any interest in them.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Securities for debt**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period on resale.**

**2.14** **(1)** The dealer registration requirement does not apply in respect of a trade by a reporting issuer in a security of its own issue to a creditor to settle a bona fide debt of that reporting issuer.

**(2)** The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Issuer acquisition or redemption**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*.**

**2.15** **(1)** The dealer registration requirement does not apply in respect of a trade in a security to the issuer of the security.

**(2)** The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Take-over bid and issuer bid**

> **Refer to section 2.11 or Appendix E of NI 45-102 *Resale of Securities*. First trades are subject to a seasoning period on resale unless the requirements of section 2.11 of NI 45-102 are met.**

**2.16** **(1)** The dealer registration requirement does not apply in respect of a trade in a security in connection with a take-over bid or issuer bid.

**(2)** The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Offer to acquire to security holder outside local jurisdiction**

> **Refer to Appendix E of NI 45-102 *Resale of Securities*. First trades are subject to a seasoning period on resale.**

- 26 -

**2.17**   **(1)**   The dealer registration requirement does not apply in respect of a trade by a security holder outside the local jurisdiction to a person in the local jurisdiction if the trade would have been in connection with a take-over bid or issuer bid made by that person were it not for the fact that the security holder is outside of the local jurisdiction.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

### Division 3: Investment Fund Exemptions

**Investment fund reinvestment**

> **Refer to Appendix E of NI 45-102 *Resale of Securities*. First trades are subject to a seasoning period on resale.**

**2.18**   **(1)**   Subject to subsections (3), (4) and (5), the dealer registration requirement does not apply in respect of the following trades by an investment fund to a security holder of the investment fund if the trades are permitted by a plan of the investment fund:

(a)   a trade in a security of the investment fund's own issue if dividends or distributions out of earnings, surplus, capital or other sources payable in respect of the investments fund's securities are applied to the purchase of the security that is of the same class or series as the securities to which the dividends or distributions out of earnings, surplus, capital or other sources are attributable, and

(b)   subject to subsection (2), a trade in a security of the investment fund's own issue if the security holder makes optional cash payments to purchase the security of the investment fund that is of the same class or series of securities described in paragraph (a) that trade on a marketplace.

**(2)**   The aggregate number of securities issued under the optional cash payment referred to in subsection (1) (b) must not exceed, in any financial year of the investment fund during which the trade takes place, 2% of the issued and outstanding securities of the class to which the plan relates as at the beginning of the financial year.

**(3)**   A plan that permits the trades described in subsection (1) must be available to every security holder in Canada to which the dividend or distribution is available.

- 27 -

**(4)**   No sales charge is payable on a trade described in subsection (1).

**(5)**   The most recent prospectus of the investment fund, if any, must set out

      (a)     details of any deferred or contingent sales charge or redemption fee that is payable at the time of the redemption of the security,

      (b)     any right that the security holder has to make an election to receive cash instead of securities on the payment of a dividend or making of a distribution  by the investment fund, and

      (c)     instructions on how the right referred to in paragraph (b) can be exercised.

**(6)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Additional investment in investment funds**

> **Refer to Appendix D of NI 45-102** *Resale of Securities*. **First trades are subject to a restricted period on resale.**

**2.19**   **(1)**   The dealer registration requirement does not apply in respect of a trade by an investment fund in a security of its own issue to a security holder of the issuer if

      (a)     the security holder initially acquired securities of the investment fund as principal for an acquisition cost of not less than $150 000 paid in cash at the time of the trade,

      (b)     the subsequent trade is for a security of the same class or series as the initial trade, and

      (c)     the security holder, as at the date of the subsequent trade, holds securities of the investment fund that have

            (i)     an acquisition cost of not less than $150 000, or

            (ii)     a net asset value of not less than $150 000.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

- 28 -

**Private investment club**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.20**    **(1)**    The dealer registration requirement does not apply in respect of a trade in a security of an investment fund if the investment fund

> (a)    has no more than 50 beneficial security holders,
>
> (b)    does not seek and has never sought to borrow money from the public,
>
> (c)    does not and has never distributed its securities to the public,
>
> (d)    does not pay or give any remuneration for investment management or administration advice in respect of trades in securities, except normal brokerage fees, and
>
> (e)    for the purpose of financing the operations of the investment fund, requires security holders to make contributions in proportion to the value of the securities held by them.

**(2)**    The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


**Private investment fund - loan and trust pools**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.21**    **(1)**    The dealer registration requirement does not apply in respect of a trade in a security of an investment fund if the investment fund

> (a)    is administered by a trust company or trust corporation that is registered or authorized by an enactment of Canada or a jurisdiction of Canada to carry on business in Canada or a jurisdiction of Canada,
>
> (b)    has no promoter or manager other than the trust company or trust corporation referred to in paragraph (a), and

> (c)    co-mingles the money of different estates and trusts for the purpose of facilitating investment.

**(2)**   Despite subsection (1), a trust company or trust corporation registered under the laws of Prince Edward Island that is not registered under the *Trust and Loan Companies Act* (Canada) or under comparable legislation in another jurisdiction of Canada is not a trust company or trust corporation for the purpose of subsection (1)(a).

**(3)**   Subject to subsection (2), the prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


### Division 4: Employee, Executive Officer, Director and Consultant Exemptions

**Definitions**

**2.22**    In this Division

> **"associate"**, when used to indicate a relationship with a person, means

>> (a)    an issuer of which the person beneficially owns or controls, directly or indirectly, voting securities entitling the person to more than 10% of the voting rights attached to outstanding voting securities of the issuer,

>> (b)    any partner of the person,

>> (c)    any trust or estate in which the person has a substantial beneficial interest or in respect of which the person serves as trustee or executor or in a similar capacity, or

>> (d)    in the case of an individual, a relative of that individual, including

>>> (i)    a spouse of that individual, or

>>> (ii)    a relative of that individual's spouse

>> if the relative has the same home as that individual;

> **"associated consultant"** means, for an issuer, a consultant of the issuer or of a related entity of the issuer if

(a)    the consultant is an associate of the issuer or of a related entity of the issuer, or

(b)    the issuer or a related entity of the issuer is an associate of the consultant;

**"compensation"** means an issuance of securities in exchange for services provided or to be provided and includes an issuance of securities for the purpose of providing an incentive;

**"consultant"** means, for an issuer, a person, other than an employee, executive officer, or director of the issuer or of a related entity of the issuer, that

(a)    is engaged to provide services to the issuer or a related entity of the issuer, other than services provided in relation to a distribution,

(b)    provides the services under a written contract with the issuer or a related entity of the issuer, and

(c)    spends or will spend a significant amount of time and attention on the affairs and business of the issuer or a related entity of the issuer

and includes, for an individual consultant, a corporation of which the individual consultant is an employee or shareholder, and a partnership of which the individual consultant is an employee or partner;

**"holding entity"** means a person that is controlled by an individual;

**"investor relations activities"** means activities or communications, by or on behalf of an issuer or a security holder of the issuer, that promote or could reasonably be expected to promote the purchase or sale of securities of the issuer, but does not include

(a)    the dissemination of information or preparation of records in the ordinary course of the business of the issuer

(i)    to promote the sale of products or services of the issuer, or

(ii)    to raise public awareness of the issuer

that cannot reasonably be considered to promote the purchase or sale of securities of the issuer,

- 31 -

      (b)      activities or communications necessary to comply with the requirements of

            (i)      securities legislation of any jurisdiction of Canada,

            (ii)      the securities laws of any foreign jurisdiction governing the issuer, or

            (iii)      any exchange or market on which the issuer's securities trade,

or

      (c)      activities or communications necessary to follow securities directions of any jurisdiction of Canada;

**"investor relations person"** means a person that is a registrant or that provides services that include investor relations activities;

**"issuer bid requirements"** means the requirements under securities legislation that apply to an issuer bid;

**"listed issuer"** means an issuer, any of the securities of which

      (a)      are listed and not suspended, or the equivalent, from trading on

            (i)      the Toronto Stock Exchange,

            (ii)      TSX Venture Exchange Inc.,

            (iii)      the American Stock Exchange LLC,

            (iv)      The New York Stock Exchange, Inc.,

            (v)      the London Stock Exchange Limited, or

      (b)      are quoted on the Nasdaq Stock Market;

**"permitted assign"** means, for a person that is an employee, executive officer, director or consultant of an issuer or of a related entity of the issuer,

      (a)      a trustee, custodian, or administrator acting on behalf of, or for the benefit of the person,

      (b)      a holding entity of the person,

      (c)      an RRSP or a RRIF of the person,

(d)      a spouse of the person,

(e)      a trustee, custodian, or administrator acting on behalf of, or for the benefit of the spouse of the person,

(f)      a holding entity of the spouse of the person, or

(g)      an RRSP or a RRIF of the spouse of the person;

**"plan"** means a plan or program established or maintained by an issuer providing for the acquisition of securities of the issuer by persons described in section 2.24(1) [*Employee, executive officer, director and consultant*] as compensation;

**"related entity"** means, for an issuer, a person that controls or is controlled by the issuer or that is controlled by the same person that controls the issuer;

**"related person"** means, for an issuer,

(a)      a director or executive officer of the issuer or of a related entity of the issuer,

(b)      an associate of a director or executive officer of the issuer or of a related entity of the issuer, or

(c)      a permitted assign of a director or executive officer of the issuer or of a related entity of the issuer;

**"security holder approval"** means an approval for the issuance of securities of an issuer as compensation or under a plan

(a)      given by a majority of the votes cast at a meeting of security holders of the issuer other than votes attaching to securities beneficially owned by related persons to whom securities may be issued as compensation or under that plan, or

(b)      evidenced by a resolution signed by all the security holders entitled to vote at a meeting, if the issuer is not required to hold a meeting;

**"support agreement"** includes an agreement to provide assistance in the maintenance or servicing of indebtedness of the borrower and an agreement to provide consideration for the purpose of maintaining or servicing indebtedness of the borrower.

**Interpretation**

**2.23**   **(1)**  In this Division, a person (first person) is considered to control another person (second person) if the first person, directly or indirectly, has the power to direct the management and policies of the second person by virtue of

      (a)    ownership of or direction over voting securities in the second person,

      (b)    a written agreement or indenture,

      (c)    being the general partner or controlling the general partner of the second person, or

      (d)    being a trustee of the second person.

**(2)**  In this Division, participation in a trade is considered voluntary if

      (a)    in the case of an employee or the employee's permitted assign, the employee or the employee's permitted assign is not induced to participate in the trade by expectation of employment or continued employment of the employee with the issuer or a related entity of the issuer,

      (b)    in the case of an executive officer or the executive officer's permitted assign, the executive officer or the executive officer's permitted assign is not induced to participate in the trade by expectation of appointment, employment, continued appointment or continued employment of the executive officer with the issuer or a related entity of the issuer, and

      (c)    in the case of a consultant or the consultant's permitted assign, the consultant or the consultant's permitted assign is not induced to participate in the trade by expectation of engagement of the consultant to provide services or continued engagement of the consultant to provide services to the issuer or a related entity of the issuer.

**Employee, executive officer, director and consultant**

> **Refer to Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.24** **(1)** Subject to section 2.25 [*Unlisted reporting issuer exception*], the dealer registration requirement does not apply in respect of

> (a)   a trade by an issuer in a security of its own issue, or
>
> (b)   a trade by a control person of an issuer in a security of the issuer or in an option to acquire a security of the issuer,

with

> (c)   an employee, executive officer, director or consultant of the issuer,
>
> (d)   an employee, executive officer, director or consultant of a related entity of the issuer, or
>
> (e)   a permitted assign of a person referred to in paragraphs (c) or (d)

if participation in the trade is voluntary.

**(2)**   For the purposes of subsection (1), a person referred to in paragraph (c), (d) or (e) includes a trustee, custodian or administrator acting as agent for that person for the purpose of facilitating a trade.

**(3)**    The dealer registration requirement does not apply in respect of an act by a related entity of an issuer in furtherance of a trade referred to in subsection (1).

**(4)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Unlisted reporting issuer exception**

**2.25** **(1)** For the purpose of this section, "unlisted reporting issuer" means a reporting issuer in a jurisdiction of Canada that is not a listed issuer.

**(2)**   Subject to subsection (3), section 2.24 [*Employee, executive officer, director and consultant*] does not apply to a trade to an employee or consultant of the unlisted

reporting issuer who is an investor relations person of the issuer, an associated consultant of the issuer, an executive officer of the issuer, a director of the issuer, or a permitted assign of those persons if, after the trade,

    (a)    the number of securities, calculated on a fully diluted basis, reserved for issuance under options granted to

        (i)    related persons, exceeds 10% of the outstanding securities of the issuer, or

        (ii)    a related person, exceeds 5% of the outstanding securities of the issuer, or

    (b)    the number of securities, calculated on a fully diluted basis, issued within 12 months to

        (i)    related persons, exceeds 10% of the outstanding securities of the issuer, or

        (ii)    a related person and the associates of the related person, exceeds 5% of the outstanding securities of the issuer.

**(3)**  Subsection (2) does not apply to a trade if the unlisted reporting issuer

    (a)    obtains security holder approval, and

    (b)    before obtaining security holder approval, provides security holders with the following information in sufficient detail to permit security holders to form a reasoned judgment concerning the matter:

        (i)    the eligibility of employees, executive officers, directors, and consultants to be issued or granted securities as compensation or under a plan;

        (ii)    the maximum number of securities that may be issued, or in the case of options, the number of securities that may be issued on exercise of the options, as compensation or under a plan;

        (iii)    particulars relating to any financial assistance or support agreement to be provided to participants by the issuer or

any related entity of the issuer to facilitate the purchase of securities as compensation or under a plan, including whether the assistance or support is to be provided on a full-, part-, or non-recourse basis;

(iv)    in the case of options, the maximum term and the basis for the determination of the exercise price;

(v)    particulars relating to the options or other entitlements to be granted as compensation or under a plan, including transferability;

(vi)    the number of votes attaching to securities that, to the issuer's knowledge at the time the information is provided, will not be included for the purpose of determining whether security holder approval has been obtained.

**Trades among current or former employees, executive officers, directors, or consultants of non-reporting issuer**

> **Refer to Appendix E of NI 45-102 *Resale of Securities*. First trades are subject to a seasoning period on resale.**

**2.26    (1)**    Subject to subsection (2), the dealer registration requirement does not apply in respect of a trade in a security of an issuer by

(a)    a current or former employee, executive officer, director, or consultant of the issuer or related entity of the issuer, or

(b)    a permitted assign of a person referred to in paragraph (a),

to

(c)    an employee, executive officer, director, or consultant of the issuer or a related entity of the issuer, or

(d)    a permitted assign of the employee, executive officer, director, or consultant.

**(2)**    The exemption in subsection (1) is only available if

    (a)      participation in the trade is voluntary,

    (b)      the issuer of the security is not a reporting issuer in any jurisdiction of Canada, and

    (c)      the price of the security being traded is established by a generally applicable formula contained in a written agreement among some or all of the security holders of the issuer to which the transferee is or will become a party.

**(3)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

### Permitted transferees

> **Refer to Appendix E of NI 45-102 *Resale of Securities*. First trades are subject to a seasoning period on resale.**

**2.27**    **(1)**   The dealer registration requirement does not apply in respect of a trade in a security of an issuer acquired by a person described in section 2.24(1) [*Employee, executive officer, director and consultant*] under a plan of the issuer if the trade

    (a)      is between

              (i)      a person who is an employee, executive officer, director or consultant of the issuer or a related entity of the issuer, and

              (ii)      the permitted assign of that person,

        or

    (b)      is between permitted assigns of that person.

**(2)**   The dealer registration requirement does not apply in respect of a trade in a security of an issuer by a trustee, custodian or administrator acting on behalf, or for the benefit, of employees, executive officers, directors or consultants of the issuer or a related entity of the issuer, to

    (a)      an employee, executive officer, director or consultant of the issuer or a related entity of the issuer, or

- 38 -

(b)    a permitted assign of a person referred to in paragraph (a),

if the security was acquired from

(c)    an employee, executive officer, director or consultant of the issuer or a related entity of the issuer, or

(d)    the permitted assign of a person referred to in paragraph (c).

**(3)**  For the purposes of the exemption in subsections (1) and (2) (c) and (d), all references to employee, executive officer, director, or consultant include a former employee, executive officer, director, or consultant.

**(4)**  The prospectus requirement does not apply to a distribution in the circumstances referred to in subsection (1) or (2), if the security was acquired

(a)    by a person described in section 2.24(1) [*Employee, executive officer, director, and consultant*]under any exemption that makes the resale of the security subject to section 2.6 of NI 45-102, or

(b)    in Manitoba, and the Yukon, by a person described in section 2.24(1) [*Employee, executive officer, director, and consultant*].

**Resale - non-reporting issuer**

**2.28**    The dealer registration requirement does not apply in respect of the resale of a security that was acquired under this Division or by a person described in section 2.24(1) [*Employee, executive officer, director, and consultant*] if the conditions in section 2.14 of NI 45-102 are satisfied.

**Issuer bid**

**2.29**    The issuer bid requirements do not apply to the acquisition by an issuer of a security of its own issue that was acquired by a person described in section 2.24(1) [*Employee, executive officer, director, and consultant*] if

(a)    the purpose of the acquisition by the issuer is to

(i)    fulfill withholding tax obligations, or

    (ii)   provide payment of the exercise price of a stock option,

  (b)   the acquisition by the issuer is made in accordance with the terms of a plan that specifies how the value of the securities acquired by the issuer is determined,

  (c)   in the case of securities acquired as payment of the exercise price of a stock option, the date of exercise of the option is chosen by the option holder, and

  (d)   the aggregate number of securities acquired by the issuer within a 12 month period under this section does not exceed 5% of the outstanding securities of the class or series at the beginning of the period.

### Division 5: Miscellaneous Exemptions

**Isolated trade by issuer**

> **Refer to Appendix D of NI 45-102 *Resale of Securities*. First trades are subject to a restricted period.**

**2.30** **(1)** The dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue if the trade is an isolated trade and is not made

  (a)   in the course of continued and successive transactions of a like nature, and

  (b)   by a person whose usual business is trading in securities.

**(2)** The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Dividends and distributions**

> **Refer to Appendix E of NI 45-102 *Resale of Securities*. First trades are subject to a seasoning period on resale.**

**2.31** **(1)** The dealer registration requirement does not apply in respect of a trade by an issuer in a security of its own issue to a security holder of the issuer as a dividend or distribution out of earnings, surplus, capital or other sources.

**(2)**   The dealer registration requirement does not apply in respect of a trade by an issuer to a security holder of the issuer in a security of a reporting issuer as an in specie dividend or distribution out of earnings or surplus.

**(3)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1) or (2).

**Trade to lender by control person for collateral**

> **This provision will not be cited in any Appendix of NI 45-102** *Resale of Securities***. Trades by a lender, pledgee, mortgagee or other encumbrancer to realize on a debt are regulated by section 2.8 of NI 45-102.**

**2.32**   **(1)**   The dealer registration requirement does not apply in respect of a trade in a security of an issuer to a lender, pledgee, mortgagee or other encumbrancer from the holdings of a control person of the issuer for the purpose of giving collateral for a bona fide debt of the control person.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Acting as underwriter**

> **Refer to Appendix F of NI 45-102** *Resale of Securities***.  First trades are a distribution**.

**2.33**   **(1)**   The dealer registration requirement does not apply in respect of a trade in a security between a person and a purchaser acting as an underwriter or between or among persons acting as underwriters.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Guaranteed debt**

> **This provision will not be cited in any Appendix of NI 45-102** *Resale of Securities***. These securities will be free trading.**

**2.34**   **(1)**   In this section

- 41 -

(a)    "**Asian Development Bank**" means a bank established pursuant to a resolution adopted by the United Nations Economic and Social Commission for Asia and the Pacific in 1965;

(b)    "**Inter-American Development Bank**" means a bank established by the Agreement establishing the Inter-American Development Bank which became effective December 30, 1959, as amended from time to time, of which Canada is a member;

(c)    "**International Bank for Reconstruction and Development**" means the bank established by the Agreement for an International Bank for Reconstruction and Development approved by the *Bretton Woods and Related Agreements Act* (Canada);

(d)    "**International Finance Corporation**" means the corporation established by Articles of Agreement approved by the *Bretton Woods and Related Agreements Act* (Canada);

(e)    "**permitted supranational agency**" means the Asian Development Bank, the International Bank for Reconstruction and Development, the Inter-American Development Bank and the International Finance Corporation.

**(2)**  The dealer registration requirement does not apply in respect of a trade in a debt security

(a)    of or guaranteed by the Government of Canada or the government of a jurisdiction of Canada,

(b)    of or guaranteed by a government of a foreign jurisdiction if the debt security has an approved credit rating from an approved credit rating organization,

(c)    of or guaranteed by any municipal corporation in Canada, or secured by or payable out of rates or taxes levied under the law of a jurisdiction of Canada on property in the jurisdiction and to be collected by or through the municipality in which the property is situated,

(d)    of or guaranteed by a Canadian financial institution or a Schedule III bank, other than debt securities that are subordinate in right of payment to deposits held by the issuer or guarantor of those debt securities,

(e)     in Ontario, of any school board in Ontario or of a corporation established under section 248(1) of the *Education Act* (Ontario),

(f)     of the Comité de gestion de la taxe scolaire de l'île de Montréal, or

(g)     of or guaranteed by a permitted supranational agency if

        (i)     the debt securities are payable in the currency of Canada or the United States of America, and

        (ii)     with respect to those securities, all documents or other information required by the regulator, or in British Columbia, Ontario and in Québec, the securities regulatory authority, are filed with the regulator or securities regulatory authority, as the case may be.

**(3)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (2).

**Short-term debt**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*. These securities will be free trading.**

**2.35**  **(1)**  The dealer registration requirement does not apply in respect of a trade in a negotiable promissory note or commercial paper maturing not more than one year from the date of issue, if the note or commercial paper traded

(a)     is not convertible or exchangeable into or accompanied by a right to purchase another security other than a security described in this section, and

(b)     has an approved credit rating from an approved credit rating organization.

**(2)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

- 43 -

**Mortgages**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*. These securities will be free trading.**

**2.36**     **(1)**   In this section, "syndicated mortgage" means a mortgage in which 2 or more persons participate, directly or indirectly, as a lender in a debt obligation that is secured by a mortgage.

**(2)**   Subject to subsection (4), the dealer registration requirement does not apply in respect of a trade in a mortgage on real property in a jurisdiction by a person who is registered or licensed, or exempted from registration or licensing, under mortgage brokerage or mortgage dealer legislation of that jurisdiction.

**(3)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (2).

**(4)**   In British Columbia, Manitoba, Québec and Saskatchewan, subsections (2) and (3) do not apply to a syndicated mortgage.

**Personal Property Security Act**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*. These securities will be free trading.**

**2.37**     **(1)**  The dealer registration requirement does not apply in respect of a trade in a security evidencing indebtedness secured by or under a security agreement provided for under personal property security legislation of a jurisdiction providing for the acquisition of personal property if the security is not offered for sale to an individual.

**(2)**   The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Not for profit issuer**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*. These securities will be free trading.**

- 44 -

**2.38** **(1)** The dealer registration requirement does not apply in respect of a trade by an issuer that is organized exclusively for educational, benevolent, fraternal, charitable, religious or recreational purposes and not for profit in a security of its own issue if

  (a)     no part of the net earnings benefit any security holder of the issuer, and

  (b)     no commission or other remuneration is paid in connection with the sale of the security.

**(2)** Subsection (1) does not apply to a trade in British Columbia unless the issuer has delivered an information statement in the form prescribed by the regulator in British Columbia to the purchaser before the purchaser agrees in writing to purchase the security.

**(3)** The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).


**Variable insurance contract**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*. These securities will be free trading.**

**2.39** **(1)** In this section,

  (a)     "contract" "group insurance", "insurance company", "life insurance" and "policy" have the respective meanings assigned to them in the legislation for a jurisdiction referenced in Appendix A.

  (b)     "variable insurance contract" means a contract of life insurance under which the interest of the purchaser is valued for purposes of conversion or surrender by reference to the value of a proportionate interest in a specified portfolio of assets.

**(2)** The dealer registration requirement does not apply in respect of a trade in a variable insurance contract by an insurance company if the variable insurance contract is

  (a)     a contract of group insurance,

  (b)     a whole life insurance contract providing for the payment at maturity of an amount not less than 75% of the premium paid up to age 75 years for a benefit payable at maturity,

- 45 -

(c)    an arrangement for the investment of policy dividends and policy proceeds in a separate and distinct fund to which contributions are made only from policy dividends and policy proceeds, or

(d)    a variable life annuity.

**(3)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (2).

**RRSP/RRIF**

> **These securities will be cited in Appendix D and Appendix E of NI 45-102 *Resale of Securities*. The resale restriction is determined by the exemption under which the security was first acquired.**

**2.40**    **(1)**  The dealer registration requirement does not apply in respect of a trade in a security between

(a)    an individual or an associate of the individual, and

(b)    an RRSP or RRIF

(i)    established for or by the individual, or

(ii)   under which the individual is a beneficiary.

**(2)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Schedule III banks and cooperative associations - evidence of deposit**

> **This provision will not be cited in any Appendix of NI 45-102 *Resale of Securities*. These securities will be free trading.**

**2.41**    **(1)**  The dealer registration requirement does not apply in respect of a trade in an evidence of deposit issued by a Schedule III bank or an association governed by the *Cooperative Credit Associations Act* (Canada).

**(2)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Conversion, exchange, or exercise**

> **Subsection (1)(a) will be cited in Appendix D and Appendix E of NI 45-102** *Resale of Securities*. **Resale restriction is determined by the exemption under which the previously issued security was first acquired.**
>
> **Subsection (1)(b) will be cited in Appendix E of NI 45-102** *Resale of Securities*. **First trades are subject to a seasoning period on resale.**

**2.42    (1)**  The dealer registration requirement does not apply in respect of a trade by an issuer if

> (a)    the issuer trades a security of its own issue to a security holder of the issuer in accordance with the terms and conditions of a security previously issued by that issuer, or
>
> (b)    subject to subsection (2), the issuer trades a security of a reporting issuer held by it to a security holder of the issuer in accordance with the terms and conditions of a security previously issued by that issuer.

**(2)**  For a trade under subsection (1)(b),

> (a)    the issuer must give the regulator or, in Québec, the securities regulatory authority, prior written notice stating the date, amount, nature and conditions of the trade, and
>
> (b)    except in British Columbia, the regulator or, in Québec the securities regulatory authority, must not object in writing to the trade within 10 days of receipt of the notice referred to in paragraph (a) or, if the regulator or securities regulatory authority objects to the trade, the issuer must deliver to the regulator or securities regulatory authority information relating to the securities that is satisfactory to and accepted by the regulator or securities regulatory authority.

**(3)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

**Removal of exemptions – market intermediaries**

**2.43    (1)**  Subject to subsection (2), in Ontario and Newfoundland and Labrador, the exemptions from the dealer registration requirement under the following sections are not

available for a market intermediary except for a trade in a security with a registered dealer that is an affiliate of the market intermediary:

(a)    section 2.1 [*Rights offering*];

(b)    section 2.3 [*Accredited investor*];

(c)    section 2.4 [*Private issuer*];

(d)    section 2.7[*Founder, control person and family - Ontario*];

(e)    section 2.10 [*Minimum amount investment*];

(f)    section 2.11 [*Business combination and reorganization*];

(g)    section 2.12 [*Asset acquisition*];

(h)    section 2.14 [*Securities for debt*];

(i)    section 2.15 [*Issuer acquisition or redemption*];

(j)    section 2.16 [*Take-over bid and issuer bid*];

(k)    section 2.17 [*Offer to acquire to security holder outside local jurisdiction*];

(l)    section 2.19 [*Additional investment in investment funds*];

(m)    section 2.21 [*Private investment fund - loan and trust pools*];

(n)    section 2.30 [*Isolated trade by issuer*];

(o)    section 2.31 [*Dividends and distributions*];

(p)    section 2.33 [*Acting as underwriter*];

(q)    section 2.34 [*Guaranteed debt*];

(r)    section 2.35 [*Short-term debt*];

(s)    section 2.39 [*Variable insurance contract*];

(t)    section 2.42 [*Conversion, exchange, or* exercise].

- 48 -

**(2)**   Subsection (1) does not apply to a trade in a security by a lawyer or accountant if the trade is incidental to the principal business of that lawyer or accountant.

# PART 3: REGISTRATION ONLY EXEMPTIONS

**Registered dealer**

**3.1** The dealer registration requirement does not apply in respect of a trade by a person acting solely through an agent who is a registered dealer.

**Exchange contract**

**3.2 (1)** In Alberta, British Columbia, Québec and Saskatchewan, the dealer registration requirement does not apply in respect of the following trades in exchange contracts:

>    (a)    a trade by a person acting solely through a registered dealer;

>    (b)    subject to subsection (2) and (3), a trade resulting from an unsolicited order placed with an individual who is not a resident of and does not carry on business in the jurisdiction;

>    (c)    a trade that may occasionally be transacted by employees of a registered dealer if the employees

>>        (i)    do not usually trade in exchange contracts, and

>>        (ii)    have been designated by the regulator or, in Québec, the securities regulatory authority, as "non-trading" employees, either individually or as a class.

**(2)**   An individual referred to in subsection (1)(b) must not

>    (a)    advertise or engage in promotional activity that is directed to persons in the jurisdiction during the 6 months preceding the trade, and

>    (b)    pay any commission or finder's fee to any person in the jurisdiction in connection with the trade.

- 49 -

**(3)**   Subsection (1)(b) does not apply in Saskatchewan.

**Isolated trade**

**3.3** The dealer registration requirement does not apply in respect of a trade in a security by a person if the trade is an isolated trade and is not made

> (a)     by the issuer of the security,
>
> (b)     in the course of continued and successive transactions of a like nature, and
>
> (c)     by a person whose usual business is trading in securities.

**Estates, bankruptcies, and liquidations**

**3.4** The dealer registration requirement does not apply in respect of a trade by a person acting under the authority of

> (a)     a direction, order or judgment of a court,
>
> (b)     a will, or
>
> (c)     any law of a jurisdiction

in the course of enforcing legal obligations or administering the affairs of another person.

**Employees of registered dealer**

**3.5** The dealer registration requirement does not apply in respect of a trade by an employee of a registered dealer in a security if the employee does not usually trade in securities and has been designated by the regulator or, in Québec, the securities regulatory authority, as a "non-trading" employee, either individually or as a class.

**Small security holder selling and purchase arrangements**

**3.6 (1)**   For the purposes of this section

> **"exchange"** means
>
> > (a)     the Toronto Stock Exchange,

- 50 -

    (b)    the TSX Venture Exchange Inc., or

    (c)    an exchange that

        (i)    has a policy that is substantially similar to the policy of the Toronto Stock Exchange, and

        (ii)    is designated by the securities regulatory authority for the purpose of this section;

"**policy**" means

    (a)    in the case of the Toronto Stock Exchange, *Policy Statement on Small Shareholder Selling and Purchase Arrangements* as amended from time to time,

    (b)    in the case of the TSX Venture Exchange Inc., *Policy 5.7 Small Shareholder Selling and Purchase Arrangements* as amended from time to time, or

    (c)    in the case of an exchange referred to in paragraph (c) of the definition of "exchange", the rule, policy or other similar instrument of the exchange on small shareholder selling and purchase arrangements and every successor to that rule, policy or other similar instrument published by that exchange as amended from time to time.

**(2)**  The dealer registration requirement does not apply in respect of a trade by an issuer or its agent, in securities of the issuer that are listed on an exchange if

    (a)    the trade is an act in furtherance of participation by the holders of the securities in an arrangement that is in accordance with the policy of that exchange,

    (b)    the issuer and its agent do not provide advice to a security holder about the security holder's participation in the arrangement referred to in paragraph (a), other than a description of the arrangement's operation, procedures for participation in the arrangement, or both,

    (c)    the trade is made in accordance with the policy of that exchange, without resort to an exemption from, or variation of, the significant subject matter of the policy, and

(d)      at the time of the trade after giving effect to a purchase under the arrangement, the market value of the maximum number of securities that a security holder is permitted to hold in order to be eligible to participate in the arrangement is not more than $25 000.

**(3)**   For the purposes of subsection (2)(c), an exemption from, or variation of, the maximum number of securities that a security holder is permitted to hold under a policy in order to be eligible to participate in the arrangement provided for in the policy is not an exemption from, or variation of, the significant subject matter of the policy.


**Adviser**

**3.7** The adviser registration requirement does not apply to

(a)      the following persons if performance of  services as an adviser are incidental to their principal business or occupation:

(i)      a Canadian financial institution and a Schedule III bank;

(ii)     the Business Development Bank of Canada continued under the *Business Development Bank of Canada Act* (Canada);

(iii)    a société d'entraide économique or the Fédération des sociétés d'entraide économique du Québec governed by the Act respecting the sociétés d'entraide économique (Québec);

(iv)     a lawyer, accountant, engineer or teacher, or, in Québec, a notary, if  that individual

A)      does not recommend securities of an issuer in which that individual has an interest, and

B)      does not receive remuneration for the performance of services as an adviser separate from remuneration received by that individual for practicing in their professions;

   (v)  a registered dealer or any partner, officer or employee of a registered dealer;

 or

  (b)  a publisher or a writer for a newspaper, news magazine or business or financial journal or periodical, however delivered, that is of general and regular paid circulation, and only available to subscribers for value, or purchasers of it, if the publisher or writer

   (i)  gives advice only through the written publication,

   (ii)  has no interest either directly or indirectly in any of the securities  on which that individual gives advice, and

   (iii)  receives no commission or other consideration for giving the advice other than for acting in that person's capacity  as a publisher or writer.

**Investment dealer acting as portfolio manager**

**3.8 (1)** Subject to subsection (2) and, in Ontario, subsections (2) and (3), the adviser registration requirement does not apply to a registered investment dealer who manages the investment portfolios of its clients through discretionary authority granted by the clients if

  (a)  the investment dealer follows the rules, policies or other similar instruments made by the Investment Dealers Association of Canada for portfolio managers, and

  (b)  in British Columbia, those rules, policies or other similar instruments

   (i)  have been filed with the securities regulatory authority before they take effect, and

   (ii)  have not been objected to in writing by the securities regulatory authority within 30 days after filing.

**(2)** Any partner, director, officer or employee of a registered investment dealer referred to in subsection (1) who manages an investment portfolio for the registered investment

dealer must be registered under the securities legislation of the jurisdiction to trade in securities.

**(3)**   In Ontario, the registered investment dealer must provide the securities regulatory authority with

> (a)     the names of any partner, director, officer or employee of the investment dealer designated and approved by the Investment Dealers Association of Canada pursuant to the rules, policies or other similar instruments referred to in subsection (1) to make investment decisions on behalf of or to offer advice to clients, and
>
> (b)     any changes made from time to time in the designation and approval of any partner, director, officer or employee referred to in paragraph (a).

**Removal of exemptions – market intermediaries**

**3.9 (1)**   Subject to subsection (2), in Ontario and Newfoundland and Labrador, the exemptions from the dealer registration requirements under the following sections are not available for a market intermediary except for a trade in a security with a registered dealer that is an affiliate of the market intermediary:

> (a)     section 3.1 [*Registered dealer*];
>
> (b)     section 3.3 [*Isolated trade*].

**(2)**   Subsection (1) does not apply in respect of a trade in a security by a lawyer or accountant if the trade is incidental to the principal business of that lawyer or accountant.

## PART 4: CONTROL BLOCK DISTRIBUTIONS

**Control block distributions**

**4.1 (1)**   In this Part

> "**control block distribution**" means a trade to which the provisions of securities legislation listed in Appendix B apply;

- 54 -

"**NI 62-103**" means National Instrument 62-103 *The Early Warning System and Related Take-over Bid and Insider Reporting Issues*.

**(2)**  Terms defined or interpreted in NI 62-103 and used in this Part have the same meaning as is assigned to them in that Instrument.

**(3)**  The prospectus requirement does not apply to a control block distribution by an eligible institutional investor of a reporting issuer's securities if

  (a)  the eligible institutional investor

    (i)  has filed the reports required under the early warning requirements or files the reports required under Part 4 of NI 62-103,

    (ii)  does not have knowledge of any material fact or material change with respect to the reporting issuer that has not been generally disclosed,

    (iii)  does not receive in the ordinary course of its business and investment activities knowledge of any material fact or material change with respect to the reporting issuer that has not been generally disclosed, and

    (iv)  either alone or together with any joint actors, does not possess effective control of the reporting issuer,

  (b)  there are no directors or officers of the reporting issuer who were, or could reasonably be seen to have been, selected, nominated or designated by the eligible institutional investor or any joint actor,

  (c)  the control block distribution is made in the ordinary course of business or investment activity of the eligible institutional investor,

  (d)  securities legislation would not require the securities to be held for a specified period of time if the trade was not a control block distribution,

  (e)  no unusual effort is made to prepare the market or to create a demand for the securities, and

- 55 -

    (f)      no extraordinary commission or consideration is paid in respect of the control block distribution.

**(4)**  An eligible institutional investor that makes a distribution in reliance on subsection (3) must file a letter within 10 days after the distribution that describes the date and size of the distribution, the market on which it was made and the price at which the securities being distributed were sold.

### Trades by a control person after a take-over bid

**4.2 (1)**  Subject to subsection (2), the prospectus requirement does not apply to a trade in a security from the holdings of a control person acquired under a take-over bid for which a take-over bid circular was issued and filed if

    (a)      the issuer whose securities are being acquired under the take-over bid has been a reporting issuer for at least 4 months at the date of the take-over bid,

    (b)      the intention to make the trade is disclosed in the take-over bid circular issued in respect of the take-over bid,

    (c)      the trade is made within the period beginning on the date of the expiry of the bid and ending 20 days after that date,

    (d)      a notice of intention to distribute securities in Form 45-102F1 *Notice of Intention to Distribute Securities under Section 2.8 of NI 45-102 Resale of Securities* under NI 45-102 is filed before the trade,

    (e)      an insider report of the trade in Form 55-102F2 *Insider Report* or Form 55-102F6 *Insider Report,* as applicable, under National Instrument 55-102 *System for Electronic Disclosure by Insiders* (*SEDI*) is filed within 3 days after the completion of the trade,

    (f)      no unusual effort is made to prepare the market or to create a demand for the security, and

    (g)      no extraordinary commission or consideration is paid in respect of the trade.

- 56 -

**(2)**  A control person referred to in subsection (1) is not required to comply with subsection (1) (b) if

> (a)  another person makes a competing take-over bid for securities of the issuer for which the take-over bid circular is issued, and

> (b)  the control person sells those securities to that other person for a consideration that is not greater than the consideration offered by that other person under its take-over bid.

## PART 5: OFFERINGS BY TSX VENTURE EXCHANGE OFFERING DOCUMENT

**Application and interpretation**

**5.1 (1)**  This Part does not apply in Ontario.

**(2)**  In this Part

> **"exchange policy"** means Exchange Policy 4.6 - *Public Offering by Short Form Offering Document* and Exchange Form 4H - *Short Form Offering Document,* of the TSX Venture Exchange as amended from time to time;

> **"gross proceeds"** means the gross proceeds that are required to be paid to the issuer for listed securities distributed under a TSX Venture exchange offering document;

> **"listed security"** means a security of a class listed on the TSX Venture Exchange;

> **"NI 43-101"** means National Instrument 43-101 *Standards of Disclosure for Mineral Projects*;

> **"NI 51-101"** means National Instrument 51-101 *Standards of Disclosure for Oil and Gas Activities;*

**"prior exchange offering"** means a distribution of securities by an issuer under a TSX Venture exchange offering document that was completed during the 12-month period immediately preceding the date of the TSX Venture exchange offering document;

**"subsequently triggered report"** means a material change report that must be filed no later than 10 days after a material change under securities legislation as a result of a material change that occurs after the date the TSX Venture exchange offering document is certified but before a purchaser enters into an agreement of purchase and sale;

**"TSX Venture Exchange"** means the TSX Venture Exchange Inc.;

**"TSX Venture exchange offering document"** means an offering document that complies with the exchange policy;

**"warrant"** means a warrant of an issuer distributed under a TSX Venture exchange offering document that entitles the holder to acquire a listed security or a portion of a listed security of the same issuer.

**TSX Venture Exchange offering**

> **Refer to Appendix D of NI 45-102** *Resale of Securities*. **These securities will be free trading unless**
>
> **(i) the purchaser who acquires the security was an insider, a promoter of the issuer, an underwriter of the issuer, or a member of the underwriter's professional group at the time the security was acquired, or**
>
> **(ii) any other purchaser who purchases securities in excess of $40 000.**
>
> **The first trade by purchasers under (i) and (ii) are subject to a restricted period.**

**5.2** The prospectus requirement does not apply to a distribution by an issuer in a security of its own issue if

- 58 -

(a)    the issuer has filed an AIF in a jurisdiction of Canada,

(b)    the issuer is a SEDAR filer,

(c)    the issuer is a reporting issuer in a jurisdiction of Canada and has filed with the securities regulatory authority of that jurisdiction

        (i)    a TSX Venture exchange offering document,

        (ii)    all documents required to be filed under the securities legislation of that jurisdiction, and

        (iii)    any subsequently triggered report,

(d)    the distribution is of listed securities or units consisting of listed securities and warrants,

(e)    the issuer has filed with the TSX Venture Exchange a TSX Venture exchange offering document in respect of the distribution, that

        (i)    incorporates by reference the following documents of the issuer filed with the securities regulatory authority in any jurisdiction of Canada:

            A)    the AIF,

            B)    the most recent annual financial statements and, for financial years starting on or after January 1, 2004, the MD&A relating to those financial statements,

            C)    all unaudited interim financial statements and, for financial years starting on or after January 1, 2004, the MD&A relating to those financial statements, filed after the date of the AIF but before or on the date of the TSX Venture exchange offering document,

            D)    all material change reports filed after the date of the AIF but before or on the date of

the TSX Venture exchange offering
document, and

E)  all documents required under NI 43-101 and
NI 51-101 filed on or after the date of the
AIF but before or on the date of the TSX
Venture exchange offering document,

(ii)  deems any subsequently triggered report required to
be delivered to a purchaser under this Part to be
incorporated by reference,

(iii)  grants to purchasers contractual rights of action in
the event of a misrepresentation, as required by the
exchange policy,

(iv)  grants to purchasers contractual rights of
withdrawal, as required by the exchange policy, and

(v)  contains all the certificates required by the
exchange policy,

(f)  the distribution is conducted in accordance with the exchange policy,

(g)  the issuer or the underwriter delivers the TSX Venture exchange offering
document and any subsequently triggered report to each purchaser

(i)  before the issuer or the underwriter enters into the
written confirmation of purchase and sale resulting
from an order or subscription for securities being
distributed under the TSX Venture exchange
offering document, or

(ii)  not later than midnight on the 2nd business day
after the agreement of purchase and sale is entered
into,

(h)  the listed securities issued under the TSX Venture exchange offering
document, when added to the listed securities of the same class issued
under prior exchange offerings do not exceed,

    (i)    the number of securities of the same class outstanding immediately before the issuer distributes securities of the same class under the TSX Venture exchange offering document, or

    (ii)    the number of securities of the same class outstanding immediately before a prior exchange offering,

(i)    the gross proceeds under the TSX Venture exchange offering document, when added to the gross proceeds from prior exchange offerings do not exceed $2 million,

(j)    no purchaser acquires more than 20% of the securities distributed under the TSX Venture exchange offering document, and

(k)    no more than 50% of the securities distributed under the TSX Venture exchange offering document are subject to section 2.5 of NI 45-102.

**Underwriter obligations**

**5.3** An underwriter that qualifies as a "sponsor" under TSX Venture Exchange Policy 2.2 - *Sponsorship and Sponsorship Requirements* as amended from time to time must sign the TSX Venture exchange offering document and comply with TSX Venture Exchange Appendix 4A - *Due Diligence Report* in connection with the distribution.

## PART 6: REPORTING REQUIREMENTS

**Report of exempt distribution**

**6.1** Subject to section 6.2 [*When report not required*], if an issuer distributes a security of its own issue, the issuer must file a report in the local jurisdiction in which the distribution takes place on or before the 10th day after the distribution under the following exemptions:

(a)    section 2.3(2) [*Accredited investor*];

(b)    section 2.5(2) [*Family, friends and business associates*];

(c)     section 2.9 (3) and (4) [*Offering memorandum for Alberta, B.C., Manitoba, New Brunswick, Nova Scotia, Newfoundland and Labrador, Northwest Territories, Nunavut, Prince Edward Island, Québec, and Saskatchewan*];

(d)     section 2.10 (2) [*Minimum amount investment*];

(e)     section 2.12 (2) [*Asset acquisition*];

(f)     section 2.13(2) [*Petroleum, natural gas and mining properties*];

(g)     section 2.14 (2) [*Securities for debt*];

(h)     section 2.19 (2) [*Additional investment in investment funds*];

(i)     section 2.30(2) [*Isolated trade by issuer*];

(j)     section 5.2 [*TSX Venture Exchange offering*].


## When report not required

**6.2** (1)  An issuer is not required to file a report under section 6.1(a) [*Report of exempt distribution*] for a distribution of a debt security of its own issue or, concurrently with the distribution of the debt security, an equity security of its own issue, to a Canadian financial institution or a Schedule III bank.

**(2)**   An investment fund is not required to file a report under section 6.1 [*Report of exempt distribution*] for a distribution under sections 2.3 (2) [A*ccredited investor*], 2.10 (2) [M*inimum amount*] and 2.19 (2) [A*dditional investment in investment funds*] if the investment fund files the report not later than 30 days after the financial year-end of the investment fund.


## Required form of report of exempt distribution

**6.3 (1)**  Except in British Columbia, the required form of report under section 6.1 [*Report of exempt distribution*] is Form 45-106F1.

**(2)**   Except in Manitoba, an issuer that makes a distribution under an exemption from a prospectus requirement not provided for in this Instrument is exempt from the requirements in securities legislation to file a report of exempt trade or exempt

distribution in the required form, if the issuer files a report of exempt distribution in accordance with Form 45-106F1.

### Required form of offering memorandum

**6.4 (1)**  The required form of offering memorandum under section 2.9 [*Offering memorandum*] is Form 45-106F2.

**(2)**  Despite subsection (1), a qualifying issuer may prepare an offering memorandum in accordance with Form 45-106F3.

**(3)**  Subsections (1) and (2) do not apply in British Columbia.

### Required form of risk acknowledgement

**6.5 (1)**  Except in British Columbia, the required form of risk acknowledgement under section 2.9(14) [*Offering memorandum*] is Form 45-106F4.

**(2)**  In Saskatchewan, the required form of risk acknowledgement under section 2.6(1) [*Family, friends and business associates*] is Form 45-106F5.

### Required forms in British Columbia

**6.6** In British Columbia, the required forms are the forms specified by the regulator under section 182 of the *Securities Act* (British Columbia).

## PART 7: EXEMPTION

### Exemption

**7.1 (1)**  Subject to subsection (2), the regulator or the securities regulatory authority may grant an exemption to this Instrument, in whole or in part, subject to such conditions or restrictions as may be imposed in the exemption.

**(2)**  In Ontario, only the regulator may grant an exemption and only from Part 6, in whole or in part, subject to such conditions or restrictions as may be imposed in the exemption.

- 63 -

**(3)**  In Québec, the exemption in this section is granted pursuant to section 263 of the *Securities Act* (R.S.Q., c.V-V-1.1).

## PART 8: TRANSITIONAL, COMING INTO FORCE

**Additional investment - investment funds**

**8.1 (1)**  The dealer registration requirement does not apply in respect of a trade by an investment fund in a security of its own issue to a purchaser that initially acquired the security as principal before this Instrument came into force if

      (a)    the security was initially acquired under any of the following provisions:

            (i)    in Alberta, sections 86(e) and 131(1)(d) of the *Securities Act* (Alberta) as they existed prior to their repeal by sections 9(a) and 13 of the *Securities Amendment Act* (Alberta), 2003 SA c.32 and sections 66.2 and 122.2 of the *Alberta Securities Commission Rules (General)*;

            (ii)    in British Columbia, sections 45(2) (*5*) and (*22*), and 74(2) (*4*) and (*19*) of the *Securities Act* (British Columbia),

            (iii)    in Manitoba, sections 19(3) and 58(1)(a) of the *Securities Act* (Manitoba) and section 90 of the *Securities Regulation* MR 491/88R;

            (iv)    in New Brunswick, section 2.8 of Local Rule 45-501 *Prospectus and Registration Exemptions*;

            (v)    in Newfoundland and Labrador, sections 36(1)(e) and 73(1)(d) of the *Securities Act* (Newfoundland and Labrador);

            (vi)    in Nova Scotia, sections 41(1)(e) and 77(1)(d) of the *Securities Act* (Nova Scotia);

            (vii)    in Northwest Territories, section 3(c) and (z) of Blanket Order No. 1;

- 64 -

       (viii)     in Nunavut, section 3(c) and (z) of Blanket Order No. 1;

       (ix)     in Ontario, sections 35(1)5 and 72(1)(d) of the *Securities Act* (Ontario) and section 2.12 of Ontario Securities Commission Rule 45-501 *Exempt Distributions*;

       (x)     in Prince Edward Island, section 2(3)(d) of the *Securities Act* (Prince Edward Island) and Prince Edward Island Local Rule 45-512 -Exempt Distributions - Exemption for Purchase of Mutual Fund Securities;

       (xi)     in Québec, section 51 and 155.1(2) of the *Securities Act* (Québec);

       (xii)     in Saskatchewan, sections 39(1)(e) and 81(1)(d) of the *The Securities Act, 1988* (Saskatchewan).

   (b)     the trade is for a security of the same class or series as the initial trade, and

   (c)     the security holder, as at the date of the trade, holds securities of the investment fund that have

       (i)     an acquisition cost of not less than the minimum amount prescribed by securities legislation referred to in paragraph (a) under which the initial trade was conducted, or

       (ii)     a net asset value of not less than the minimum amount prescribed by securities legislation referred to in paragraph (a) under which the initial trade was conducted.

**(2)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (1).

### Definition of "accredited investor" - investment fund

**8.2** An investment fund that distributed its securities to persons pursuant to any of the following provisions is an investment fund under paragraph (n)(ii) of the definition of "accredited investor":

- 65 -

(a)     in Alberta, sections 86(e) and 131(1)(d) of the *Securities Act* (Alberta) as they existed prior to their repeal by sections 9(a) and 13 of the *Securities Amendment Act* (Alberta), 2003 SA c.32 and sections 66.2 and 122.2 of the *Alberta Securities Commission Rules (General)*;

(b)     in British Columbia, sections 45(2) (*5*) and (*22*), and 74(2) (*4*) and (*19*) of the *Securities Act* (British Columbia),

(c)     in Manitoba, sections 19(3) and 58(1)(a) of the *Securities Act* (Manitoba) and section 90 of the *Securities Regulation* MR 491/88R;

(d)     in New Brunswick, section 2.8 of Local Rule 45-501 *Prospectus and Registration Exemptions*;

(e)     in Newfoundland and Labrador, sections 36(1)(e) and 73(1)(d) of the *Securities Act* (Newfoundland and Labrador);

(f)     in Nova Scotia, sections 41(1)(e) and 77(1)(d) of the *Securities Act* (Nova Scotia);

(g)     in Northwest Territories, section 3(c) and (z) of Blanket Order No. 2;

(h)     in Nunavut, section 3(c) and (z) of Blanket Order No. 3;

(i)     in Ontario, sections 35(1)5 and 72(1)(d) of the *Securities Act* (Ontario) and section 2.12 of Ontario Securities Commission Rule 45-501 *Exempt Distributions*;

(j)     in Prince Edward Island, section 2(3)(d) of the *Securities Act* (Prince Edward Island) and Prince Edward Island Local Rule 45-512 -*Exempt Distributions - Exemption for Purchase of Mutual Fund Securities*;

(k)     in Québec, section 51 and 155.1(2) of the *Securities Act* (Québec);

(l)     in Saskatchewan, sections 39(1)(e) and 81(1)(d) of the *The Securities Act, 1988* (Saskatchewan).

## Transition - MI 45-103/MI 45-105/ OSC Rule 45-501

**8.3 (1)**  In this section,

"MI 45-103" means Multilateral Instrument 45-103 *Capital Raising Exemptions* that came into force on June 6, 2003;

"MI 45-105" means Multilateral Instrument 45-105 *Trades to Employees, Senior Officers, Directors and Consultants* that came into force on August 15, 2003;

"2004 OSC Rule 45-501" means the Ontario Securities Commission Rule 45-501 *Exempt Distributions* that came into force on January 12, 2004.

**(2)**   The dealer registration requirement or the prospectus requirement does not apply in respect of a trade in a security if the trade complies with and is completed in accordance with the requirements of MI 45-103, MI 45-105, or 2004 OSC Rule 45-501 by November 30, 2005.

**Transition - Closely-held issuer**

**8.4 (1)**   In this section,

"2001 OSC Rule 45-501" means the Ontario Securities Commission Rule 45-501 *Exempt Distributions* that came into force on November 30, 2001;

"2004 OSC Rule 45-501" means the Ontario Securities Commission Rule 45-501 *Exempt Distributions* that came into force on January 12, 2004;

"closely-held issuer" has the same meaning as in 2004 OSC Rule 45-501;

**(2)**   The dealer registration requirement does not apply in respect of a trade in a security that was previously distributed by a closely-held issuer under section 2.1 of 2001 OSC Rule 45-501 or under section 2.1 of 2004 OSC Rule 45-501 to a person who purchases the security as principal and is

(a)     a director, officer, employee, founder or control person of the issuer,

(b)     a spouse, parent, grandparent, brother, sister or child of a director, executive officer, founder or control person of the  issuer,

(c)     a parent, grandparent, brother, sister or child of the spouse of a director, executive officer, founder or control person of the  issuer,

(d)     a close personal friend of a director, executive officer, founder or control person of the issuer,

- 67 -

(e)    a close business associate of a director, executive officer, founder or control person of the issuer,

(f)    a spouse, parent, grandparent, brother, sister or child of the selling security holder or of the selling security holder's spouse,

(g)    a security holder of the  issuer,

(h)    an accredited investor,

(i)    a person of which a majority of the voting securities are beneficially owned by, or a majority of the directors are, persons described in paragraphs (a) to (h),

(j)    a trust or estate of which all of the beneficiaries or a majority of the trustees or executors are persons described in paragraphs (a) to (h), or

(k)    a person that is not the public.

**(3)**  The prospectus requirement does not apply to a distribution of a security in the circumstances referred to in subsection (2).

**Coming into force**

**8.5** This Instrument comes into force on September 14, 2005.

# APPENDIX A

## To

## National Instrument 45-106 *Prospectus and Registration Exemptions*

## Variable insurance contract exemption
## (section 2.39)

| JURISDICTION | LEGISLATION REFERENCE |
|---|---|
| **ALBERTA** | "contract of insurance", "group insurance", "life insurance", and "policy" have the respective meanings assigned to them under the *Insurance Act* (Alberta) and the regulations under that Act.<br><br>"insurance company" means an insurer as defined in the *Insurance Act* (Alberta) that is licensed under that Act. |
| **BRITISH COLUMBIA** | "contract", "group insurance", "life insurance", and "policy" have the respective meanings assigned to them under the *Insurance Act* (British Columbia) and the regulations under that Act.<br><br>"insurance company" means an insurance company, or an extraprovincial insurance corporation, authorized to carry on insurance business under the *Financial Institutions Act* (British Columbia). |
| **MANITOBA** | "contract of insurance", "group insurance", "life insurance", and "policy" have the respective meanings assigned to them under the *Insurance Act* (Manitoba) and the regulations under that Act.<br><br>"insurance company" means an insurer as defined in the *Insurance Act* (Manitoba) that is licensed under that Act. |

- 2 -

NEW BRUNSWICK        "contract of insurance", "group insurance", "life insurance", and  "policy" have the respective meanings assigned to them under the *Insurance Act* (New Brunswick) and the regulations under that Act.

"insurance company" means an insurer as defined in the *Insurance Act* (New Brunswick) that is licensed under that Act.

NOVA SCOTIA        "contract", "group insurance", "life insurance", and "policy" have the respective meanings assigned to them under the *Insurance Act* (Nova Scotia) and the regulations under that Act.

"insurance company" has the same meaning as in section 3(1)(a) of the *General Securities Rules* (Nova Scotia).

ONTARIO        "contract", "group insurance", "life insurance" and "policy" have the respective meanings assigned to them in section 1 and 171 the *Insurance Act* (Ontario).

"insurance company" has the same meaning as in section 1(2) of the *General Regulation* (Ont. Reg. 1015).

QUEBEC        "contract of insurance", "group insurance", "life insurance", and "policy" have the respective meanings assigned to them under the Civil Code of Québec.

"insurance company" means an insurer holding a license under the Act respecting insurance (R.S.Q., c. A-32).

- 3 -

| | |
|---|---|
| PRINCE EDWARD ISLAND | "contract", "group insurance", "insurer", "life insurance and "policy" have the respective meanings assigned to them in sections 1 and 174 of the *Insurance Act* (Prince Edward Island). |
| | "insurance company" means an insurance company licensed under the *Insurance Act* (R.S.P.E.I. 1988, Cap. I-4), |
| SASKATCHEWAN | "contract", "life insurance" and "policy" have the respective meanings assigned to them in section 2 of *The Saskatchewan Insurance Act* (Saskatchewan). |
| | "group insurance" has the respective meaning assigned to it in section 133 of *The Saskatchewan Insurance Act* (Saskatchewan). |
| | "insurance company" means an issuer licensed under *The Saskatchewan Insurance Act* (Saskatchewan). |

# APPENDIX B

## To

**National Instrument 45-106 *Prospectus and Registration Exemptions***

**Control Block Distributions**
**(PART 4)**

| JURISDICTION | SECURITIES LEGISLATION REFERENCE |
|---|---|
| ALBERTA | Section 1(p)(iii) of the *Securities Act* (Alberta) |
| BRITISH COLUMBIA | Paragraph (c) of the definition of "distribution" contained in section 1 of the *Securities Act* (British Columbia) |
| MANITOBA | Section 1(b) of the definition of "primary distribution to the public" contained in subsection 1(1) of the *Securities Act* (Manitoba) |
| NEW BRUNSWICK | Paragraph (c) of the definition of "distribution" contained in section 1(1) of the *Securities Act* (New Brunswick) |
| NEWFOUNDLAND AND LABRADOR | Section 2(1)(1)(iii) of the *Securities Act* (Newfoundland and Labrador) |
| NOVA SCOTIA | Section 2(1)(1)(iii) of the *Securities Act* (Nova Scotia) |
| ONTARIO | Paragraph (c) of the definition of "distribution" contained in subsection 1(1) of the *Securities Act* (Ontario) |
| PRINCE EDWARD ISLAND | Section 1(f)(iii) of the *Securities Act* (Prince Edward Island) |
| QUEBEC | Paragraph 9 of the definition of "distribution" contained section 5 of the *Securities Act* (Québec) |
| SASKATCHEWAN | Section 2(1)(r)(iii) of *The Securities Act, 1988* (Saskatchewan) |

#1661974 v2

**Headnote**

Mutual Reliance Review System for Exemptive Relief Applications – relief from registration and prospectus requirements in connection with certain employee and director incentive plans; relief from issuer bid requirements;

**Applicable Alberta Statutory Provisions**

Securities Act, R.S.A., 2000, c.S-4, sections 75, 110 and 144(1)

**Citation:** Canada Safeway Limited et al, 2005 ABASC 178          **Date:** 20050304

In the Matter of
the Securities Legislation of
Alberta, British Columbia, Saskatchewan, Manitoba and Ontario

and

In the Matter of
the Mutual Reliance Review System for Exemptive Relief Applications

and

In the Matter of Canada Safeway Limited and Safeway Inc.

**<u>MRRS Decision Document</u>**

**Background**

1.    The local securities regulatory authority or regulator (the Decision Maker) in each of Alberta, British Columbia, Saskatchewan, Manitoba and Ontario (the Jurisdictions) has received an application from Canada Safeway Limited (Canada Safeway) and Safeway Inc.(Safeway) (collectively the Filer) for a decision under the securities legislation of the Jurisdictions (the Legislation) that (i) the Dealer Registration Requirements and the Prospectus Requirement shall not apply to certain trades in securities of Canada Safeway and Safeway pursuant to stock option and share incentive plans of Canada Safeway and Safeway; (ii) the Dealer Registration Requirements, and in Manitoba the Prospectus Requirements, will not apply to certain first trades of securities acquired under the said stock option and share incentive plans of Canada Safeway and Safeway provided the conditions in section 2.14 of Multilateral Instrument 45-102 *Resale of Securities* (MI 45-102), are satisfied; and (iii) the requirements pertaining to Issuer Bids (Issuer Bid Requirements) shall not apply to certain acquisitions by Canada Safeway or Safeway of securities of Canada Safeway or Safeway pursuant to the said plans.

2.    Under the Mutual Reliance Review System for Exemptive Relief Applications

2.1    the Alberta Securities Commission is the principal regulator for this application; and



2.2     this MRRS decision document evidence the decisions of each Decision Maker.

**Interpretation**

3.     Defined terms contained in National Instrument 14-101 *Definitions* have the same meaning in this decision unless they are defined in this decision.

**Representations**

4.     The Filer has represented to the Decision Makers that:

4.1     Canada Safeway is a corporation governed by the Business Corporation Act (Alberta) and is headquartered in Calgary, Alberta. Canada Safeway is an indirect fully owned subsidiary of Safeway.

4.2     The authorized capital of Canada Safeway consists of an unlimited number of common shares with no par value. As of November 24, 2003, there were 280,000 common shares issued and outstanding.

4.3     Safeway is a corporation governed by the laws of the State of Delaware whose principal executive offices are located in Pleasanton, California.

4.4     The authorized capital of Safeway consists of 1,500,000,000 shares of common stock, par value $0.01 per share (the Safeway Shares), and 25,000,000 shares of preferred stock, par value of $0.01 per share. As of March 25, 2004, there were issued and outstanding 445,097,748 Safeway Shares and no shares of preferred stock. As of January 3, 2004 there were 35,802,523 Safeway Shares reserved for issuance in connection with the exercise of outstanding options.

4.5     The Safeway Shares are listed and posted for trading on The New York Stock Exchange (the NYSE), trading under the symbol "SWY".

4.6     Safeway is registered with the Securities and Exchange Commission in the United States under the Securities Exchange Act of 1934, as amended (the Exchange Act), and is not exempt from the reporting requirements of the Exchange Act pursuant to Rule 12g 3-2.

4.7     Safeway had previously adopted a Stock Option and Incentive Plan for Key Employees, the Stock Option Plan for Consultants of Safeway Inc. and the Safeway Inc. Outside Director Equity Purchase Plan for the benefit of its eligible employees, consultants and outside directors, respectively (collectively, the Prior Plans). The Prior Plans have been amended from time to time and were amended, restated and consolidated in order to constitute an equity participation plan entitled "The 1999 Amended and Restated Equity Participation Plan of Safeway Inc." (as in effect and as such plan may be amended, supplemented, superceded, re-enacted or restated from time to time, the "Safeway Equity Participation Plan"). The Safeway Equity Participation Plan was made effective upon approval of the stockholders of Safeway.

- 3 -

4.8    The purposes of the Safeway Equity Participation Plan are: (a) to provide additional incentive for eligible independent directors, employees and consultants to further the growth, development and financial success of Safeway by personally benefiting through the ownership of Safeway stock and/or rights which recognize such growth, development and financial success; and (b) to enable Safeway to obtain or retain the services of eligible independent directors, employees and consultants considered essential to the long range success of Safeway by offering them an opportunity to own stock in Safeway and/or rights which reflect the growth, development and financial success of Safeway.

4.9    "Option" means an option to acquire securities of Safeway (including Safeway Shares) granted by Safeway, or such other securities issued in substitution thereof, pursuant to the provisions of the Safeway Equity Participation Plan or the Prior Plans.  Options can be granted under the Safeway Equity Participation Plan to employees, consultants and to independent directors of Safeway or of any corporation that is its subsidiary (collectively referred to herein as the Participants).

4.10    To be granted Options under the Safeway Equity Participation Plan, consultants must provide bona fide services to Safeway Inc.

4.11    Canada Safeway previously adopted a Share Appreciation Rights Plan (as in effect from time to time, the "Original Plan") under which Canada Safeway could, from time to time, upon and subject to the terms and conditions in the Original Plan, grant "Stock Appreciation Rights" (as defined herein) to certain officers and employees of Canada Safeway and its subsidiary corporations who were also granted "Options" under the Safeway Equity Participation Plan (or the Prior Plans).  The Original Plan was amended and restated in its entirety in 2001 and, as so amended and restated, is entitled "The 2001 Amended and Restated Share Appreciation Rights Plan of Canada Safeway Limited" (as in effect and as such plan may be amended, supplemented, superceded, re-enacted or restated from time to time, the "Plan").

4.12    The purposes of the Plan are: (a) to further the growth, development and financial success of Canada Safeway by providing additional incentives to certain of the employees of Canada Safeway and its subsidiary corporations who have been or will be given responsibility for the management or administration of the business affairs of Canada Safeway and its subsidiary corporations; and (b) to enable Canada Safeway and its subsidiary corporations to obtain and retain the services of the type of professional, technical and managerial employees considered essential to the long range success of Canada Safeway.

4.13    As used herein and in the Plan, "Stock Appreciation Right" means a stock appreciation right granted under the Plan or the Original Plan or a security issued in substitution thereof pursuant to the provisions of the Plan.

- 4 -

4.14    Stock Appreciation Rights may be granted to those officers and employees of Canada Safeway or a subsidiary of Canada Safeway who have also been granted an Option under the Safeway Equity Participation Plan (or the Prior Plans, if applicable).

4.15    The Plan and the Safeway Equity Participation Plan are administered by a committee (the Administrator) of two or more non-employee members of the board of directors of Safeway.

4.16    Subject to certain provisions, the Administrator, on behalf of Safeway or Canada Safeway, as the case may be, is given discretion relative to the granting, vesting, termination, substitution, repurchase, surrender, exercise, assumption, substitution or adjustment of Stock Appreciation Rights and Options.  Such discretion may be exercised in circumstances such as a redemption or acquisition of the Stock Appreciation Rights by Canada Safeway or the Options by Safeway, from Directors, consultants or permitted transferees for the purpose substituting similar securities.

4.17    Under the terms of the Plan and the Safeway Equity Participation Plan, Safeway and Canada Safeway may allow a Participant to settle payment for applicable taxes by electing to have Safeway or Canada Safeway, as applicable, withhold Safeway Shares otherwise issuable (or to allow the return of Safeway Shares).

4.18    Under the Safeway Equity Participation Plan and the Plan, Stock Appreciation Rights and Options issuable thereunder are non-transferable other than to a permitted transferee.

4.19    As at April 22, 2004, there were approximately 2,080 Canadians eligible to participate in the Plan and the Safeway Equity Participation Plan of a total of approximately 12,440 eligible participants in North America.  As of that date, Canadian Participants had rights to acquire approximately 7.7% of the total number of Safeway Shares issuable under options being options to acquire approximately 0.6% of the total number of Safeway Shares issued and outstanding on March 25, 2004.

4.20    As at the date hereof, residents of Canada did not own, directly or indirectly more than ten percent (10%) of the outstanding Safeway Shares and did not represent more than ten percent (10%) of the number of owners, direct or indirect, of Safeway Shares.

4.21    Employees will not be induced to participate in the Plan or the Safeway Equity Participation Plan by expectation of employment or continued employment.

4.22    Officers will not be induced to participate in the Plan or the Safeway Equity Participation Plan by expectation of appointment or employment or continued appointment or employment as an officer.

-5-

4.23    All necessary securities filings have been made in the United States to offer the Safeway Equity Participation Plan to Participants resident in the United States.

4.24    The Plan was structured to comply with United States securities laws.  The Safeway Equity Participation Plan is based on the Plan.

4.25    All disclosure material relating to Safeway that Safeway is required to file with the Securities and Exchange Commission in the United States will be provided or made available upon request to Participants who acquire Safeway Shares pursuant to the Safeway Equity Participation Plan and the Plan, at the same time and in the same manner, as such materials are provided or made available upon request to holders of Safeway Shares who are resident in the United States.

4.26    Neither Safeway nor Canada Safeway are reporting issuers (where such concept exists) in any jurisdiction in Canada and neither Safeway nor Canada Safeway have any present intention of becoming a reporting issuer in any of the Jurisdictions.

4.27    There is no market for the Safeway Shares in Canada and none is expected to develop and accordingly, any resale of the Safeway Shares must be effected through the facilities of and in accordance with, the rules applicable to the NYSE or a stock exchange or other market outside of Canada on which the Safeway Shares may hereinafter be listed or quoted for trading.

4.28    There is no published market in respect of the Options or the Stock Appreciation Rights.

**Decision**

5.    Each of the Decision Makers is satisfied that the test contained in the Legislation that provides the Decision Maker with the jurisdiction to make the Decision has been met.

6.    The Decision of the Decision Makers under the Legislation is that:

6.1    the Dealer Registration and Prospectus Requirements will not apply to any trade or distribution of Options, Stock Appreciation Rights or Safeway Shares made in connection with the Safeway Equity Participation Plan (or the Prior Plans) or the Plan (or the Original Plan) to consultants of Safeway or Safeway Inc., provided that (i) consultants spend a significant amount of time and attention on the affairs and business of the Safeway, Safeway Inc. or an affiliated entity of Safeway or Safeway Inc. (ii) the first trade in Options, Stock Appreciation Rights or Safeway Shares acquired under the Safeway Equity Participation Plan (or the Prior Plans) or the Plan (or the Original Plan) pursuant to this decision will, in Alberta, British Columbia, Saskatchewan and Ontario be deemed to be a distribution, and in Manitoba will be deemed to be a primary distribution to the public;

6.2    the first trade of Safeway Shares acquired by a consultant under the Safeway Equity Participation Plan (or the Prior Plans) or the Plan (or the Original Plan)

- 6 -

will not be subject to the Dealer Registration Requirements, provided the conditions in section 2.14 of MI 45-102, are satisfied;

6.3 the first trade of Safeway Shares acquired by a consultant in Manitoba, under the Safeway Equity Participation Plan (or the Prior Plans) or the Plan (or the Original Plan) will not be subject to the Prospectus Requirements, provided the conditions in section 2.14 of MI 45-102, are satisfied; and

6.4 the Issuer Bid Requirements shall not apply to acquisitions by Canada Safeway or Safeway of Stock Appreciation Rights, Options or Safeway Shares provided such acquisitions are made in accordance with the terms of the Safeway Equity Participation Plan (or the Prior Plans) or the Plan (or the Original Plan), as applicable.

"original signed by"
Glenda A. Campbell, Q.C., Vice-Chair
Alberta Securities Commission

"original signed by"
David W. Betts, CFA, Member
Alberta Securities Commission

#1449681

IN THE MATTER OF THE CANADIAN SECURITIES LEGISLATION

OF

MANITOBA, NEW BRUNSWICK, NEWFOUNDLAND,
NUNAVUT, PRINCE EDWARD ISLAND, QUÉÉBEC,
THE NORTHWEST TERRITORIES AND YUKON

AND

IN THE MATTER OF THE MUTUAL RELIANCE REVIEW SYSTEM
FOR EXEMPTIVE RELIEF APPLICATIONS

AND

IN THE MATTER OF
STANDARD LIFE TRUST COMPANY

MRRS DECISION DOCUMENT

**WHEREAS** the local securities regulatory authority or regulator (the "**Decision Maker**") in each of the provinces and territories of Canada except Alberta, British Columbia, Nova Scotia, Ontario and Saskatchewan (collectively, the "**Jurisdictions**") has received an application from Standard Life Trust Company ("**SLTC**") for a decision under the securities legislation of the Jurisdictions (the "**Legislation**") that certain trades in connection with "Fund Plans" (hereinafter defined) are not subject to the registration requirements in the Legislation nor to the prospectus requirements in the Legislation in respect of cross-trades by SLTC or its affiliates to net buy and sell orders from Employees and Fund Employees;

**AND WHEREAS** under the Mutual Reliance Review System for Exemptive Relief Applications (the "**System**"), the Commission des Valeurs Mobilièères du Quéébec (the "**CVMQ**") is the principal regulator for this application;

**AND WHEREAS**, unless otherwise defined, the terms herein have the meaning set out in National Instrument 14-101 Definitions or in Quéébec Commission Notice 14-101;

**AND WHEREAS** a MRRS Decision Document has been rendered on November 6, 2001 by the CVMQ as principal jurisdiction on behalf of the Jurisdictions which provided automatic regulatory relief in connection with the same types of trades of securities conducted by SLTC or by other subsidiaries of Standard Life when administering "Plans" of corporate bodies and their affiliates (the "**Initial Decision**");

**AND WHEREAS** SLTC has represented in regard to the Initial Decision to the Decision Maker that:

1. SLTC is a federally regulated trust company.

2. SLTC is a wholly-owned subsidiary of The Standard Life Assurance Company ("**Standard Life**"), an insurance company constituted under the *Insurance Companies Act* of Canada, and will administer a number of group savings plans sponsored by employers for their employees (the "**Plans**"). The Plans will be listed on the schedule attached hereto which SLTC may update from time to time by filing amendments with the Decision Makers.

3. Under the Plans, SLTC would like to be able to allow employees or consultants (as defined herein) of an issuer or its affiliates (the "**Employees**") to invest in common stock (the "**Common Stock**") of their respective issuer-employer (the "**Employers**"). A "**consultant**" means, for an Employer, an individual that (a) is engaged to provide on a bona fide basis consulting, technical,

management or other services to the Employer or to an affiliate of the Employer under a written contract between the Employer or the affiliate and the individual or a company or partnership of which the individual is a shareholder, partner or employee, and (b) in the reasonable opinion of the Employer, spends or will spend a significant amount of time and attention on the affairs and business of the Employer or an affiliate of the Employer.

4. Employees will be resident in all provinces and territories of Canada.

5. The Common Stock will be listed and posted for trading on a stock exchange or organized market (the "**Exchange**") in Canada, the United States or the United Kingdom. Exchanges include The Toronto Stock Exchange or the TSX Venture Exchange.

6. SLTC will conventionally conduct or will cause one or more of affiliates to conduct the following activities under the proposed Plans:

(a) accept instructions from Employees to buy or sell Common Stock;

(b) transmit orders to buy or sell Common Stock to dealers registered to trade in securities under the laws applicable to the jurisdiction where those trades are to be carried out;

(c) keep records in respect of the foregoing, including handling all payments, receipts, account entries and adjustments as a result of the trades; and

(d) "cross" shares by book entries (i.e. where one Employee wishes to sell and another to buy Common Stock of the same issuer, to make appropriate entries in their respective plan accounts).

7. SLTC will at all times be responsible for the administration of the Plans.

8. The Common Stock is registered with the applicable securities regulator and is publicly traded on the applicable Exchange. The Employers will not be exempt from reporting requirements of the relevant Exchange.

9. Under the Plans, only Employees of the relevant Employers will be eligible to purchase Common Stock pursuant to the Plans. Participation is voluntary and Employees are not required to purchase Common Stock nor are they induced to purchase Common Stock by expectation of employment or continued employment.

10. Administration of the Plans will involve dealing with a large number of Employees'' securities accounts, taking telephone, internet and/or written instructions from Employees to purchase or sell Common Stock and ensuring appropriate records are kept and statements issued. SLTC or its affiliates have experience in all of these areas because of SLTC''s experience as a trust company and they are therefore better equipped to carry out the administration of the Plans than the Employers themselves.

**AND WHEREAS** in the Initial Decision the Decision Makers pursuant to the Legislation have ruled that registration under the Legislation is not required with respect to trades under the Plans provided that :

(a) in connection with the administration of the Plans, SLTC limits its activities to those activities described in the Initial Decision;

(b) the purchase and sale of Common Stock under the Plans is made through an Exchange in accordance with the laws and rules applicable to the Exchange; and

(c) SLTC will not provide any advice concerning the decision to purchase or sell Common Stock under the Plans.

**AND WHEREAS** SLTC has further represented to the Decision Maker that:

1. SLTC will administer a number of group savings plans sponsored by employers for their employees within business structures comprising trusts, partnerships and/or limited partnerships (the "**Fund Plans**"). The Fund Plans will be listed on the schedule attached hereto which SLTC may update from time to time by filing amendments with the Decision Makers.

2. Under the Fund Plans, SLTC would like to be able to allow employees or consultants (as defined herein) of an issuer, its affiliates or its associates (the "**Fund Employees**") to invest in units (the "**Units**") of their respective issuer-employer (the "**Fund Employers**"). A "**consultant**" means, for a Fund Employer, an individual that (a) is engaged to provide on a *bona fide* basis consulting, technical, management or other services to the Fund Employer, to an affiliate or to an associate of the Fund Employer under a written contract between the Fund Employer, the affiliate or the associate and the individual or a company or partnership or a trust of which the individual is a shareholder, partner or employee, and (b) in the reasonable opinion of the Fund Employer, spends or will spend a significant amount of time and attention on the affairs and business of the Fund Employer, an affiliate or an associate of the Fund Employer.

3. Fund Employees will be resident in all provinces and territories of Canada.

4. The Units will be listed and posted on an Exchange in Canada, the United States or the United Kingdom. Exchanges include the Toronto Stock Exchange or the TSX Venture Exchange.

5. SLTC will conventionally conduct or will cause one or more of affiliates to conduct the following activities under the proposed Fund Plans:

(a) accept instructions from Fund Employees to buy or sell Units;

(b) transmit orders to buy or sell Units to dealers registered to trade in securities under the laws applicable to the jurisdiction where those trades are to be carried out;

(c) keep records in respect of the foregoing, including handling all payments, receipts, account entries and adjustments as a result of the trades; and

(d) "cross" units by book entries (i.e. where one Fund Employee wishes to sell and another to buy Units of the same issuer, to make appropriate entries in their respective plan accounts).

6. SLTC will at all times be responsible for the administration of the Fund Plans.

7. The Units will be qualified with the applicable securities regulator for sale to the public in Canada and will be publicly traded on the applicable Exchange. The issuer of Units will not be exempt from the reporting requirements of the relevant Exchange.

8. Under the Fund Plans, only Fund Employees of the relevant Fund Employers will be eligible to purchase Units pursuant to the Fund Plans. Participation is voluntary and Fund Employees will not be required to purchase Units nor will they be induced to purchase Units by expectation of employment or continued employment.

9. Administration of the Fund Plans will involve dealing with a large number of Fund Employees'' securities accounts, taking telephone, internet and/or written instructions from Fund Employees to purchase or sell Units and ensuring appropriate records are kept and statements issued. SLTC or its affiliates have experience in all of these areas because of SLTC''s experience as a trust company and they are therefore better equipped to carry out the administration of the Fund Plans than the Fund Employers themselves.

**AND WHEREAS** under the System, this MRRS Decision Document evidences the decision of each Decision Maker (collectively, the "**Decisions**");

**AND WHEREAS** each of the Decision Makers is satisfied that the test contained in the Legislation that provides the Decision Maker with the jurisdiction to make the Decision has been met;

**AND WHEREAS** SLTC wishes with this Decision to incorporate the Initial Decision into, and replace it by this Decision in order to provide SLTC with a seamless blanket order covering group savings plans involving both Plans and Fund Plans.

**THE DECISIONS** of the Decision Makers under the Legislation is that the requirement contained in the Legislation for registration in respect of trades under the Plans and the Fund Plans as well as, except as regards the Decision Maker of Quéébec, for the filing of a prospectus in respect of internal cross-trades by SLTC or its affiliates to net buy and sell orders by Employees and Fund Employees, is not required provided that:

(a) in connection with the administration of the Plans and the Fund Plans, SLTC limits its activities to those activities described in the Decision;

(b) the purchase and sale of Common Stock under the Plans and of Units under the Fund Plans is made through an Exchange in accordance with the laws and rules applicable to the Exchange;

(c) SLTC will not provide any advice concerning the decision to purchase or sell Common Stock under the Plans and of Units under the Fund Plans;

(d) SLTC agrees to have its trust activity associated with the dealer exemption subject to inspection, if necessary; and

(e) SLTC will inform the regulatory authorities every six months of the existence of any new plan.

This exemption is valid for a period of two years from the date of the ruling.

**DATED** at Montreal, Quebec, this 21th day of November, 2003.

Jean Lorrain
Directeur de l''encadrement des interméédiaires


## SCHEDULE

In the Decision, the following group savings plans constitute "Plans" or "Fund Plans":

| **PLANS** | **FUND PLANS** |
| --- | --- |
| CAE Inc. | |
| Coca-Cola Enterprises Inc. | |
| GlaxoSmithKline plc | |

TSX Group Corporate Information | TSX Group

 TSX Group

Home > About TSX Group > Corporate Information

Print this page
? Help

## About TSX Group

# Corporate Information

## TSX Group... Connecting global capital markets to Canada

From its pre-eminent domestic base, TSX Group's reach extends internationally, providing the global financial community with access to Canada's equity capital and energy markets. Each TSX Group operation is connected to and supports the activities of the others, all are focused on providing exceptional customer service from our offices in Vancouver, Calgary, Toronto and Montreal.

Toronto Stock Exchange (TSX): As Canada's senior equities market, TSX provides an efficient, liquid market for a broad cross-section of Canadian issuers. TSX assists about 1,500 issuers through services designed to increase retail and institutional investors.

TSX Venture Exchange: Serving the public venture equity market, TSX Venture Exchange provides access to capital for companies at the early stages of their growth while offering investors a well regulated market for making venture investments.

TSX Markets: TSX Markets facilitates trading on TSX and TSX Venture and provides innovative trading products to increase investor participation, particularly across North America.

Natural Gas Exchange (NGX): As a leading North American energy exchange, Natural Gas Exchange connects the buyers and sellers of natural gas and electricity contracts, enabling them to manage the risks inherent in energy trading, and provides the associated clearing and settlement services.

TSX Datalinx: To meet growing global demand for financial and capital markets information, data is packaged and sold with more than 118,000 subscriptions worldwide via TSX Datalinx, connecting the Canadian capital markets to investors at home and abroad.

TSX Technologies: Fundamental to these operations is TSX Technologies, which powers the operations of TSX Group through state-of-the-art trading technology.

Listing, trading and market data - supported by trading technology. These are the key elements of TSX Group.

Page Last Updated: March 13, 2008

**Related Links:**

Board of Directors

Senior Management

TSX Group History

Download the TSX Group Corporate Profile in PDF format

Play TSX Group Video



EXHIBIT
F
tabbies

## Bill Rowell

**From:** "Betsy Marden" <betsymarden@comcast.net>
**To:** <billrowell@comcast.net>
**Sent:** Tuesday, May 22, 2007 10:57 AM

Hi,
I spoke with Geoff and sold 10,000 at 3.75. Bought $50,000 of Bank of Nova Scotia ("the dividend is higher than T Bills and no matter what the price is now it will be higher in 2 years").

Geoff put in 10,000 at 3.85 and I will talk to him dayly until it sells or we go lower etc. He recomends taking out 100,000 shares of Franconia and puting it into things like the Bank of Nova Scotia.

Anne did not make the Select team again. none of the Lake Forest girls did and they are trying to put a team together like last year 15/16 Suzzy Kulby as coach. I suggested to Anne that she should run xctry and focus on her accademics. With the money saved she can have private training to prepare her for high school tryouts (I didn't say that to her).

Got to go get Anne and Nick
Lots of love,
Betsy



Geoffrey L. Goad
Raymond James LTD
Scotia Plaza – Suite 5300
40 King Street West PO Box 415
Toronto, ON  M5H – 3Y2

February 28, 2008

Dear Mr. Goad

Attached is a notification to Franconia Minerals Corporation of my intent to exercise
stock options granted to me under the Franconia Minerals Corporation Director and
Consultant Stock Option Agreement dated the 19th day of August, 2004.

Please make arrangements to wire $28,000.00 from my Raymond James account to the
Franconia Minerals Corporation address given bellow.

Franconia Minerals Corporation
Brian Gavin, President & CEO
111 E. Magnesium Road, Suite A
Spokane, WA 99208
U.S.A.
Tel: (509) 340.1328
Fax: (509) 696.9680

Thank you,

*W. F. Rowell*

W. F. Rowell

**Chad Houck, CFO**
Franconia Minerals Corporation
111 E. Magnesium Road, Suite A
Spokane, WA 99208
U.S.A.
Tel: (509) 340.1328
Fax: (509) 696.9680

February 28, 2008

Dear Mr. Houck,

Attached are a letter of instruction and a notification of intent to exercise my stock
options dated the 19th Day of August, 2004 that I sent to my broker Mr. Geoffrey Goad at
Raymond James in Toronto. Please contact Mr. Goad at geoff.goad@raymondjames.ca
with further instructions

Thank you,

*W. F. Rowell*

W. F. Rowell
955 Ringwood Road
Lake Forest, IL 60045

847 615-0885

cc. Brian Gavin

**David Fish**

| | |
|---|---|
| **From:** | Keith Davidson [keithdavidson@kldlawoffices.com] |
| **Sent:** | Tuesday, May 20, 2008 11:01 AM |
| **To:** | David Fish |
| **Subject:** | RE: |
| **Attachments:** | 080512 Joint Status Report.wpd |

Mr. Fish:

I respectfully decline to follow your suggestion to voluntarily dismiss this case and re-file it in Canada. Prior to filing in Illinois, my client fairly considered the option to file in Canada and decided against it.

Your assertion that Cook County is an improper venue is unfounded. For the answer to your question, see 735 ILCS 5/2-101.

Kindly advise as to when you plan to be in downtown Chicago and available to meet with me to conduct a Rule 26(f) discovery conference and prepare the court-ordered joint status report. Please also be reminded that I am beginning a 7 to 10 day trial on Monday, June 9 and will be unable to meet with you after June 5.

Attached is a preliminary draft of a joint status report that is structured to enable you to fill in your position on settlement, the issues, and discovery.

Please advise.

Keith L. Davidson

-----Original Message-----
From: David Fish [mailto:dfish@fishlawfirm.com]
Sent: Tue 5/20/2008 9:26 AM
To: Keith Davidson
Subject: RE:

Keith:

I would like to suggest that your client agree to voluntarily dismiss this case and re-file in Canada. We are dealing with:

1.    A lawsuit between two Canadian citizens
2.    A lawsuit involving a stock traded on the Toronto stock exchange
3.    A lawsuit with damages to be determined in Canadian dollars
4.    A lawsuit which requires the court to apply Canadian laws since this is called for in the stock option agreement.
5.    Canadian law would certain give you client access to justice.

While I certainly appreciate your claim that your client is an Illinois resident for purposes of diversity of citizenship under Federal law, this does not change the fact that this case is really one that belongs in Canada.

I also would like to point out that your client elected an improper venue to originally file his lawsuit. Assuming the truth of your allegations, he is a Lake County resident; yet the lawsuit was filed in Cook County. How is it that Cook County was an appropriate venue.

Please give some thought to this. It seems to be in everyone's interest to get a prompt resolution to this case in an appropriate resolution.


EXHIBIT
H

1