IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM ROWELL                    )
        Plaintiff,              )
                      )
      v.                          )
                      )    Case No.  08 CV 2517
FRANCONIA MINERALS CORPORATION,   )    Judge Castillo
a foreign corporation             )    Magistrate Judge Brown
          Defendant.            )

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT ON THE BASIS OF *FORUM NON CONVENIENS* AND RULE 12(b)(6)**

Now comes the Plaintiff, by his attorney, Keith L. Davidson, and urges that Defendant's motion should be denied for the following reasons:

## I.    Facts

### A.  Both Parties Are Citizens of the United States Under 28 USC § 1332

Plaintiff, a Canadian citizen, is an alien admitted to the U.S. for permanent residence. Thereby, under 28 USC § 1332 (a), he is a citizen of the U.S. and Illinois.  He has resided, worked, and paid taxes in the U.S. for 20 years and Lake Forest, Illinois for 10 years.  During all that time, he has never lived or worked in Canada (Ptf's Decl.; Exh. A; and Green Card; Exh. B). Defendant is incorporated in Alberta, Canada and has its principal place of business in the State of Washington (Compl., ¶ 1; Deft's Memo, p.5); whereby, under 28 USC § 1332 (a) and (c), it is a citizen of the U.S. and Washington.

### B.  Plaintiff's Claim For Breach of The Consulting Agreement

Plaintiff alleges a breach of one contract, the Consulting Agreement (Exh. C; Compl.; Exh. 1), based on Defendant's termination of Plaintiff by repudiation of his stock option rights, when Plaintiff sought to exercise them, leading up to and including a March 6, 2008 letter from

Defendant's CEO, Brian Gavin, falsely claiming that, on March 4, 2007, Plaintiff resigned his consultancy and his stock option rights had expired. (Compl.; ¶'s 20 and 21; Exh. 7).

The Consulting Agreement was entered into on January 1, 2001, without negotiation. Defendant alone drafted it and offered it to Plaintiff, a non-lawyer not represented by counsel, on a take it or leave it basis (Ptf's Decl.; Exh. A). It provided, in ¶ 1, that it would continue in effect until 12/31/01 and be automatically renewed annually unless sooner terminated under ¶ 8; and, in ¶ 2, that Plaintiff shall devote such time, attention and energies to Defendant's affairs to perform his duties and render consulting and advisory services to Defendant "as shall be mutually agreed upon;" and, in ¶ 6, that Plaintiff would be paid a per diem consulting fee and entitled to participate in any corporate benefit plans for employees and/or key Consultants, such as stock option plans; and, in ¶ 8, sub ¶ 2, that either party could terminate the consultancy without good cause and, in such event, Plaintiff would receive "severance pay;" plus payment for cancellation of his stock options, except that, if he rather than Defendant terminated the contract, he would receive no "severance compensation;" and, in ¶ 9, that the Consulting Agreement would be "governed by the laws of the State of Washington."

Where Gavin's letter implies Plaintiff resigned was a meeting between them in March 2007, during an industry conference in Toronto. It is undisputed that no one else was present. Plaintiff denies he ever resigned his consultancy or told anyone that he had resigned or intended to or might resign (Ptf's Decl.; Exh. A).

Defendant solicited Plaintiff, an Illinois resident, to do consulting work, which he did, entirely in the U.S. at his Lake Forest, Ill. home office and mineral sites in Minnesota and in

Nevada.  Plaintiff did no work for Defendant in Canada.  He communicated to Defendant in

Minnesota and Washington, and to little or no extent in Canada (Ptf's Decl.; Exh. A).

      Plaintiff's damages claims, under ¶ 8, include two fixed in amounts:  1), the difference, in

Canadian dollars (readily convertible to U.S. dollars), between the fixed price of Plaintiff's stock

options and their average price on the Toronto Stock Exchange during the 30 days prior to when

Plaintiff was terminated; and 2), $50,000 USD as severance pay.  Plaintiff also claims $50,000

USD for lost business opportunities in the U.S. and Argentina (Compl.; ¶'s 25-29; Ptf's Decl.;

Exh. A).  Alternatively, if Plaintiff terminated his services in March 2007, he claims $149,100,

under ¶ 8, as payment for the cancellation of his stock options. (Compl.; ¶'s 30-34).

**C.  The Stock Option Plans and The Stock Option Agreements**

      Defendant adopted a stock option plan in May, 2004 and another in August, 2007 and/or

March, 2008 (Compl.; Exhs. 2, 6).  Each provided, in ¶ 2, that it was to be governed and/or

administered by and construed in accordance with the laws of Alberta and Canada; and that:

"Subject to the provisions of the Plan, the Board shall have authority to construe and interpret the
Plan and all option agreements entered into thereunder, to define the terms used in the Plan and
in all option agreements and to make all other determinations necessary or advisable for the
administration of the Plan.  All determinations and interpretations made by the Board shall be
binding and conclusive on all participants in the Plan and on their legal personal representatives
and beneficiaries."

Each provided, in ¶ 2, that each option granted shall be evidenced by an option agreement

reciting that it is subject to the provisions of the stock option plan.  Each provided, in ¶ 7:

"In the case of employees and consultants or Management Company Employees, the option
agreements to which they are party must contain a representation of the Corporation that the
employee, consultant or Management Company Employee, as the case may be, is a bona fide
employee, consultant or Management Company Employee of the Corporation or it subsidiary."

The Parties entered into three stock option agreements (Compl., Exhs. 3,4,5). Each recited, in its preamble, that "the Optionee is either a director or a consultant of the Corporation or of a subsidiary corporation of the Corporation" and that "the granting of the option to the Optionee was authorized by the Board," and provided, in ¶ 9.2, that any question as to interpretation, construction or enforcement of it shall be referred to the Board and its decision shall be final and binding; and, in ¶ 9.6, that it shall be construed according to the laws of Alberta/Canada. Plaintiff knew of no conflicts between the stock option plans and stock option agreements or between any of them and the laws of Alberta/Canada (Ptf's Decl.; Exh. A).

## II.    Argument

### A.  Applicable Legal Standards

Kamel v. Hil-Rom Co., Inc., 108 F. 3d 799 at 802-803 (7th Cir. 1997) sets forth, as follows, the principles governing a *forum non conveniens* motion to dismiss:

"The principle of *forum non conveniens* comes down to this: a trial court may dismiss a suit over which it would normally have jurisdiction if it best serves the convenience of the parties and the ends of justice… (citations omitted). When an alternative forum has jurisdiction to hear a case, and when a trial in the chosen forum would result in vexation and oppression to the defendant which would far outweigh the plaintiff's convenience or when the chosen forum would generate administrative and legal entanglements for the trial court, the court may dismiss the case… (citations omitted)..

A *forum non conveniens* determination is consigned to the trial court's sound discretion… (citation omitted). Where a district court has contemplated all relevant public and private interest factors and where its balancing of these factors is reasonable, its *forum non conveniens* determination warrants substantial deference… (citations omitted).  We review this determination only for abuse of discretion… (citation omitted)."

* * *

"Provided an adequate alternative forum exists, the district court must then balance the private and public interest factors that emerge in a given case… (citations omitted). Ordinarily, the trial court should not supplant the plaintiff's choice of forum… (citations omitted). When the plaintiff chooses his *home* forum, it is reasonable to assume that this choice is convenient… (citation omitted).

The factors pertaining to the private interests of the litigants include the relative ease of access to sources of proof; availability of compulsory process for the attendance of unwilling witnesses;

-4-

the cost of obtaining the attendance of willing witnesses; the possibility of viewing the premises, if necessary; and all other practical problems that make trial of a case easy, efficient and economical… (citation omitted). The public factors include the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty…(citation omitted)[1]."

## B.  Plaintiff's Choice of a Forum is Entitled to Deference

There is ordinarily a strong presumption in favor of Plaintiff's choice of a forum, which may be overcome only when private and public interest factors point towards trial in the alternative forum.  Piper Aircraft Co. v. Reyno, 454 U.S. 235, 265-266(1981); Kamel v. Hill Rom Co., Inc., 108 F.3d 799, at 803(7th Cr. 1997).

Plaintiff's choice of this forum, as a permanent alien resident in it, deserves the same deference as if he were an American citizen residing here.  Macedo v. The Boeing Co., 693 F.2d 683, at 688 (7th Cir. 1982).  Defendant's argument that it deserves minimal deference because he "elected to consult with and invest in a Canadian Corporation" and "this case is closely linked to Canada" (Deft. Memo pp. 6-7) is unsupported by any sworn submission and contradicted by Plaintiff's Declaration, and the cases cited for it are irrelevant. It is inconsequential that the meeting where Defendant claims Plaintiff resigned coincidentally occurred in Toronto.  The only other person present was Gavin, a British citizen who works and resides in Washington.  The law and evidence link this case overwhelmingly to the U.S., and little if at all to Canada.

## C.  This Case Is Governed By Washington Law And Involves No Issue of Canadian Law

Defendant argues that Plaintiff was not a bona fide consultant eligible for stock options in 2008 because a), he never billed for work after April 2007; b), he did not devote significant time

---

[1] Omitted from the above quotation is the court's discussion of the adequacy of an alternative forum since Plaintiff does not deny that Canadian courts could provide an adequate alternative forum.

and attention to Defendant's business after March 2007, as required by a Canadian securities law; c), the stock option agreements do not include a statement, mandated by the stock option plans, that Plaintiff is a "bona fide" consultant; and d), the issue whether Plaintiff was a bona fide consultant is subject to its Board's final and binding determination, interpretation and construction of the stock option agreements.  (Deft's memo, pp.2-4).

The argument is factually and legally untenable.  Defendant does not establish or contend that Plaintiff was asked or refused to do any work after March 2007.  Plaintiff's Declaration establishes that, after March 2007, Defendant often asked him to and he often did provide information and advice but declined to bill for it only because none of it was onerous or time consuming and he was hoping to obtain more work from Defendant.  Plaintiff's 6 year work history before March 2007 (Deft. Memo Exh. C), shows that he devoted significant time and attention to Defendant's business.  It is Orwellian to imply that he terminated his services by not billing during the year thereafter for work Defendant never asked him to do.  The requirement in the stock option plans that the stock option agreements must represent that the consultant is a bona fide consultant did not dictate the use of any specific language.  The preamble to each stock option plan met the requirement; see *supra*, p. 3.

Defendant does not establish or contend that the conflict it posits between the stock option agreements and stock option plans invalidates the former under the laws of Alberta/Canada or that that would be a defense to Plaintiff's claim for breach of the Consulting Agreement under Washington law.  A federal district court in a diversity of citizenship case applies the choice of law rules of the state in which it sits, Soo Line Rd. Co. v. Escanaba & Lake Sup. Rd. Co., 840 F.2d 546 (7th Cir. 1988).  Illinois would apply Washington law to resolve

-6-

Plaintiff's claim for breach of the Consulting Agreement because a), the parties agreed it would govern that agreement; b), Washington has a substantial relationship to the parties and transaction; and c), applying Washington law violates no Illinois public policy or interests paramount to Washington's, <u>Newell Co. v Petersen,</u> 325 Ill. App. 3d 661 (2D 2001). Under Washington law, it is no defense if Defendant is foreclosed by its stock option plans or the laws of Alberta/Canada from fulfilling its promises in the Consulting Agreement. Plaintiff was not *in pari delicto* with, had conferred the benefit of services on, Defendant and awarding damages would not contravene Washington public policy, <u>Morelli v. Ehsan</u>, 110 Wn. 2d 555, at 562 (1988). Promissory estoppel also applies under <u>Jones v. Best</u>, 134 Wn. 2d 232, at 239 (1998). See, also, Farnsworth, CONTRACTS, §§ 4.15 and 5.1 *et. seq.* (3rd Ed. 1999).

Defendant's argument that it, rather than any court, is entitled to make all stock option agreement determinations, including whether: 1), Plaintiff resigned; 2), Plaintiff properly exercised his stock options; and 3), Plaintiff was a "bona fide" consultant (Deft. Memo, p.2), is unfounded because Defendant makes no showing that its Board has made any such determinations; and irrelevant because whether Plaintiff resigned or Defendant terminated him are questions of facts under the Consulting Agreement and Washington law. The Consulting Agreement gives Defendant no authority to make determinations under or interpretations of it. If Defendant repudiated it, Plaintiff was relieved of any further obligations under it, <u>CKP, Inc. v. GRS Const. Co,</u> 63 Wn. App. 601 (1991); <u>Trompeter v. United Ins. Co.</u>, 51 Wn. 2d 133 (1957)[2].

---

[2] The stock option plans require no interpretation. The Board's authority to interpret them cannot include rewriting their plain language to remove Defendant's duties. A Board determination (though none has been shown) that the stock option agreements did not contain language that the stock option plans required them to contain has no apparent relevance to Defendant's *forum non conveniens* argument, since it involves no apparent question of foreign law.

The Second Amended Complaint adds a fraud claim based on Gavin's June 20 and August 21, 2007, e-mails showing he deliberately concealed the material fact that Gavin was withholding work from Plaintiff to deny him the benefits due him on termination, while enforcing the confidentiality and conflict of interest provisions, under the Consulting Agreement (Comp.; ¶'s 35-38).  Since Gavin did this at Defendant's Washington headquarters, and Plaintiff was victimized in Illinois, each state's interest in the fraud claim exceeds any of Alberta/Canada.

**D.  Most or All Witnesses Are Located in Illinois or Other Parts of the United States**

The witnesses Plaintiff has named include himself; his wife, Betsy Marden, who resides with him and assists him in accounting; Ted DeMatties, a Minnesota resident whose business opportunities Plaintiff had to decline; and his broker, Geoffrey Goad, an Ontario, Canada resident, who Defendant refused to let wire transfer cash for Plaintiff to exercise stock options in February 2008 (Compl. ¶'s 19-20; Ptf's Decl., Exh. A; Davidson Decl., Exh. D), and who can establish the average price of Defendant's stock on the Toronto Stock Exchange during the pertinent time period.  But Goad's testimony would be perfunctory and likely unnecessary since Gavin's March 6, 2008 letter suffices to prove Defendant's repudiation; and judicial notice, a request to admit, or a Chicago stock broker's testimony should suffice to establish the stock exchange price.

Defendant has named four witnesses (Deft.'s Memo, pp 5-6).  One is Bonnie Kuhn, Vice President, Board Member and the General Counsel of Defendant who, Defendant argues, "corresponded with Gavin in the email attached to the Complaint as Exhibit 8 (which Plaintiff claims is evidence of Franconia's fraud) and she executed [Defendant's] Amended Stock Option Plan."  Defendant provides no Declaration as to what testimony Kuhn could offer; nor is there

reason to think she could offer any that is relevant.  Plaintiff alleges fraud based solely on

Gavin's e-mails to Kuhn and to no extent on Kuhn's e-mail; and, for the reasons already stated,

nothing Kuhn has to say about the stock option plans could be relevant.

Defendant states that George Tikkanen and Lewis Lawrick "may testify about, *inter alia*,

the Board's (they are on Franconia's Board) consideration of Rowell's eligibility to receive stock

options and why Franconia believes it properly deemed the options invalid. (Exhibit A, ¶ 5)[3]"

(Deft. Memo, p. 6).  The Consulting Agreement gave the Board no authority to make any such

determination.  There is no showing that, if it made any such determination under the Stock

Option Agreements, it would be a defense to Plaintiff's claim under Washington law.

Defendant argues that Goad must be deposed and potentially called at trial by Defendant

because "he appears to have advised Plaintiff's wife to sell Franconia stock shortly before the 90

day termination date (i.e., when the options expired as set forth in Complaint Exhibit 3, ¶ 3.2)

from when Franconia says Plaintiff resigned" and because "Goad also purported to exercise

Plaintiff's stock sales and had communication with Defendant regarding the same (Exhibit G)"

(Deft. Memo, p.5).  Plaintiff will stipulate to the substance and timing of Goad's advice; his

deposition is unnecessary.

Thus, Plaintiff has named three American residents (Plaintiff and his wife in Illinois, and

DeMatties in Minnesota) whose prospective testimony is supported by Plaintiff's Declaration,

and one Canadian resident, Goad, in Ontario, while Defendant has named three other Canadian

---

[3] Defendant makes no showing as to any testimony Tikkanen or Lawrick could offer. All it cites, as the basis of their testimony, is Gavin's Declaration (Deft's Memo Exh. A), which contains no facts the Board could have relied on to deem Plaintiff's stock options invalid, unless the Board simply assumed as true Gavin's assertion that Plaintiff orally resigned in their private meeting on March 2007.  Nothing Tikkanen and Lawrick could say about the Board's thinking is relevant.  It is not equivalent to a Board determination, and there is no showing of any Board determination that Plaintiff's stock option rights had expired by February/March 2008 or Board awareness, before this suit was filed, that Plaintiff disputed Gavin's version of the March 2007 meeting.

residents (Kuhn, in Calgary, Tikkanen, in Vancouver, and Lawrick, in Toronto (Ptf's Decl.; Exh. A)), none of whom has submitted a Declaration, and failed to name Gavin, a Washington resident and indispensable witness for Defendant.  This tallies 4 American to 4 Canadian residents[4].  But Defendant has made no showing that Kuhn, Tikkanen, or Lawrick, can provide relevant testimony, or that Goad's is more than perfunctory or needed.

## E.  The Private Interests Weigh Against The Motion

Gavin, Tikkanen, Kuhn, and Lawrick, are all under Defendant's control.  But, neither Gavin, DeMatties, nor Defendant's two American resident witnesses, are under Plaintiff's control.  If this case were pending in Canada, Plaintiff would need letters rogatory from a Canadian court to obtain depositions from them through American courts, in aid of the Canadian litigation.  If it remains here, Defendant will face no such difficulty in deposing any of Plaintiff's four American resident witnesses or presenting its Canadian officers or Board members at trial.  Nor would it serve the parties' convenience for this case to be brought in Canada since Defendant's Canadian residents are very far apart.  If Defendant's interrogatory answers, unlike its motion, disclose any relevant knowledge of these witnesses, Plaintiff will not need to depose them.  There is no alternative forum where more than one witness resides.  Defendant has not shown it would be less costly to litigate this case in Canada.  The cost of bringing the 6 U.S. witnesses to Canada and two of the three Canadian witnesses to a distant location in Canada, plus the cost of obtaining letters rogatory, could not possibly be less than that of litigating here.

## F.  The Public Interest Factors Weigh Against The Motion

---

[4] In its prior motion to dismiss, Defendant named two American residents, Bill Spears in Colorado and Ernest Lehmann in Minnesota (one of Defendant's Board members), as having knowledge of Plaintiff's March 2007 resignation.  Defendant's current motion references them without naming them in a footnote (Deft.'s Memo, p. 6, fn. 5).  Counting them, the witness tally is 6 American residents to 4 Canadian residents.

This case turns on simple fact issues.  The parties have agreed to a trial before a magistrate and estimated its length at three days.  It will not contribute significantly to court congestion.  There is a local interest in having the case decided here since Plaintiff, a permanent alien resident here with his spouse, an American citizen, was solicited by Defendant and performed much of his work for Defendant here.  U.S. interest in protecting its residents from breaches of contract and fraud exceeds any interest Canada has in the case.  The controversy is governed entirely by U.S. state law, which this court is better situated than a Canadian court to apply.  It would not unfairly burden Illinois citizens to serve as jurors as the case is related to this forum and Plaintiff has long paid U.S. federal and Illinois taxes that go to support the administration of justice here.

## G.  Defendant's Authorities Do Not Support Its *Forum Non Conveniens* Argument.

In most of the cases Defendant cites, memo, pp. 7-12, the forum courts placed great importance on the need to interpret and apply foreign law relative to other public and private interest factors that, unlike here, weighed far more in favor of dismissal in those cases because they involved allegations of securities law violations by foreign corporations mainly or entirely in foreign territory that victimized mainly or only foreign nationals.

Warter v. Boston Securities, S.A., 380 F.Supp.2d 1299, (S. D. Fla. Dec. 15, 2004), a highly complex case brought by a U.S. citizen, his wife and their wholly owned Uruguayan company against an Argentine securities brokerage firm *et. al.*, alleged fraud and related torts, in connection with an embezzlement of funds invested with the brokerage.  Evidence came from the 18 banks and 42 individuals via an ongoing Argentine criminal prosecution involving the same subject matter, many of the same parties, and other defrauded parties there.  Argentina's

only means of compelling unwilling witnesses to testify in aid of the U.S. case was a foreign letter rogatory, which could take up to three years and would allow no discovery; whereas, under Argentina's rules of procedures, discovery could be obtained and testimony compelled. The cost of obtaining testimony in Argentina for a U.S. case would have been immense and a judgment would have been more easily enforced in Argentina[5].

Gilstrap v. Radianz Ltd., 443 F.Supp.2d 474 (S.D.N.Y. 2006), was a class action against an English corporation, its seller and buyer, both English, by two of it officers, for themselves and the corporation's current and former employees, claiming wrongful denial of stock option benefits due to defendant's tortious manipulation of its stock price, making the options worthless. Slight deference was given to plaintiffs' forum choice because it was a class action; the litigation centered on events in England; the class was worldwide, 60% in England; one plaintiff resided in England and had no bona fide connection with the forum, and the other resided in Texas; most of, and all key, witnesses were based in England; cumbersome use of letters rogatory were needed to obtain testimony from many witnesses in England; the documents and evidence were mainly in England; and internal corporate governance of English companies was mainly at issue.

Sussman v. Bank of Israel, 801 F.Supp. 1068 (S.D.N.Y. 1992), was brought in New York by non-resident plaintiffs against an Israeli bank for alleged fraudulent investment practices that took place exclusively in Israel. Pyrenee, Ltd. v. Wocom Commodities, Ltd., 984 F.Supp. 1148, 1167 (N.D. Ill. 1997), involved Liberian and Californian plaintiffs suing Hong Kong defendants for securities fraud committed in Hong Kong. Russellville Steel Co. v. Sears, Roebuck & Co. et al, No. 99 C 485, 2000 U.S. Dist. LEXIS (N.D.Ill. Jan. 19, 2000), was an action for breach of a

---

[5] A money judgment of this court against Defendant could be executed against its corporate and financial assets in Washington and its mineral asserts located in Minnesota and elsewhere in the U.S.

contract negotiated in Maryland, providing it was to be governed by Maryland law, for a construction project done poorly there. The defendant general contractor was not subject to personal jurisdiction in Illinois. Howe v. Goldcorp Investments, Ltd., 946 F.2d 944 (1st Cir. 1991), was a suit against a Canadian Corporation, its Canadian officers and directors, by an American shareholder, for violation of Canadian securities laws in a takeover of two other Canadian corporations, where virtually all the witnesses and evidence were in Canada.

In Roynat, Inc. v. Richmond Transp. Corp., 772 F.Supp 417 (S.D. Ind. 1991), a Canadian Corporation sued a Delaware Corporation whose principal place of business was in Indiana to enforce defendant's guarantee of a debt owed plaintiff by a Canadian subsidiary of plaintiff. The key witnesses and relevant documents, which were numerous, were divided roughly equally between Canada, California, and the Indiana forum, and there was real property in Canada whose inspection was not essential but could be probative.

Other cases Defendant cites involved no foreign law issues but are similarly distinguishable. In Von Holdt v. Husky Injection Molding Systems, Ltd., 887 F. Supp 185 (N.D. Ill. 1995), a complex patent infringement suit, this court transferred venue to a Massachusetts federal court because: a), the central facts and circumstances took place in Massachusetts; and b), the convenience of the parties weighed heavily in favor of transfer in that all of defendant's documents and financial records were located there; all of defendant's products were designed, manufactured, and shipped in Massachusetts; the employees most likely to have knowledge of the facts were located in there; defendant's Illinois subsidiary did not sell the allegedly infringing product; and the only Illinois connection was plaintiff's Illinois residence. Boyd v. Snyder, 44 F.Supp.2d 966 (N.D.Ill.1999), was a class action brought by inmates in an Illinois state prison

-13-

against the Illinois Department of Corrections, and many of its officials and employees, for violations of their constitutional rights.  Venue was transferred to the Southern District of Illinois, where the prison was located, because, in a class action, plaintiffs' choice of a forum was entitled to less weight and all the alleged acts took place there and most of the defendants resided there.

## H.  Plaintiff's Fraudulent Concealment Claim Is Properly Pleaded

Plaintiff's fraud claim, *supra* pp. 7-8 (Compl. ¶'s 35-38, Exhs. 8, 9), is pleaded with requisite particularity under FRCP 9(b), *i.e.* re: the nature, date, time, and place of the fraud, the identity of the fraudfeasor and victim, reliance on Defendant's contractual promises, injury, and damages.  Pleading the legal conclusion that Defendant had a duty was permitted but not required.  Jackson v. Marion County, 66 F.3d 151, at 153-4 (7th Cir. 1998).

Defendant assumes, memo, p. 14, that Washington substantive law governs the fraud claim, thereby conceding, as Plaintiff contends, that Alberta/Canada law does not.  Illinois courts might apply Illinois substantive law or, if they looked to Washington law, Washington might also[6].  But which state's substantive law applies is immaterial to Defendant's Rule 12(b) motion since the two are essentially the same on the elements of fraudulent concealment and the motion is ill-founded under each.  Both adhere to the principles set forth in the Restatement (Second) of Contracts, § 160 *et. seq.,* that fraudulent concealment consists of a failure, by one who has a duty and an opportunity to speak, to disclose a material fact with an intent to deceive another who relied on it to his detriment; and that a duty to speak arises where the concealed facts are

---

[6] Both states follow the "most significant interest" test set forth in the Restatement (Second) of Conflicts of Law, Morris B. Chapman & Assoc. v. Kitzman, 193 Ill. 2d 560, at 568 (2000); Ito Corp. v. Prescott, Inc., 83 Wn. App. 282 (1996).  Arguably, both would apply Illinois substantive law because Plaintiff was victimized the fraud in Illinois.  Barbara's Sales, Inc. v. Intel Corp., 227 Ill. 2d 45, at 68 (2007), Kammerer v. Gear Corp., 96 Wn. 2d 416 (1981); but see, *contra*, Hall v. Sprint Spectrum, L.P., 376 Ill. App. 3d 822, at 827-829. (2007); Erwin v. Cotter Health Ctrs., 161 Wn. 2d 676, at 693-4 (2007).

peculiarly within the knowledge of one person and could not be readily obtained by the other, W.W. Vincent & Co. v. First Colony Life Ins. Co., 351 Ill. App. 3d 752 (1D 2004); Oates v. Taylor, 31 Wn. 2d 989 (1948); Murphy v. Hewitt, 103 Wn. App. 1059 (2000), Rev. Den., 143 Wn. 2d 1022 (2001).  The nine elements of fraudulent misrepresentation set forth in Stiley v. Block, 130 Wn. 2d 486 (1996) need not be pleaded since Plaintiff's theory is fraudulent concealment.  Plaintiff obviously had no way of knowing that, as stated in Gavin's e-mails, he was "history," but being misled to believe he remained a consultant, with Defendant to deny him a "golden parachute" and prolong the restrictions on his freedom and ability to accept other and potentially competitive employment.

## I.  Plaintiff's Alternative Damage Claim, *Supra* p. 3, Should Stand

Contrary to Defendant's Memo, pp.13-14, Plaintiff's alternative claim to be paid for cancellation of his stock, if he is found to have resigned, is permitted by FRCP 8(d).  Only "severance compensation" is thereby forfeited under ¶ 8 of the Consulting Agreement.  That phrase should be construed to mean only the "severance pay" he was to receive if Defendant had terminated him because that is its plain meaning or, otherwise, ¶ 8 is ambiguous and that is what Plaintiff reasonably understood it to mean (Ptf's Decl.; Exh. A).  Ambiguity in the Consulting Agreement, since it was an adhesion contract (Ptf's Decl.; Exh. A), is construed against Defendant, as its drafter, Byrne v. Bellingham Schl. Dist., 7 Wn. 2d 20, at 25 (1941); Zuver v. Airtouch Communications, 153 Wn. 2d 293 (2004).

### III.    Conclusion

On the basis of the arguments and authorities hereinbefore cited, Plaintiff urges that Defendant's motion be denied.

/s Keith L. Davison
Attorney for Plaintiff

Keith L. Davidson
**Law Offices of Keith L. Davidson**
2 N. LaSalle, Suite 1600
Chicago, IL 60602
(312) 419-0544

# EXHIBIT LIST

**Declaration of William Rowell** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **A**

**Copy of Plaintiff's Green Card** . . . . . . . . . . . . . . . . . . . . . . . . . . . **B**

**Consulting Agreement Between William Rowell
and Franconia.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **C**

**Declaration of Keith L. Davidson** . . . . . . . . . . . . . . . . . . . . . . . . . **D**

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM ROWELL                          )
               Plaintiff,              )
                           )
        v.                            )
                           )   Case No.  08 CV 2517
FRANCONIA MINERALS CORPORATION,         )   Judge Castillo
a foreign corporation                   )   Magistrate Judge Brown
               Defendant.              )

## <u>DECLARATION OF WILLIAM ROWELL</u>

Pursuant to 28 USC §1746, I swear under penalty of perjury that the following information is true:

1.      My name is William Rowell.  I am over the age of twenty-one and I am competent to make this Declaration and I have personal knowledge of the matters set forth herein.

2.      I am a trained geologist and the Plaintiff in the above-captioned case.

3.      I am a Canadian citizen and, as shown on my Green Card attached hereto, I am also an alien admitted to the United States for permanent residence.  I have resided and paid taxes in the United States for almost 20 years and in Lake Forest, Illinois for almost 10 years. During all that time, I have never lived, worked, or paid taxes in Canada.

4.      I did not solicit consulting work from Defendant.  Defendant solicited me in Illinois to render my services as a consultant.  The Consulting Agreement and the Stock Option Agreements I entered into with Defendant were offered to me on a take it or leave it basis.  I played no part in drafting them and they were not negotiated.  I was not represented by counsel in respect to them.  I was then and am now aware of no conflicts between any of the agreements or between any of the agreements and any of the laws of Alberta or Canada.  I performed

-1-

extensive consulting work for Defendant before learning for the first time, in this lawsuit, that Defendant was suggesting that my right under the Consulting Agreement to participate in Defendant's benefit plans, such as its Stock Option Plans, might be invalid because, according to Defendant, the Stock Option Agreements did not contain language that Defendant's Stock Option Plans required them to contain or may in some manner have violated the law of Alberta or Canada.

5.     The Stock Option Agreements are generic agreements that were the same for me as for all of Defendant's Directors and Key Consultants. Defendant has given stock options to other Directors and Consultants pursuant to this generic Stock Option Agreement that has been renewed through 2007. If the Stock Option Agreement was invalid as to me, it would be invalid as to every other Director and Key Consultant of Defendant.

6.     By entering into the Consulting Agreement, I did not elect to consult Defendant or invest in Defendant. Defendant elected to consult me. All I elected to do was to perform consulting work for Defendant and be paid for that work in cash with the right to participate in any benefit plans Defendant might choose to adopt for the general and overall benefit of all employees and/or for Key Consultants of the Corporation, such as stock options, among other plans.

7.     My consulting work for Defendant, under the Consulting Agreement, was performed entirely in the United States, including at my Lake Forest, Illinois home office, and at mineral exploration sites primarily in Minnesota and secondarily in Nevada, and communications from me while I was in Argentina to do work for others. I performed no work

for Defendant in Canada, and my communications to Defendant were primarily in Minnesota, to a lesser extent in Spokane, Washington, and to little or no extent in Canada.

8.      My wife, Betsy Marden, assists with my accounting and has firsthand knowledge to testify about the consulting work I performed for Defendant in Illinois, Minnesota, Nevada, and Argentina and the time I devoted to it and what I billed and was paid for it.

9.      The March, 2007 meeting referred to in Brian Gavin's March 6, 2008 letter to me and in Defendant's motion took place on March 6, 2007, not on March 4, 2007, during an international conference called the Prospectors and Developers Association of Canada, which I attended at Defendant's invitation and attendance at which had nothing to do with being Canadian.  No one else was present when I met with Gavin, a British citizen by birth who works and resides in Washington.  I did not terminate my services under the Consulting Agreement at that meeting, or at any other time.

10.     William Spear and Ernest Lehmann both reside in the United States and both are American citizens.  I never told Spear or anyone else that I had terminated, or that I intended to or might terminate, my services under the Consulting Agreement.  Lehmann is a member of Defendant's Board of Directors.

11.     After March 2007, I was often asked by Defendant to provide, and I often did provide, information or advice to Defendant on its Minnesota project.  I did not bill for those services because they were not onerous. Prior to 2007 I did not bill for much more extensive periods of work.  When Franconia had very little money in the period from 1999 to 2001 I contributed weeks of work without charge and raised capital to keep the company going.  I did

-3-

not bill for project development work or raising money because I expected to benefit from the company's success through ownership of stock and stock options.

12.    At no time after March 2007 did Defendant ever ask me to do any work that I declined to do, or did I ever undertake to do any work for Defendant that I failed to do.

13.    I and my wife both understood and believed that, under ¶ 8 of the Consulting Agreement, I would be entitled to receive from Defendant payment for my unexercised stock options but no severance pay in the event I resigned. That is what we understood and believed was meant by the final sentence in ¶ 8.

14.    Part of the damages I claim as a result of Defendant's breach of the Consulting Agreement consist of my loss, owing to my commitment to Defendant, of business opportunities to earn U.S. Dollars working for others in the United States and in Argentina. Ted DeMatties, a Minnesota resident, had work available to me in the United States for which he has indicated to me that he would have hired me were it not for the fact that I was committed to working for the defendant. I was also compelled to decline additional work in Argentina, while I was already doing work there for others, so that I could return to the United States and work on the Defendant's projects.

15.    George Tikkanen resides in Vancouver, B.C.; Bonnie Kuhn resides in Calgary, Alberta; and Lewis Lawrick resides in Toronto, Ontario. All are members of Defendant's Board of Directors, and Kuhn is a Vice President and the General Counsel of Defendant.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 25, 2008          _William F. Rowell_
                                   William Rowell

-4-

Exhibit B



# Exhibit C

## CONSULTING AGREEMENT

This Consulting Agreement (hereinafter referred to as the "Agreement"), effective January 1, 2001, is made by and between Franconia Minerals Inc., an Alberta, Canada Corporation having offices at 1600 Canada Place 407-2nd Street S.W., Calgary, ALBERTA T2P 2Y3, CANADA and other corporations owned or controlled by it (referred to as the "Company"), and William F. Rowell, 955 N Ringwood Rd, Lake Forest, IL 60045, (hereinafter referred to as the "Consultant").

WHEREAS, the Consultant is willing and able to provide consulting services in geology, mineral exploration related matters, and

WHEREAS, the Company desires to obtain said services from Consultant,

NOW THEREFORE, in consideration of the conditions and mutual covenants hereinafter set forth, the parties agree as follows:

**1.    Term of Agreement**

This agreement shall continue in effect until December 31, 2001, and shall automatically be renewed annually, unless sooner terminated as provided in Section 8 hereof.

**2.    Scope of Services**

The Consultant shall, devote such time, attention and energy to the affairs of Company to perform his duties hereunder and render such geological consulting and advisory services to Company as shall be mutually agreed upon by Consultant and its President.

**3.    Standards of Performance**

All services hereunder shall be performed by Consultant in a thorough and efficient manner, with due care, and in accordance with standard practices in geology.

**4.    Confidentiality, Conflict of Interest**

a) Consultant agrees to furnish Company, at times and to the extent directed by the Company or its representative, with reports of progress and with all data and information relating to the services performed by Consultant hereunder. All such reports, data, and information shall become the sole property of Company and shall be delivered to Company from time to time as scheduled or requested.

b) Company and Consultant acknowledge that the services to be performed by Consultant hereunder are such that Consultant may acquire, develop, or produce information or technical data relating to Company's methods, mineral exploration programs, mineral properties, and business practices. Consultant agrees that during the term of this Agreement, and for a period of one year thereafter, Consultant will treat such information or technical data, including that delivered to Company by Consultant, as secret and confidential and will not, without the prior written consent of Company, directly or indirectly use or disclose to a third party such information or technical data, whether acquired, developed, or produced by Consultant in the performance of the services under this Agreement. Company agrees that information or technical data that is of public knowledge or was known to Consultant prior to

Founder *Franconia Minerals Inc.*          *Consulting Agreement - Page 1*

Consultant obtaining the same through performance of the services hereunder shall not be considered as confidential.

c) Consultant agrees that for a period of one year after the term of this Agreement, Consultant will not acquire nor seek to acquire, directly or indirectly, any interest in mineral properties using confidential information acquired in the performance of the services under this Agreement without the prior written consent of Company.

d) Consultant recognizes that the Company may, from time to time, enter into confidentiality agreements which may restrict its activities and those of its Consultants, employees and agents for a period longer than that contemplated in d) above. In this event the Consultant will be bound by the terms of any agreement with a longer term.

e) Consultant represents to Company that there is no present conflict of interest relating to Consultant's acceptance of this Agreement or to the services to be performed hereunder and agrees to promptly notify Company in the event any conflict of interest develops during the term of this Agreement.

**5.    Indemnity and Insurance**

Consultant agrees to indemnify, defend, and save harmless Company from any and all liability claims for injury or death to any persons or for damage to or loss of property arising out of, or alleged to have arisen out of, any breach or default by Consultant of the terms and conditions of this Agreement, any negligent acts or omissions by Consultant, and any civil or criminal violations or breaches of statutes by Consultant.

**6.    Payment and Compensation**

In performing the services under this Contract, Consultant shall act as an independent contractor and shall not bind or commit Company in any manner except as expressly authorized by Company. Unless acting as an Officer or Director of the Company, in the performance of the services hereunder Consultant shall make clear in all dealings with third parties that Consultant is acting strictly in the capacity of a contractor.

For performance of the services hereunder, Company agrees to pay Consultant a consulting fee of $450.00 (US) per day. In the event that partial days are worked, this daily rate shall be pro-rated on an eight-hour per day basis. Consultant agrees that all income, social security, and other taxes pertaining to fees hereunder and any pensions or medical and life insurance are Consultant's sole responsibility.

During the term of this Agreement the Consultant shall be entitled to participate in any benefit plans adopted by the Corporation for the general and overall benefit of all employees and/or for key Consultants of the Corporation such as health care, life insurance, disability, stock option plans, tax, legal and financial planning services, pension, profit sharing and savings.

Company agrees to reimburse Consultant, at cost, for all reasonable and necessary expenses incurred by Consultant in relation to Consultant's performance of services under this Agreement.

Consultant agrees to invoice Company, on or about the first day of each month and in a format acceptable to Company, for fees and expense reimbursement due Consultant. Invoices shall be supported by receipts for expenses. Upon acceptance, Company shall pay such invoices within thirty days at Consultant's mailing address or at such address as Consultant indicates.

**7.    Notices, Representatives**

Written notices made pursuant to this Agreement shall be delivered personally or by courier or mail (return receipt provided) to the addresses stated above. Either party may notify the other of a change in its address for notice. Other notices or communications permitted or required by this Agreement may be made verbally as appropriate.

**8.    Termination**

1) With Cause. The Corporation, as represented by its President, may terminate this Agreement ten (10) days after written notice to Consultant for "Good Cause," which shall mean any one or more of the following: (1) Consultant's willful, material and irreparable breach of this Agreement; (2) Consultant's gross negligence in the performance or intentional nonperformance (continuing for ten (10) days after receipt of written notice of need to cure) of any of Consultant's material duties and responsibilities hereunder; (3) Consultant's willful dishonesty, fraud or misconduct with respect to the business or affairs of the Corporation which materially and adversely affects the operations or reputation of the Corporation; (4) Consultant's conviction of a felony crime or gross misdemeanor; (5) confirmed positive illegal drug test result; or 6) bankruptcy, death or mental or physical inability to perform of any of Consultant's material duties and responsibilities hereunder. In the event of a termination for Good Cause, as enumerated above, Consultant shall have no right to any severance compensation.

2) Without Good Cause. At any time after the commencement of this Agreement, Consultant may, without cause, terminate this Agreement effective thirty (30) days after written notice is provided to the Corporation. Consultant may be terminated without Good Cause by the Corporation, as represented by its President, provided that the Consultant receives at least one (1) month written notice. In the event that Consultant is terminated without Good Cause during the Term:

   a) Consultant shall receive as severance pay from the Company, within 30 days of the date of termination the amount of US$25,000.00 if the termination date is on or before December 31, 2001; or, the amount of US$37,500.00 if the termination date is after December 31, 2001 and on or before December 31, 2002; or, the amount of US$50,000.00 if the termination date is after December 31, 2002; and,

   b) The Company will cancel, by payment to the Consultant of an amount equal to the difference between the exercise price of the options and the average closing price of the common shares on the relevant stock exchange or trading platform during the previous thirty days, any previously issued Franconia Minerals Corporation share options held by the Consultant which are not exercised within thirty days of the date of termination.

If Consultant resigns or otherwise terminates this contract, rather than the Corporation terminating this contract pursuant to this paragraph 8, Consultant shall receive no severance compensation.

**9.    General Conditions**

a) It is hereby agreed that this Agreement shall be governed by the laws of the state of Washington.

b) This Agreement constitutes the entire understanding between the parties and terminates all prior agreements between Company and Consultant, if any. Any supplement or amendment to this Agreement, to be effective, shall be written and signed by Consultant and Company.

c) This Agreement and the rights and duties hereunder may not be assigned, transferred, or delegated by Consultant without prior written consent of Company.



IN WITNESS WHEREOF, this Consulting Agreement has been executed as of June 15, 2001.

CONSULTANT:

*W. F. Rowell*
William F. Rowell
Tax ID # 0297 2 0439

FRANCONIA MINERALS INC:

Brian Gavin
President
Franconia Minerals Corporation

# Exhibit D

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

WILLIAM ROWELL                                )
                        Plaintiff,            )
                                              )
        v.                                    )
                                              )    Case No.  08 CV 2517
FRANCONIA MINERALS CORPORATION,               )    Judge Castillo
a foreign corporation                         )    Magistrate Judge Brown
                        Defendant.            )

## DECLARATION OF KEITH L. DAVIDSON

        Pursuant to 28 USC §1746, I swear under penalty of perjury that the following

information is true:

        1.      I, Keith L. Davidson, spoke to Ted DeMatties on July 30, 2008, who verified to

me that Plaintiff declined to do consulting work for him that he asked Plaintiff to do for him in

2007 because, as Plaintiff explained to him, of Plaintiff's commitments to Defendant.  However,

there was insufficient time for me to submit a draft Declaration to Mr. DeMatties to approve for

inclusion as an Exhibit to Plaintiff's memorandum in opposition to Defendant's motion to

dismiss.


        I declare under penalty of perjury that the foregoing is true and correct.


        Executed on July 30, 2008          /s Keith L. Davidson_____
                                           Attorney for Plaintiff

Keith L. Davidson
**Law Offices of Keith L. Davidson**
2 N. LaSalle, Suite 1600
Chicago, IL 60602
(312) 419-0544

-1-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM ROWELL                          )
                                        )
                    Plaintiff,          )
                                        )
        v.                              )
                                        )    No.  08 C 2517
FRANCONIA MINERALS CORPORATION,         )    Judge Castillo
a foreign corporation                   )    Judge Magistrate Brown
                                        )
                    Defendant.          )
                                        )

## NOTICE OF FILING

TO:    David J. Fish
       The Fish Law Firm, P.C.
       1770 N. Park Street, Suite 202
       Naperville, IL 60563


       PLEASE TAKE NOTICE that on July 30, 2008 the foregoing attached **Plaintiff's**

**Memorandum in Opposition to Defendant's Motion to Dismiss Plaintiff's Second**

**Amended Complaint on the Basis of *Forum Non Conveniens* and Rule 12(b)(6)** was

filed with the United States District Court of the Northern District of Illinois, Eastern

Division.



                              By: /s Keith L. Davidson_____
                                  Attorney for Plaintiff


Keith L. Davidson
**Law Offices of Keith L. Davidson**
2 N. LaSalle Street, Suite 1600
Chicago, IL 60602
(312) 419-0544

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAM ROWELL                         )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )
                                       )      No.  08 C 2517
FRANCONIA MINERALS CORPORATION,        )      Judge Castillo
a foreign corporation                  )      Judge Magistrate Brown
                                       )
            Defendant.                 )
                                       )

## CERTIFICATE OF SERVICE

TO:    David J. Fish
       The Fish Law Firm, P.C.
       1770 N. Park Street, Suite 202
       Naperville, IL 60563


      I certify that on July 30, 2008, I served the foregoing **Plaintiff's Memorandum**

**in Opposition to Defendant's Motion to Dismiss Plaintiff's Second Amended**

**Complaint on the Basis of *Forum Non Conveniens* and Rule 12(b)(6)** to all counsel of

record by sending copies to the above-named attorney by electronic mail.




                              By: /s Keith L. Davidson_____
                                  Attorney for Plaintiff


Keith L. Davidson
**Law Offices of Keith L. Davidson**
2 N. LaSalle Street, Suite 1600
Chicago, IL 60602
(312) 419-0544