IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WILLIAM ROWELL ) | |
| ) | |
| Plaintiff, ) | Case No. 08 CV 2517 |
| ) | |
| v. ) | |
| ) | Judge Castillo |
| FRANCONIA MINERALS CORPORATION ) | Magistrate Judge Brown |
| a foreign corporation ) | |
| ) | |
| Defendant. ) | |

**REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>**

### I.   <u>Introduction</u>

If adopted, Plaintiff's arguments threaten to set a precedent that undermines: (1) the freedom to contract (by disregarding the parties' multitude of agreements to apply Canadian/Alberta law) and (2) a foreign country's right to interpret its own securities laws and to make decisions affecting publicly traded investments on its exchanges.

Plaintiff's arguments are not only dangerous from a policy standpoint, but have no basis under established case law for the following reasons:

(1)   Plaintiff's position that there are absolutely "no" issues under Canadian law is meritless.  The very contracts that Franconia allegedly breached are explicitly governed by Canadian/Alberta law--***by agreement of the parties***. Case law, including from the United States Supreme Court, is clear that the need to apply foreign law points towards dismissal in a *forum non conveniens* analysis.

(2)   Although the need to apply foreign law alone warrants dismissal, Plaintiff has ignored many of the other arguments raised by Franconia.  For example, Plaintiff has not even addressed the fact that Federal District Courts routinely recognize the importance of allowing

disputes over publicly traded stock on foreign exchanges to be resolved in the foreign jurisdiction. Furthermore, Plaintiff has recently (since Franconia's Motion to Dismiss was filed) disclosed two additional Canadian witnesses to support its reliance damages claim. (Exhibit A)

(3) Washington law, and the contracts entered into between the parties, mandate the dismissal of the smorgasbord of newly added claims which Plaintiff asserts are governed by Washington law.

In short, despite Plaintiff's reactionary filing (*i.e.* after Franconia filed its first motion to dismiss on the basis of *forum non conveniens*) of the Second Amended Complaint to make this case stick in America by pleading around Canadian/Alberta law and disclaiming certain damages, the fact remains that this case is inextricably linked to Canada. The Court will need to apply foreign law, the parties are both Canadian citizens, the disputed March 2007 meeting took place in Canada, the stock at issue is traded on a Canadian exchange, and Plaintiff elected to invest in and work for Canadian company. Accordingly, the Second Amended Complaint should be dismissed.

## II. ARGUMENT

### I. CANADIAN/ALBERTA LAW IS CENTRAL TO THIS CASE AND THIS ALONE WARRANTS DISMISSAL.

Plaintiff claims (Response, p. 5) that this case "involves no issue of Canadian law", but instead is governed by Washington law. But Washington law, itself, respects the right of parties to contractually agree to the application of a foreign law--as Franconia and Plaintiff did on nearly a half dozen occasions. See generally, McGill v. Hill, 31 Wash.App. 542, 644 P.2d 680, 683 (1982).

Franconia has been sued for violating contracts governed under Canadian/Alberta law and it must defend itself by the law that applies to the contracts. (The Canadian/Alberta choice of

2

law provisions are attached to the Second Amended Complaint as Exhibit 2 at ¶ 24, Exhibits 3, 4, and 5 at ¶ 9.6, Exhibit 6 at ¶ 23). Just some of the issues under Canadian/Alberta law include the following:

(a)   Since the stock option agreements provide that Franconia's determinations are "binding and conclusive", is there **any** right to judicial review of its decision? If so, what is the standard of review?   (Plaintiff's suggestion that the Board never considered Rowell's eligibility to exercise the options is false, as set forth on Exhibit B).

(b)   Was Plaintiff a "bona fide" consultant? Does it matter that his stock option agreements did not contain a representation that he was a "bona fide" consultant? (or, as Plaintiff suggests on page 6, does the preamble language suffice to establish that he was a bona fide consultant?).

(c)   The instructions provided to a jury will be based upon Canadian/Alberta law and in resolving a summary judgment motion, this Court will need to rule based upon Canadian law. See generally, Hull 753 Corp. v. Elbe Flugzeugwerke GmbH, 58 F.Supp.2d 925, 929 (N. D. Ill. 1999)(Castillo, J.)(dismissing a case under *forum non conveniens*, in part, because even if the parties agree on the application of foreign law, "they would still need to prove that law to this Court for appropriate application").

As Canadian/Alberta law clearly applies to Plaintiff's stock option claims, dismissal is warranted.  See generally, Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 263 (1981)(application of foreign law points towards dismissal); Warter v. Boston Securities, S.A., 380 F.Supp.2d 1299, 1315 (S. D. Fla. Dec. 15, 2004)(the Court noted that "[e]ven the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on *forum non conveniens* grounds"); Roynat, Inc. v. Richmond Transp. Corp., 772 F.Supp. 417, 421 (S.D. Ind.

1991)(despite the court not being convinced about a number of the factors warranting a transfer, the need to apply Canadian law tipped the court's decision to transfer the case to Canada because "need to apply foreign law in a case, although not conclusive, points toward dismissal of a case on *forum non conveniens* grounds."); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 (11th Cir. 1985)("The need to resolve and apply foreign law should…point [the trial court] towards dismissal").

## II. PLAINTIFF HAS MADE NO SHOWING THAT HE CANNOT PURSUE HIS CLAIMS IN CANADA.

As set forth in Franconia's opening Memorandum, Plaintiff considered bringing his claims in Canada and in the Response has made no showing that he could not do so. This is another factor weighing in favor of dismissal. See generally, Wilson v. ImageSat Intern. N.V., 2008 WL 2851511 * 7 (S. D. N. Y., July 22, 2008)(finding private interest factors favor an Israeli forum where "plaintiffs have not shown, much less argued, that they will be unable to afford the cost of pursuing their claims in Israel").

In fact, the little evidence before the Court on this matter shows that Plaintiff is a highly compensated consultant (he earned $450 per day under his Franconia contract) with an international practice (according to his Declaration, he also is available to consult in Argentina). Furthermore, Plaintiff conceded that Canada is an adequate alternative forum. (Response, p. 5, F/N #1)  Plaintiff's failure to demonstrate that he would not be able to bring his action in Canada weighs in favor of dismissal.

## III. CITIZENSHIP OF PARTIES/WITNESSES

Plaintiff has pointed out that for purposes of ***subject matter jurisdiction***, both parties can be deemed citizens of a state in the United States of America.  While subject matter jurisdiction is not in dispute, Franconia recognizes that residence is relevant to a *forum non conveniens*

analysis. Franconia, however, believes that when weighed against the remaining factors of this case (*i.e.*, the unusual circumstance that **both** parties are Canadian citizens, that the stock is publicly traded on a Canadian exchange, that the disputed March 2007 meeting took place in Canada, that Canadian law applies, that Plaintiff elected to consult on behalf of, and invest in, a Canadian corporation), dismissal in favor of a Canadian forum for re-filing is appropriate.

Since Franconia filed its original motion to transfer, Defendant has since disclosed two additional Canadian witnesses. (Exhibit A) The witnesses from Canada disclosed in Plaintiff's Interrogatories include: (1) Fiona Childe from Toronto, Ontario and Andrea M. Zaradic from Vancouver. Both of these witnesses are disclosed by Plaintiff as having information which support Plaintiff's claims for reliance damage.

Next, Plaintiff now claims that the Canadian witness it previously disclosed (Goad from Toronto) is not that important. But Goad is an extremely important witness. Based on emails produced in this case (which were attached to Franconia's original Memorandum), if Plaintiff had followed Goad's advice, this lawsuit may not have been necessary as it appears that Goad advised Plaintiff to sell Franconia stock immediately before his options expired.

Lawrick, Tikkanen, and Kuhn are Franconia Board members. The Board's determination (i.e. Exhibit B) is final under the option agreements. Furthermore, Kuhn (who is a lawyer), executed the Amended Stock Option Plan (Second Amended Complaint, Exhibit 6) on behalf of Franconia. Her and Franconia's interpretation of the option agreements/Plan is important as those documents are highly deferential to Franconia's interpretation. (Second Amended Complaint, Exhibit 2 at ¶ 2, Exhibits, 3, 4, and 5 at ¶ 9.2; Exhibit 6 at ¶ 2)

IV. **PLAINTIFF HAS NOT ADDRESSED THAT THIS DISPUTE INVOLVES PUBLICLY TRADED CANADIAN STOCK.**

Glaringly absent from Plaintiff's Response is an analysis of the fact that Franconia is a stock publicly traded on the Toronto Stock Exchange. Canada has a very high interest in regulating its exchanges, enforcing its securities laws, and in making sure that options are not improperly exercised. Canadian courts, and not American courts, are far better suited to "rescinding" sales of Canadian stock option transfers (as is sought in the Second Amended Complaint, pp. 14-15) and in interpreting Canadian securities regulations.

Federal courts have shown extreme deference in allowing foreign courts to handle disputes over foreign securities. See generally, Howe v. Goldcorp Investments Ltd., 946 F.2d 944, 953 (1st Cir. 1990)(Canada had greater interest in hearing securities action involving Canadian corporation whose stock sold on a Canadian exchange); Warlop v. Lernout, 473 F.Supp.2d 260, 264 (D. Mass. 2007)(in granting a *forum non conveniens* motion, the court found "most significantly, the shares of stock purchased in this case were all obtained on [the European Association of Securities Dealers Automatic Quotation System]"); Toronto Stock Exchange v. Quotron Systems, Inc., 1992 WL 116636 *3 (S.D.N.Y. May 13, 1992)("Canada in general and Ontario in particular have a special interest in the outcome of these cases. The exchanges are a product of legislative mandate and their members are Canadian securities firms."). Accordingly, dismissal is warranted.

V. **WASHINGTON LAW MANDATES DISMISSAL OF PLAINTIFF'S CLAIMS.**

   1. Fraud

Plaintiff recognizes (Response, p. 14) that an element of fraudulent concealment under Washington law is that the person who committed fraud have a duty to disclose facts. While Plaintiff argues he is not required to allege such a duty in the Second Amended Complaint (he

makes no effort to explain how a duty could ever be owed to a consultant), case law interpreting Rule 9(b) holds directly to the contrary:

> "In order to comply with the pleadings requirements of Rule 9(b) with respect to fraud by omission, a plaintiff usually will be required to allege the following with reasonable particularity: (**1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak,** and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance."

Breeden v. Richmond Community College**,** 171 F.R.D. 189, 195 (M. D. N. C. 1997)(emphasis added). Accordingly, Plaintiff's fraud claim should be dismissed.

### 2.　　Breach of The Consulting Agreement/Alternative Claims.

Plaintiff's Response says nothing in defense of his claim that the stock option agreements were wrongfully *honored*, thus warranting recession. Plaintiff also does not address, let alone mention, its explicit admission in paragraph 23 of the Second Amended Complaint that he *was not* terminated in accordance with the Consulting Agreement (and thus is not eligible to benefits accorded to someone who was terminated in accordance with the Consulting Agreement).

Instead, and despite Plaintiff's clear and unequivocal statements that he never resigned, he claims that *if* he resigned, he is still entitled to compensation due to an "ambiguity" in the Consulting Agreement. While Plaintiff does not identify the specific language he finds ambiguous, his Declaration says that he understood that he "would be entitled to receive from Defendant payment for…unexercised stock options…in the event [he] resigned." Not only does the Consulting Agreement *nowhere* say anything remotely close to the idea that Plaintiff would get to rescind or be compensated for his options if he resigned or quit, but the option agreements clearly identify Plaintiff's rights if his consultancy terminates "for any reason". In a section titled "Termination of Position", the parties agreed that if Plaintiff's "position as a…consultant…is terminated for **any**

**reason**… [the shares] may be exercised" within 90 days of termination. (See Exhibits 3, 4, 5, and 6 at 3.2; Emphasis added)  In sum, there is nothing ambiguous about the consultancy agreement.  And, the stock option plans, if read, identify what Plaintiff can do with his options (and how long he has to do so) if his consultancy is terminated "for any reason".

### III.     CONCLUSION

Wherefore, Defendant respectfully requests that this case be dismissed pursuant to the doctrine of *forum non conveniens* and that Plaintiff's fraud, recession, Consulting Agreement, and punitive damages claims be dismissed.

Dated:     August 11, 2008                    FRANCONIA MINERALS CORPORATION

                                     By:      /s/ David J. Fish_____
                                              One of its Attorneys

David J. Fish
THE FISH LAW FIRM, P.C.
1770 N. Park Street, Suite 202
Naperville, IL 60563

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No.  08 C 2517 |
| FRANCONIA MINERALS CORPORATION, | ) | Judge Castillo |
| a foreign corporation | ) | Judge Magistrate Brown |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF'S ANSWERS TO DEFENDANT'S INTERROGATORIES

Now comes the Plaintiff, William Rowell, by his attorney, Keith L. Davidson, and, in answer to Defendant's Interrogatories, states as follows:

1. Identify each and every offer and opportunity you declined to perform for other existing or prospective clients as alleged in the Amended Complaint. For each such opportunity/offer, identify when you declined such opportunities/offers, the name, address, and telephone of the person or entity whom you declined, the approximate date of the decline, explain in detail the nature of the opportunity, and identify all documents related to the decline.

**Answer:**

a) Plaintiff did a schedule of one month on and one month off in Argentina so that he could be back to work on the Birch Lake project. The other expat geologists did 5 weeks on and 3 weeks off and this would have been Plaintiff's schedule. Plaintiff did not discuss his schedule with Viceroy and it was his choice to return a week early to work on the Birch Lake project.
b) Two offers in the summer of 2007 are attached on the CD produced herewith.

Fiona Childe
Talon Metals Corp.
C/O Tau Capital Corporation
110 Sheppard Avenue East, Suite 610
Toronto, Ontario  M2N 6Y8
416 361-9636
August 07

Fiona Childe of Talon Minerals mentioned to Plaintiff in an email in June 07 that she was looking for people to work in South America.  He replied that he might be ready to

consider a job toward the end of August. In August she sent an email with some possibilities and asked Plaintiff to contact her if he was interested. He did not contact her.
Kobex Resources Ltd.
Andrea M. Zaradic
1700-700 West Pender St.
Vancouver, B.C.  V6C 1G8
604 484-6228
June 2007

Kobex contacted Plaintiff about taking a chief geologists job at a molybdenum project in Colorado. Plaintiff declined by saying that he had another commitment in Nevada, but really Plaintiff did not have another job and was just saying no thanks.


2.      Identify the name, address, and telephone number of each person or entity which you (directly or through any business) have consulted or worked on behalf of from 2005 to present. For each, identify: (a) The months and years you consulted and the amount of work (i.e. by hours) you performed and (b) The nature of the work and all locations which you worked from.

   **Answer:**

Viceroy Resources/Yamana Gold (Acquired Viceroy in 07)
150 York St
Suite 1102
Toronto, ON  M5H 3S5
416-815-0220

Jan 05 to July 07 – Reconnaissance exploration in Argentina and report writing in Lake Forest, Illinois

Franconia Minerals
111 E. Magnesium Rd., Suite A
Spokane, WA  99208
509 340-1328

Jan 05 until Franconia repudiated the contract on March 6, 2008 – Drilling programs and geologic presentations in Minnesota and exploration planning, report writing and consultation in Lake Forest, Il and San Juan Province, Argentina.

Encampment Minerals
Two Midtown Plaza, Suite 1990
1349 West Peachtree Street
Atlanta, Georgia  30309
Ely, MN office 218 365-7737

2

Jan 08 to June 08 – Drilling program in northern Minnesota and data interpretation and report writing in Lake Forest, Illinois

Vermillion Gold
955 Ringwood Rd.
Lake Forest, Il  60045
847 615-0885

In 2005 Ernie Lehmann and Plaintiff started a company called Vermillion Gold to explore for gold deposits in northern Minnesota. Until spring 2008 work has consisted of trying to interest investors and acquiring mineral leases. In April and May of 2008 Plaintiff billed for a total of 10 days of work. Work consisted of property and core examinations in northern Minnesota and report writing at home.


3.    Identify with specificity all damages and relief you are seeking in this case and specify how the amount was calculated.

   **Answer:**

   For Plaintiff's answer to this interrogatory, he adopts the allegations in paragraphs 25 through 38 of the Second Amended Complaint.


4.    Identify (by name, address, and telephone number) each person or entity with whom you have applied for work or offered your consulting services to since 2006.

   **Answer:**

   On St. Patrick's day of 2007 Plaintiff attended a farewell party in San Juan, Argentina for Patrick Downey who was leaving his position as president of Viceroy Exploration (the company that Plaintiff was working for). When he was leaving at the end of the night Plaintiff yelled out to him that if he had any new projects and needed some help he could give him a call. Plaintiff never contacted him after that and he never contacted me. Plaintiff does not have his address or phone number.

In Plaintiff's email exchange with Fiona Childe of Talon Resources Plaintiff stated that he might be ready for a job by the end of August (see question 1). She contacted him, he did not contact her.

Fiona Childe
Talon Metals Corp.
C/O Tau Capital Corporation
110 Sheppard Avenue East, Suite 610
Toronto, Ontario  M2N 6Y8
416 361-9636

Encampment Minerals

Plaintiff's recent work with Encampment Minerals came as a result of a social call with Ted DeMatties probably in August 07. Ted asked if Plaintiff could give him a hand with a winter drilling program and Plaintiff said that he would if he was available. Plaintiff also said that his contact with Franconia had a confidentially clause and they would have to be contacted if he was going to work for Encampment.

Encampment Minerals
Two Midtown Plaza, Suite 1990
1349 West Peachtree Street
Atlanta, Georgia  30309
Ely, MN office 218 365-7737


5.      Do you contend that the laws of the Province of Alberta and the Federal laws of Canada apply to the stock option agreements at issue in this case? If so, identify all substantive law in which you plan to rely or provide to the court for consideration. If not, explain with specificity why such law does not apply.

**Answer:**

It is Plaintiff's position, on the advice of counsel, that there is no issue of Canadian law in this case.


6.      Identify with specificity all facts and identify all documents which support in any way your contention that you did not resign or otherwise terminate your services to Franconia and/or that you are eligible to exercise the stock options as alleged in the Amended Complaint.

**Answer:**

1) Plaintiff did not exercise 135,000 stock options that would have had a profit value > $100,000. If he had thought that his contract with Franconia was over he definitely would have exercised the options.

2) Franconia did not exercise Plaintiff's options based on the average price 30 days prior to March 6 (or 4th) as called for in the consulting agreement if he had quit (on CD).

3) Subsequent to the March 6, 2007 meeting, Plaintiff did not decline any requests for work or information. Franconia and its contractors continued to contact him with Birch Lake project questions and data requests, and he provided the answers and data they requested to the best of his ability.

4

4) In an email to Ernie Lehmann on April 30, 2007 Plaintiff offered to help Neil Prenn, an engineering contractor, in his efforts to model the Birch Lake deposit. Lehmann said to go ahead (on CD). It is also clear in this document that Plaintiff supplied Lehmann with help beyond what might be expected if he had quit.

5) Brian Gavin's August 2007 email to Ernie Lehmann stating that Plaintiff had not resigned from Franconia (on CD)

6) Franconia's 2006 Annual Report, published in 2007 (on CD), and Franconia's 2007 Annual Report, published in 2008 (on CD), indicate that Plaintiff continued to be a contractor with Franconia through 2007.

7) Alan Ambrose, one of the founder's of Franconia, has not done any work for Franconia for probably two years or more; yet, his contract has been renewed. This was discussed in an email between Brian Gavin and Bonnie Kuhn (on CD).

8) On March 6, 2007 Brian Gavin requested that Plaintiff quit his contract commitment in Argentina and commit full time to the Franconia's Birch Lake project. Furthermore, Mr. Gavin stated that it was to be primarily a mine development job and not an exploration job. The Feb 11, 2007 and Feb 22, 2007 email exchange between Mr. Gavin and Plaintiff is a written record of the March 6, 2007 discussion of essentially the same topic. In this email exchange (on CD) Plaintiff told Mr. Gavin that, with 4 geologists and only 1 drill operating 10 of 14 days, the project was already overstaffed and there was only minimal work for him to do. In addition, it is well known that Plaintiff is an exploration geologist and not a mining geologist. He suggested that if they require a full time mine development geologist it would be best to hire one with experience in that aspect of geology. Plaintiff offered to help the project in any way and did not resign from Franconia. At the time, he expected that they would continue to consult with him as needed and would use him if they did any exploration around the deposit.

9) The April 30, 2007 letter to Plaintiff from Vicki Streng, enclosing the originally signed stock option agreement dated November 23, 2006 for Plaintiff's file further confirmed his continuing status as a consultant to Franconia.

7.     Identify (by name, address, and telephone number) all persons/entities with whom you discussed or corresponded about (in any manner) your relationship with Franconia from 2006 to present. For each person/entity, state with specificity what was discussed and approximately when such discussions took place.

   **Answer:**

5

Plaintiff objects to this interrogatory as being incomprehensible if it is intended to inquire about anything beyond his contractual relationship with Defendant. Plaintiff therefore answers it, as follows, with respect only to his contractual relationship with Defendant:

Plaintiff's contractual relationship with Franconia is based on the fact that he is a founder with a founder's contract. He has discussed this relationship with his wife and Ted DeMatties, another geologist. His discussion with Mr. DeMatties was in March 2008. When he learned that Plaintiff was starting a lawsuit against Franconia, it was necessary to explain his contractual relationship with Franconia and, in light of this relationship, why it was necessary to initiate the lawsuit. Plaintiff has not discussed this contractual relationship with anyone else.

Ted DeMatties
34898 University Avenue, NE
Cambridge, MN  55008-8140
763 689-4574

8.      Identify (by name, address, and telephone number) all: (a) potential witnesses you plan to rely upon for evidence in this case, and (b) all persons with knowledge of any facts related to any matter in the Amended Complaint. For each category, state with specificity the potential witnesses' anticipated testimony and the knowledge possessed by each person.

**Answer:**

a) Potential Witnesses:

William Rowell and Betsy Marden
955 Ringwood Road
Lake Forest, IL 60045
847-615-0885

Plaintiff William Rowell attended the March 2007 meeting during which, according to Franconia, he terminated the Consulting Agreement. Plaintiff will testify that he did not terminate his services to Franconia at said meeting or at any other time; that, both before and after March 2007, he performed all obligations on his part to be performed under the Consulting Agreement, including all the consulting work that Defendant requested him to do and that he undertook to do; that he was available to be consulted by Defendant before and after March 2007 but was only minimally consulted by Defendant after March 2007; and that, both before and after March 2007, he declined other business opportunities referenced herein in order to be available to do consulting work for Defendant.

Betsy Marden is Plaintiff's wife and accountant and has knowledge of this work Plaintiff did and was asked to for Franconia and what he billed Franconia for it.

Geoffrey Goad
40 King Street West
Scotia Plaza 5300
Toronto, ON
M5H 3Y2
Canada
416-777-7000

Geoffrey Goad is Plaintiff's broker and has knowledge of a), Plaintiff's attempts, through Mr. Goad, to exercise his Franconia stock options by seeking to wire transfer to Franconia the funds to exercise the stock options; and b), Franconia's failure to provide Mr. Goad the bank account information necessary to enable Mr. Goad to make the wire transfer. Mr. Goad may also testify as to the published price of Franconia's stock on the Toronto Stock Exchange at any and all pertinent times; although, it is anticipated that establishing said facts can be accomplished without need of testimony or, if testimony is needed, by testimony of a Chicago stock broker.

Ted DeMatties
34898 University Ave. NE,
Cambridge MN 55008-8140
763-689-4574

Mr. DeMatties will testify that, if he had known that Plaintiff no longer had any affiliation with Franconia after March 2007, he would have asked Plaintiff for help with his projects at that time. If Plaintiff had known that he was not affiliated with Franconia after March 2007, Plaintiff would have let Mr. DeMatties know that he was available.

Plaintiff incorporates in this answer his answers herein to the previous interrogatories.

b) Persons with knowledge of facts related to the Second Amended Complaint:

Plaintiff incorporates in this answer his answers herein to the previous interrogatories.


9.      Identify all facts supporting your contention in the Joint Status Report that "Defendant would be estopped from raising [certain arguments] and subject to additional allegations of fraud." Specify all facts supporting this statement and identify all documents related thereto.

   **Answer:**

   The quoted language asserted a point of law under the law of the State of Washington in response to Defendant's arguments about its stock price purporting to be based on Canadian law.

By:   /s William Rowell

                                      Plaintiff

                                      July 21, 2008

William F. Rowell
955 Ringwood Road
Lake Forest, IL 60045
847-615-0885

8

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | Case No.  08 CV 2517 |
| | ) | |
| v. | ) | |
| | ) | Judge Castillo |
| FRANCONIA MINERALS CORPORATION, | ) | Magistrate Judge Brown |
| a foreign corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## SECOND DECLARATION OF BRIAN GAVIN

Pursuant to 28 USC §1746, I swear under penalty of perjury that the following information is true:

1. My name is Brian Gavin.  I am over the age of twenty-one and I am competent to make this Declaration and I have personal knowledge of the matters set forth herein.

2. I am the President and Chief Operating Officer of Franconia Minerals Corporation (hereafter, "Franconia").

3. I discussed with Franconia Minerals Corporation's Board of Directors William Rowell's eligibility to exercise the options that are the subject of this lawsuit prior to denying him the right to exercise the options.    Because Rowell was purporting to exercise options more than 90 days after his consultancy terminated, Franconia Minerals Corporation's Board of Directors concluded without dissent that he was ineligible to do so.

1

4.     As set forth in the option agreements at Section 3.2, a consultant must exercise options within 90 days of their consultancy terminating. If this does not occur, the options expire.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 8, 2008                     _____

                                                      Brian Gavin

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM ROWELL | ) | |
| | ) | |
| Plaintiff, | ) | Case No.    08 CV 2517 |
| | ) | |
| v. | ) | |
| | ) | |
| FRANCONIA MINERALS CORPORATION, | ) | |
| a foreign corporation | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE OF FILING**

TO:   Keith L. Davidson
      Law Offices of Keith L. Davidson
      Two North LaSalle Street, Suite 1600
      Chicago, IL 60602

   PLEASE TAKE NOTICE that on August 11, 2008, the attached **Defendant's Reply Memorandum in Support of Motion to Dismiss Second Amended Complaint** was filed with the United States District Court of the Northern District of Illinois, Eastern Division. A copy is hereby served upon you by electronic mail.

 Dated August 11, 2008                    FRANCONIA MINERALS CORPORATION


                                  By:    /s/ David J. Fish_____
                                         One of its Attorneys

David J. Fish
THE FISH LAW FIRM, P.C.
1770 N. Park Street, Suite 202
Naperville, IL 60563
(630) 355-7590

**CERTIFICATE OF SERVICE**

      The undersigned being first duly sworn on oath deposes and says that he/she caused to be served the attached **Defendant's Reply Memorandum in Support of Motion to Dismiss Second Amended Complaint** on the following party via electronic mail as indicated on the 11th day of August, 2008:

    Keith L. Davidson
    Law Offices of Keith L. Davidson
    Two North LaSalle Street, Suite 1600
    Chicago, IL 60602

                                                By: /s/ David J. Fish
                                                One of its Attorneys

David J. Fish
THE FISH LAW FIRM, P.C.
1770 N. Park Street, Suite 202
Naperville, IL 60563
(630) 355-7590