# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM ROWELL, | ) |
|       Plaintiff, | ) ) ) |
| | ) No. 08 C 2517 |
| v. | ) |
| | ) Judge Ruben Castillo |
| FRANCONIA MINERALS CORP., a foreign corporation, | ) ) ) |
|       Defendant. | ) ) |

## MEMORANDUM OPINION & ORDER

William Rowell ("Rowell"), alleges breach of contract and fraud claims against Franconia Mineral Corporation ("Franconia"), with whom he had a consulting agreement. (R. 35, Pl.'s Sec. Am. Compl. ¶ 1.) Franconia moves to dismiss based on the doctrine of forum non conveniens or, alternatively, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (R. 36, Def.'s Mot. to Dismiss.) The motion is granted in part and denied in part.

## RELEVANT FACTS[1]

Franconia is a Canadian corporation engaged in mineral exploration, which has its

---

[1] In determining whether to grant a motion to dismiss under Rule 12(b)(6), the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *Pugh v. Tribune Co.*, 521 F.3d 686, 692 (7th Cir. 2008). The relevant facts are taken from Rowell's Second Amended Complaint and the contract documents attached thereto. *See* Fed. R. Civ. P. 10(c)("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."). Franconia does not specify which section of Rule 12 the forum non conveniens motion is being brought, but the motion is akin to a Rule 12(b)(3) motion to dismiss based on improper venue. *See Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931 (N.D. Ill. 2006). In deciding a Rule 12(b)(3) motion, the Court is allowed to consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d); *Vazquez v. Central States Joint Bd.*, 547 F. Supp. 2d 833, 865 n. 18 (N.D. Ill. 2008). The Court has not considered any outside documents in ruling on the Rule 12(b)(6) portion of Franconia's motion.

1

principal place of business in Spokane, Washington. (R. 35, Pl.'s Sec. Am. Compl. ¶¶ 1, 4.) Rowell is a Canadian citizen and a permanent resident alien of the United States; he has resided in the United States for the past 20 years and in Lake Forest, Illinois, for the past 10 years. (*Id.* ¶ 1.) On November 1, 2001, Rowell and Franconia entered into a written agreement (hereinafter "Consulting Agreement") for Rowell to provide geological consulting services to Franconia as an independent contractor. (*Id.* ¶¶ 5-7.) The Consulting Agreement was drafted by Franconia and signed by Rowell at his home in Lake Forest. (*Id.* ¶ 5.) Franconia's president, Brian Gavin ("Gavin"), signed the Consulting Agreement at Franconia's headquarters in Spokane. (*Id.* ¶ 5.) The Consulting Agreement provided that it was to be governed by the laws of the State of Washington. (*Id.* ¶ 9.)

The Consulting Agreement was to remain in effect until December 31, 2001, and then was to automatically renew every year unless it was terminated. (*Id.*, Ex. 1.) Under Paragraph 8 of the Consulting Agreement, Franconia was entitled to terminate Rowell for good cause on 10 days written notice or without good cause on 30 days written notice. (*Id.* ¶ 8.) If Franconia terminated Rowell for good cause, he would not be entitled to severance pay, whereas he would be entitled to severance pay if Franconia terminated him without good cause. (*Id.*) The Consulting Agreement further allowed Rowell to terminate the agreement, with or without cause, after 30 days written notice to Franconia. (*Id.*) If Rowell resigned, he was not entitled to any severance pay. (*Id.*)

Rowell provided consulting services to Franconia from November 1, 2001, until at least early March 2007. (*Id.* ¶ 17.) He performed this work primarily from his home in Illinois, and also in Minnesota and Nevada. (*Id.* ¶ 16.) Under the Consulting Agreement, Rowell was entitled

2

to participate in any benefits plan provided for Franconia's employees, including stock option plans. (*Id.* ¶ 7.) If Rowell was terminated, Franconia had the right to cancel, by payment of additional specified compensation, any previously issued stock options Rowell held that were not exercised within 30 days of his termination. (*Id.* ¶ 8.)

On May 27, 2004, Franconia adopted a stock option plan ("Amended Stock Option Plan") which provided, among other things, that consultants were eligible to participate in the plan. (*Id.* ¶ 11.) Thereafter, Rowell and Franconia entered into three separate stock option agreements for Franconia stock ("Stock Option Agreements") dated August 2004, April 2005, and November 2006. (*Id.* ¶ 10.) The August 2004 Stock Option Agreement granted Rowell the option of purchasing 350,000 shares of Franconia stock, under certain terms, with an expiration date on the option of August 2009. (*Id.* ¶ 12.) The April 2005 Stock Option Agreement granted Rowell the option of purchasing 140,000 shares of Franconia stock at certain terms by April 2010. (*Id.* ¶ 13.) The November 2005 Stock Option Agreement granted Rowell the option to purchase 65,000 shares at certain terms until November 2011. (*Id.* ¶ 14.) The Stock Option Agreements all provided that if Rowell's position was "terminated for any reason other than death or disability," his stock options would expire 90 days after the effective date of the termination. (*Id.* ¶ 12 & Exs. 3-5.) The Stock Option Agreements provide that they are to be governed by Canadian law. (*Id.* ¶ 12.)

On March 4, 2007, Rowell and Gavin had a meeting in Toronto, Canada. (R. 37, Def.'s Mem. in Supp. of Mot. to Dismiss ("Def.'s Mem.") at 2; R. 25, Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Mem.") at 3.) One of the central disputes in this case is whether Rowell tendered his resignation at this meeting. (*See* R. 37, Def.'s Mem. at 2.) Rowell alleges that he

3

did not resign from his consulting position at this meeting or at any other time. (R. 35, Pl.'s Sec. Am. Compl. ¶ 22.)

Rowell further alleges that following this meeting in Toronto, Gavin sent emails to other members of the corporation demonstrating an intent not to comply with the terms of the Consulting Agreement. (*Id.* ¶¶ 35-36.) Specifically, in a June 2007 email, Gavin allegedly wrote to Bonnie Kuhn, Franconia's general counsel, that "Rowell is history." (*Id.* ¶ 35.) In an August 2007 email, Gavin allegedly wrote to a member of Franconia's board of directors: "There is an issue in that Bill [Rowell]'s contract has not been terminated formally. He has not terminated it and I won't terminate it as it would mean paying the 'golden parachute.'" (*Id.* ¶ 36.) Rowell was not aware of these emails at the time they were sent. (*Id.* ¶¶ 37-38.)

On May 10, 2007, Rowell, through his broker, exercised his option to purchase shares of Franconia stock pursuant to the April 2005 Stock Option Agreement. (*Id.* ¶ 19.) The shares were delivered to Rowell on May 16, 2007. (*Id.*) On February 28, 2008, Rowell attempted to exercise his option to purchase additional shares of Franconia stock pursuant to the August 2004 Stock Option Agreement, but Franconia refused to allow him to make the purchase and informed his broker that Rowell had "quit" the company. (*Id.* ¶ 20.)

On March 6, 2008, Gavin sent Rowell a letter informing him that he was not entitled to exercise his stock options because he had resigned on March 4, 2007, and that his right to such stock options had expired. (*Id.* ¶ 21 & Ex. 7.) Plaintiff maintains that he never resigned or was terminated from his position, and that Franconia's actions in denying him his right to exercise his stock options constituted a breach of the Consulting Agreement. (*Id.* ¶¶ 22-23.)

## PROCEDURAL HISTORY

On April 10, 2008, Rowell filed a breach of contract action against Franconia in the Circuit Court of Cook County, Illinois. (R. 1, Not. of Removal, Ex. A.) On May 2, 2008, Franconia removed the case to this Court on the basis of diversity jurisdiction. (*Id.*) On June 27, 2008, Rowell filed his Second Amended Complaint alleging a breach of contract claim and a fraudulent concealment claim. (R. 35, Pl.'s Sec. Am. Compl.) As for the breach of contract claim, Rowell alleges that he never resigned or was properly terminated and that he therefore had a right to exercise his stock options. (*Id.* ¶¶ 16-24.) As for the fraudulent concealment claim, Plaintiff alleges that Franconia had no intention of performing its obligations under the Consulting Agreement, as evidenced by Gavin's emails, but that it intentionally and fraudulently concealed this fact in order to: deceive Rowell into believing he was still a consultant for Franconia; deter him from claiming the benefits that would be due to him upon Franconia's termination of his services; and prolong the one-year period provided for in the Consulting Agreement during which Rowell was not permitted to accept any work that would conflict with his work for Franconia. (*Id.* ¶ 38.) Among other damages, he seeks $50,000 in severance pay and $107,250 as the price of cancelling his stock options. (*Id.* at 14.) Alternatively, in the event the Court determines that Rowell resigned on May 4, 2007, he seeks rescission of his May 2007 stock purchase, the return of the money he paid for those shares, and compensation for the cancellation of those shares in accordance with the Consulting Agreement. (*Id.* at 15.)

Franconia moves to dismiss on grounds of forum non conveniens, arguing that the case should be litigated in Canada. (R. 37, Def.'s Mem. at 1-13.) Franconia alternatively argues that Rowell's claims should be dismissed under Rule 12(b)(6). (*Id.* at 13-15.)

## ANALYSIS

### I. Forum Non Conveniens

Under the common law doctrine of forum non conveniens, the Court has discretion to dismiss a case over which it has jurisdiction "if it best serves the convenience of the parties and the ends of justice." *In re Bridgestone/Firestone, Inc.*, 420 F.3d 702, 703 (7th Cir. 2005); *see also Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). Out of due respect for the plaintiff's choice of forum, however, a case should be dismissed on grounds of forum non conveniens only if the plaintiff's chosen forum is "oppressive and vexatious to the defendant, out of proportion to the plaintiff's convenience." *In re Bridgestone/Firestone, Inc.*, 420 F.3d at 703-04. Moreover, a case should not be dismissed unless there is an adequate alternative forum in which to litigate the case. *Id.* at 704. In other words, "it is tough to argue that the present forum---which by definition has both subject matter jurisdiction and personal jurisdiction over all parties---is 'out of all proportion to plaintiff's convenience' when the plaintiff has no other options." *Id.* Assuming there is an adequate alternative forum, the Court then decides whether to dismiss the case by weighing various private and public interest factors. *Id.* "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

As an initial matter, Franconia argues that Rowell's choice of forum is entitled to "minimal deference" because he is a Canadian citizen and "this case is linked closely with Canada and not with Illinois." (R. 37, Def.'s Mem. at 7.) A plaintiff's choice of forum is entitled to deference, particularly when it is his "home" forum. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981); *In re Blood Prods. Litig.*, 484 F.3d 951, 956-57 (7th Cir. 2007). Although

Rowell has Canadian citizenship, he is a permanent resident alien of the United States and has resided in Lake Forest, Illinois, for the past ten years. (R. 35, Pl.'s Sec. Am. Compl. ¶ 1.) This District is clearly his home forum. *See Piper Aircraft Co.*, 454 U.S. at 256 n. 23 (distinguishing between "citizens or residents" of a particular state and "foreign" plaintiffs for purposes of forum non conveniens doctrine); *In re Bridgestone/Firestone*, 420 F.3d at 704 ("a foreign plaintiff's choice of forum deserves less deference than the choice made by a U.S. citizen or *resident*") (emphasis added); *see also Abiaad v. Gen. Motors Corp.*, 538 F. Supp. 537, 541 (E.D. Pa. 1982) (citizen of Lebanon residing in Pennsylvania entitled to home forum deference in Pennsylvania district court because "no distinction is made by the court between a citizen and resident, and a resident who is not a citizen is not considered a foreign plaintiff"), *aff'd*, 696 F.2d 980 (3d Cir. 1982). This is not a situation, for instance, "where a citizen of Texas decide[s] to sue in the federal court in Alaska." *See In re Blood Products Litig.*, 484 F.3d at 956. Further, unlike the cases cited by Franconia, this dispute does bear a connection to Illinois. (*See* R. 37, Def.'s Mem. at 7-8.) Rowell was hired as a consultant while living in Illinois; signed the Consulting Agreement here; performed most of his consulting work here; and suffered an alleged injury here. (*See* R. 35, Pl.'s Sec. Am. Compl. ¶¶ 1-38.) The Court therefore rejects Franconia's argument that Rowell's choice of forum is not entitled to deference, and turns to the specific factors governing the forum non conveniens analysis.

### A. Adequate Alternative Forum

The first issue is whether there is an adequate alternative forum for this dispute. Assessing whether an alternative forum exists involves a two-part inquiry: availability and adequacy. *In re Bridgestone/Firestone*, 420 F.3d at 703. A forum is "available" if "all parties

are amenable to process and are within the forum's jurisdiction." *Id.* A forum is "adequate" if "the parties will not be deprived of all remedies or treated unfairly." *Id.* Here, the parties do not dispute that Canada is an "available" and "adequate" forum.[2] The Court therefore presumes Canada would provide an adequate alternative forum and proceeds to consideration of the private and public factors.

## B. Private Interest Factors

The factors pertaining to the private interests of the litigants include "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008). Franconia argues that the private interests support dismissal because the only witnesses from Illinois are Rowell and his wife, and both sides have disclosed witnesses from Canada.[3] (R. 37, Def.'s Mem. at 12-13.)

Rowell estimates that the trial of this case will last approximately three days. (R. 43, Pl.'s Mem. at 11.) He has identified the following potential witnesses: himself and his wife (an American citizen), both of whom live in Illinois; his stock broker, who resides in Canada; and a Minnesota resident, with whom Rowell declined doing business, believing himself contractually

---

[2] Franconia asserts that Canada is an appropriate alternative forum and Rowell does not dispute this in his response, instead focusing on the private and public factors. (*See* R. 43, Pl.'s Mem.)

[3] Franconia's argument that the case should be dismissed because the Court will need to apply Canadian law to resolve the parties' dispute is more appropriately addressed in the analysis of the public interest factors. *See Clerides*, 534 F.3d at 628.

8

obligated to Franconia. (R. 43, Pl.'s Mem. at 8.) Franconia has identified several potential witnesses, including three board members who reside in various parts of Canada, and two other unidentified witnesses who live in the United States outside of Illinois. (R. 37, Def.'s Mem. at 6 & n. 4.) It is unknown whether one of these unidentified witnesses is Gavin, but he will no doubt be a key witness in this case, and he resides in Washington. Thus, although there are witnesses who reside in Canada, there are also witnesses who reside in Illinois and other states. Proceeding in either location will necessitate travel costs for several witnesses, but as the Seventh Circuit has recognized, travel is commonplace in modern commercial litigation, and travel between Canada and Illinois is not particularly difficult or expensive. *See ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 316 F.3d 731, 732 (7th Cir. 2003) ("Travel between Ontario and Illinois requires only a short and inexpensive journey."); *see also Rotec Indus.*, 436 F. Supp. 2d at 935 ("Even if the majority of witnesses did reside in Canada, travel between Canada and Chicago is not onerously difficult."). Accordingly, the Court concludes that the private interest factors do not weigh strongly in favor of Franconia.

### C. Public Interest Factors

The public interest factors include "the administrative difficulties stemming from court congestion; the local interest in having localized disputes decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflicts of laws or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty." *Clerides*, 534 F.3d at 628. Franconia argues that these factors weigh in favor of dismissal because Canada has a greater interest in resolving this dispute, which involves a Canadian corporation whose stock is

9

publicly traded on one of its exchanges, and because the Court will need to apply Canadian law in order to resolve the parties' dispute. (R. 37, Def.'s Mem. at 10-11.)

Canada may have an interest in resolving a dispute involving one of is corporations, but Illinois also has an interest in remedying an alleged injury suffered by one of its residents. Furthermore, although Franconia attempts to paint this case as involving complex issues of Canadian law governing stocks and stock options, the Court views this as an ordinary breach of contract case. The central question to be answered is: Did Rowell resign from his consulting position or did he not? If the Consulting Agreement was still in effect at the time Rowell sought to exercise his stock options, then Franconia's refusal to allow Rowell to exercise those stock options may consitute a breach of the Consulting Agreement. Determining whether such a breach occurred would require interpretation of the Consulting Agreement, which is governed by Washington law. (R. 35, Pl.'s Sec. Am. Compl. ¶ 9.) The other central question in the case, whether Franconia committed common law fraud, does not require application of Canadian law at all.

The Court is cognizant that the Stock Option Agreements are governed by Canadian law, and that Rowell's alternative claim for rescission damages (assuming the Court must reach that issue) could require application and interpretation of these agreements. Rowell states that if this Court determines that his claim for rescission is governed by Canadian law, and if there is "any uncertainty or dispute about Canadian law that would require this court to interpret Canadian law or take expert testimony to apply it," he will withdraw the request for this relief. (R. 35, Pl.'s Sec. Am. Compl. at 15.) The Court intends to hold Rowell to this offer. At this stage, the Court does not view the mere potential for Canadian law to play a role in this case as a strong reason to

dismiss. *See ISI Int'l, Inc.*, 316 F.3d at 732 ("[A] U.S. judge's desire to avoid the burden of mastering a new legal subject [is not] an adequate reason to send litigants packing."). Based on these circumstances, the balance of the public factors do not weigh strongly in favor of Franconia.

For these reasons, the Court declines to disturb Rowell's choice of forum, and accordingly, Franconia's motion to dismiss on forum non conveniens grounds is denied.

## II.   Rule 12(b)(6)

Alternatively, Franconia argues that Rowell's claims must be dismissed under Rule 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must overcome "two easy-to-clear hurdles:" (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests;" and (2) "its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008).

### A.   Fraudulent Concealment

Franconia first argues that Rowell's fraudulent concealment claim fails under Washington law because Franconia had no legal duty to speak. (R. 37, Def.'s Mem. at 14.) As Rowell points out, it is not clear that Washington law would apply to the fraudulent concealment claim. (R. 43, Pl.'s Mem. at 14-15.) In diversity cases, the forum state's choice of law rules determine the applicable substantive law. *Sound of Music Co. v. Minn. Min. & Mfg. Co.*, 477 F.3d 910, 915 (7th Cir. 2007). Illinois follows the Restatement of Conflict of Laws approach, which applies "the broad principle that the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the 'most significant relationship' to the occurrence and the parties."

11

*Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 920 (Ill. 2007). Under this approach, Illinois law would likely apply to the fraudulent concealment claim since Rowell is a resident of Illinois and was victimized by the alleged fraud in Illinois. *See id.* at 920-21. Illinois law is clear that the omission or concealment of a material fact is actionable only if the defendant had a duty to speak. *See Orlak v. Loyola Univ. Health Sys.*, 885 N.E.2d 999, 1010-12 (Ill. 2007) (in absence of fiduciary or other confidential relationship between plaintiff and defendant, defendant's silence does not constitute fraud); *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996) (no fraudulent concealment claim where plaintiffs failed to allege they were in fiduciary or other confidential relationship with defendants such that they had duty to disclose); *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 765 (Ill. App. Ct. 2003) ("In order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak."). Even assuming Washington law applied to Rowell's fraudulent concealment claim, the standard would be the same. *See, e.g., Stieneke v. Russi*, 190 P.3d 60, 68 (Wash. Ct. App. 2008) (fraudulent concealment claim lies where there is a duty by the defendant to disclose); *Dussault v. Am. Intern. Grp., Inc.*, 99 P.3d 1256, 1261 (Wash. Ct. App. 2004) ("A duty to disclose is required . . . when the plaintiff alleges silence as misrepresentation.").

Here, Rowell has not alleged that there was a confidential or other fiduciary relationship between himself and Franconia, nor can the Court discern any plausible basis upon which such a relationship would exist under the circumstances of this case. Rowell's fraudulent concealment is therefore dismissed. Because this claim has been dismissed, the Court does not address Franconia's other arguments for dismissal of this claim. (*See* R. 37, Def.'s Mem. at 14-15.)

### B. Claim for Severance Pay and Rescission Damages

Finally, Franconia argues that this Court must dismiss Rowell's alternative claim for rescission damages, which he seeks to be awarded if this Court determines that he did resign before he made the May 2007 stock purchase. (R. 37, Def.'s Mem. at 15.) Franconia argues that Rowell cannot seek such damages because he specifically alleges that he never resigned or was terminated by Franconia. (*Id.*) Similarly, Franconia argues that Rowell cannot seek severance pay because he alleges that he was not terminated under the Consulting Agreement. (*Id.* at 14.) The Court finds no merit to these arguments, since it is clear Rowell is pleading in the alternative, which is permissible under the Federal Rules. *See* Fed. R. Civ. P. 8(d)(2); *Alper v. Altheimer & Gray*, 257 F.3d 680, 687 (7th Cir. 2001). Accordingly, this aspect of the motion to dismiss is denied.

### CONCLUSION

For the reasons stated above, Franconia's motion to dismiss (R. 36) is granted in part and denied. Rowell's fraudulent concealment claim is dismissed with prejudice. The parties are directed to reevaluate their settlement positions in light of this opinion and to exhaust all efforts to settle this case before the next status hearing in this case.

Entered: _____
Judge Ruben Castillo
United States District Court

**Dated: October 21, 2008**

13